```
 1                  UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF CONNECTICUT
 2

 3

 4    SUSAN BYRNE,                        )
               Plaintiff,                 ) Civil Action No.
 5                                        ) 3:17-CV-01104
      VS                                  )
 6                                        )
      YALE UNIVERSITY, INC.,              )
 7            Defendant.                  )

 8

 9

10       DEPOSITION OF: John Dovidio
         DATE:          November 19, 2018
11       HELD AT:       Madsen, Prestley & Parenteau, LLC
                        105 Huntington Street
12                      New London, Connecticut

13

14

15

16

17

18

19

20

21

22       Reporter:  Wendy Allen, RMR, CRR, LSR #00221

23

24

25
```

```
 1              (Deposition commenced at 10:00 a.m.)
 2
 3          John Dovidio, Deponent, having been first duly
 4          sworn by Wendy Allen, RMR, CRR, a Notary
 5          Public in and for the State of Connecticut,
 6          was examined and testified as follows:
 7
 8              DIRECT EXAMINATION BY MS. WIKTOR:
 9
10      Q   Good morning, Professor Dovidio.  Is professor
11   the appropriate title for you at this point?
12      A   Yeah, that's fine.
13      Q   I introduced myself before we started, but for
14   the record, I'm one of the attorneys representing
15   Susan Byrne in a lawsuit she's brought against Yale
16   University related to her employment there.
17          Now, you are currently the Dean For Academic
18   Affairs within Yale's Faculty of Arts and Sciences,
19   is that right?
20      A   Correct.
21      Q   And Faculty of Arts and Sciences is frequently
22   referred to as F-A-S?
23      A   Correct.
24      Q   Is it FAS or is it F-A-S?
25      A   F-A-S.
```

1   looking at the page number on the top?

2   A   Correct. This is Byrne 000048.

3   Q   Okay, thank you.

4   A   And 14 lines down from the first full

5   paragraph, "A member of the faculty who has a

6   personal or professional conflict of interest

7   concerning an individual on whom vote is to be taken

8   must absent him or herself from all discussions and

9   all votes taken on the individual."

10   Q   So Professor Adorno and Gonzalez Echevarria

11   were asked to absent themselves from all discussions

12   and votes on Susan Byrne's tenure candidacy, correct?

13   A   They were asked by Sue Byrne.

14   Q   Correct, yes, they were asked by Sue Byrne.

15       And it is the case that they did not absent

16   themselves?

17   A   That is true.

18   Q   Now, leaving it up to the person who has been

19   requested to absent him or herself requires some good

20   faith on that person whose recusal is being sought,

21   correct?

22   A   Yale's policy is that people recuse themselves

23   if they believe they have a conflict of interest,

24   personally or professionally.

25   Q   So but leaving it up to that person to make

1   that determination about whether they have a conflict
2   and should not be on, you know, a decision-making
3   sort of a platform of somebody's candidacy for tenure
4   assumes that person will, if they have a conflict,
5   will make a good faith determination, yes, I have a
6   conflict, and yes, I will follow the policy.
7       A    I'm not -- I was not involved in the
8   development of this policy, so I really don't know
9   the assumptions.
10      Q    Is there a policy or procedure that allow --
11  well, what happens if somebody refuses to recuse him
12  or herself and there is a conflict?
13      A    The case will go forward, and there's an
14  appeals process.
15      Q    So if somebody has a -- if a voting member has
16  a conflict of interest and declines to absent him or
17  herself, or just simply does not absent him or
18  herself, the University's procedures are that the
19  case will nonetheless go forward with a voting member
20  or members who have or -- who has or have conflicts?
21      A    I'm not aware of any procedures and policies
22  within Yale that allows the FAS Dean's office to
23  remove somebody who is eligible to vote from voting.
24      Q    Is there any other, you know, does that --
25  does the authority to remove someone, a voting

| | |
|---|---|
| 1 | recuse him or herself, that would be a violation of |
| 2 | this policy, wouldn't it? |
| 3 | A     The policy says that if a person has a |
| 4 | conflict of interest, that means a person has to |
| 5 | believe they have a conflict of interest, so if they |
| 6 | believe they have a conflict of interest, this says |
| 7 | they must recuse themselves. |
| 8 | Q     So it is possible, though, that someone who, a |
| 9 | reasonable person might consider to have a conflict |
| 10 | of interest, would him or herself say no, I don't |
| 11 | have a conflict, I mean that is possible, isn't it? |
| 12 | MS. CHAVEY:  Objection. |
| 13 | THE WITNESS:  Conflict of interest is |
| 14 | the term that's used here.  Different people may |
| 15 | have views of conflict.  In academics people |
| 16 | disagree over methodologies.  If you don't like |
| 17 | my methodology, that doesn't mean we have a |
| 18 | conflict of interest.  That's a legitimate |
| 19 | academic discussion and debate that those views |
| 20 | are not conflicts of interest.  If you don't |
| 21 | like what I study, then you can have a voice to |
| 22 | logically explain why you don't like what I |
| 23 | study, as part of a deliberation process. |
| 24 | BY MS. WIKTOR: |
| 25 | Q     So those relate to scholarship, and methods |

1    A    So let me ask for clarification.  We're
2    talking about recusal, now you're talking about the
3    voting.  So in terms of recusal, no one recuses
4    themselves because they don't like what somebody's
5    wearing.  I mean it's about a conflict of interest.
6    Q    So no one recuses themselves because they
7    don't like what somebody's wearing, because that
8    would -- if somebody's acting in good faith and is
9    rational, that you don't like my shoes that day, is
10   not going to make you vote against me getting tenure,
11   that would be ridiculous, right?
12   A    Yes.
13   Q    So if it's something of a personal nature,
14   that is significant enough in the mind of the person
15   who's voting that it would effect his or her vote on
16   a tenure decision but it doesn't have anything to do
17   with the scholarship, the teaching or the service,
18   but it's some personal thing, that would -- is that a
19   conflict of interest?
20   A    If there's --
21             MS. CHAVEY:  Objection.  Go ahead.
22             THE WITNESS:  If there's a
23       procedural -- if there's a person has a case of
24       procedural -- substantive procedural
25       irregularity in their -- the outcome of their

1   tenure case, they can appeal.
2   BY MS. WIKTOR:
3   Q   So the -- so then the University's remedy for
4   the existence of a conflict of interest where the
5   person does not recuse him or herself is the appeal
6   process?
7   A   The intervention process that I see in the
8   handbook is the appeal process.
9   Q   So if the University is aware -- if the
10  administration is aware that someone who's voting on
11  a tenure candidacy has a conflict of interest, and
12  that person hasn't recused themselves, the University
13  cannot intervene at that point and say, you can't be
14  on this committee, or you can't be on this vote?
15  A   The faculty handbook defines who's eligible to
16  vote for personnel decisions at different ranks.  We
17  follow the handbook.
18  Q   Does someone who has a conflict -- is someone
19  who has a conflict of interest eligible to vote?
20  A   Somebody who recuses themselves is eligible to
21  vote but chooses not to.  They're recused.  They do
22  not vote.  They were eligible to vote.  When someone
23  recuses themselves, they do not participate in the
24  deliberations of the vote.
25  Q   So as long as you tick the eligibility boxes,

1   by the University of whether there is a conflict?
2       A    At this point in the procedure, no.
3       Q    Is conflict of interest as the term is used in
4   this recusal policy defined anywhere, whether in
5   writing, informally, formally, by the University?
6       A    I'm not aware of any list identifying what is
7   and what is not a conflict of interest.
8       Q    What is an example of -- so what's an example
9   of a conflict of interest that should trigger a
10  faculty member to recuse him or herself?
11      A    The most common one I've seen is when their
12  spouse is being considered, or their partner.
13      Q    And that would be a -- well, I guess it would
14  be a professional, but it's a personal conflict of
15  interest?
16      A    Yes.
17      Q    And so similarly if somebody -- so I guess the
18  same concept, like say there are two ex-spouses,
19  they're in the same program, they hate each other,
20  and one of them is to vote on the other one's tenure
21  candidacy, and, you know, it would be great if you
22  could get rid of that person out of New Haven and go
23  somewhere else, that's a conflict of interest, and
24  that person should recuse him or herself under the
25  policy, right?

1   A    If that person has a conflict of interest,
2   they should recuse themselves.
3   Q    So two people being married to each other is
4   quite clearly a conflict of interest, correct?
5   A    Yes.
6   Q    I mean are there any other -- I mean is there
7   any other situation where there could be -- I mean
8   what rises to the level of conflict of interest?
9   People have disagreements, I don't like what you
10  wear, I don't like your hair, you're loud, you know,
11  I don't -- things like that, at what point does it
12  rise to the level of a conflict of interest as
13  contemplated by these policies?
14           MS. CHAVEY:  Objection.
15           THE WITNESS:  We do not have a
16      specific list of what qualifies and what does
17      not qualify.  It is the faculty member's
18      determination.
19  BY MS. WIKTOR:
20  Q    And so it relies on that faculty member
21  considering in good faith whether they have a
22  conflict or not?
23  A    It requires a faculty member perceiving that
24  they have a conflict of interest.
25  Q    And so there's no -- the administration has no

1  check on whether some, you know, I have a conflict,
2  but who cares, because I'm going to get my friend
3  into, you know, a tenure position, or, you know, I
4  hate that guy because he screwed around with my
5  girlfriend five years ago, so let's get rid of him.
6          MS. CHAVEY:  I'm sorry, could you
7     repeat the question?
8  BY MS. WIKTOR:
9     Q    In a case where a faculty member has what --
10  well, let's use your example, the spouses, that is
11  clearly a conflict of interest.  If a faculty member
12  is eligible to vote on his or her spouse's tenure
13  candidacy and the voting faculty member does not
14  recuse him or herself, what is the University
15  recourse or -- what does the University do in a case
16  like that, where there's clearly a conflict?
17     A    The responsibility to recuse themselves is the
18  faculty member's, it's not the FAS Dean's office.
19     Q    And if the faculty member fails to live up to
20  that responsibility, nothing happens to him or her,
21  there's no action taken?
22     A    There's a grievance procedure that considers
23  procedural irregularities.
24     Q    So is the grievance procedure different from
25  the appeal procedure?

1    A    It's the appeal procedure.

2    Q    So if the University is aware of a conflict

3    where the person did not recuse him or herself, it's

4    just, well, let's wait and, you know, even though we

5    know there's a problem, we know someone violated the

6    policy, by not recusing him or herself, the

7    University does not do anything about that?

8              MS. CHAVEY:  Objection.

9              THE WITNESS:  In the faculty handbook,

10        I'm not aware of any intervention process that

11        allows the FAS Dean's office, the provost or the

12        president to intervene at the point.

13   BY MS. WIKTOR:

14   Q    Is it the University's role or obligation --

15   does the University have an obligation to protect

16   faculty from the consequences of conflicts of

17   interest?

18             MS. CHAVEY:  Objection.

19             THE WITNESS:  Say that again, please.

20   BY MS. WIKTOR:

21   Q    Does the University have an obligation to

22   protect its faculty members, its employees, from the

23   consequences of this policy not being followed?

24             MS. CHAVEY:  Objection.

25             THE WITNESS:  The issue is defining

```
 1   BY MS. WIKTOR:
 2       Q    So we've talked about your role as an observer
 3   in the appeal process.  Now, in your role as an
 4   observer in the tenure consideration, were you given
 5   any authority by the University to take any action if
 6   you witnessed something that violated policy or
 7   procedure?
 8              MS. CHAVEY:  Objection.  Go ahead.
 9              THE WITNESS:  I remember a
10       conversation with Sue Byrne who expressed a
11       concern that my -- I would have to be silent
12       during the deliberations and not be able to say
13       anything but only report back.  Sue also asked
14       that I have -- was hoping that I would have
15       access to and read the tenure file that the
16       department would also be seeing.  Dean Gendler
17       agreed that in attending I should not
18       participate in the substantive deliberations,
19       but I should have access to all the materials
20       that the department had for making its
21       deliberations in that if I saw something that
22       appeared to be a procedural irregularity, I
23       could intervene.  It wasn't specified what that
24       meant, but that I didn't have to sit there and
25       only do it retroactively.
```

```
 1   BY MS. WIKTOR:
 2       Q    And so though it wasn't specified, what did
 3   you understand that you could do?  What did you
 4   understand intervention to mean?
 5       A    File an objection, or give guidance when I
 6   thought that -- if I perceived people deviating from
 7   the faculty handbook, and the FASTAP 2007 guidelines,
 8   and the promotions handbook as well.
 9       Q    Did you have the authority to stop the
10   process, the consideration of Sue's tenure
11   application?
12       A    That wasn't specified.
13       Q    Did you have an understanding one way or
14   another?
15       A    My understanding was I could say something, I
16   could object, I could -- and if the department
17   refused, we did not discuss what the next step would
18   have been.
19       Q    Now, why was the consideration of Sue Byrne's
20   tenure application held up while the climate review
21   was being done?
22       A    I don't know.  I know that only from Tamar
23   Gendler's letter saying that it would be held up
24   while that was going on, but again, I had no
25   information about what the content of that climate
```

|   |   |
|---|---|
| 1 | CERTIFICATE OF REPORTER |
| 2 | I, Wendy Allen, a RMR, CRR/Notary Public within and |
| 3 | for the State of Connecticut, do hereby certify there |
| 4 | came before me, on the 19th day of November, 2018, the |
| 5 | following named person, to wit: John Dovidio, who was |
| 6 | by me duly sworn to testify to the truth and nothing |
| 7 | but the truth; that he was thereupon carefully |
| 8 | examined upon his oath and his examination reduced to |
| 9 | writing under my supervision; that this deposition is |
| 10 | a true record of the testimony given by the witness. |
| 11 | I further certify that I am neither counsel |
| 12 | for, related to, nor employed by any of the parties to |
| 13 | the action in which this deposition is taken; and |
| 14 | further, that I am not a relative or employee of any |
| 15 | attorney or counsel employed by the parties hereto, |
| 16 | nor financially or otherwise interested in the outcome |
| 17 | of the action. |
| 18 | WITNESS my hand and affixed my seal this 3rd day of |
| 19 | December, 2018. |
| 20 | *Wendy J Allen* |
| 21 | |
| 22 | _____ |
| 23 | Wendy Allen, RMR, CRR |
| 24 | |
| 25 | My commission expires: April 30, 2020 |