```
 1                  UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT
 2

 3     * * * * * * * * * * * * * *
       SUSAN BYRNE,                    )
 4                                     )
              Plaintiff,               )
 5                                     ) Civil Action No.
          vs.                          ) 3:17-CV-01104 (VLB)
 6                                     )
       YALE UNIVERSITY, INC.,          )
 7                                     )
              Defendant.               )
 8     * * * * * * * * * * * * * *

 9

10

11           DEPOSITION OF:   ROLENA ADORNO

12           DATE:  FEBRUARY 22, 2019

13           HELD AT:  MADSEN, PRESTLEY & PARENTEAU, LLC

14                     402 Asylum Street

15                     Hartford, Connecticut   06103

16

17

18

19     Reporter:  Sandra Semevolos, RMR, CRR, CRC, CSR #74

20

21

22

23                   CASSIAN REPORTING, LLC
                     21 Oak Street - Suite 307
24                   Hartford, Connecticut   06106
                         (860) 595-7462
25                scheduling@cassianreporting.com
```

1  Q.   So there is handwriting on the first page of
2  the document.
3  A.   Yeah.
4  Q.   Is that your handwriting?
5  A.   Yes, it is.
6  Q.   It looks like at the bottom, it's referring to
7  a Google Drive folder.  So it says Google/Sue
8  Byrne/steps for promotion to associate professor?
9  A.   Professor or professor with tenure, uh-huh.  I
10 must have -- let's see.  Would I have given that to Sue?
11 Probably.
12 Q.   Well, based on earlier documents we've gone
13 through, it looks like Professor Valis was not appointed
14 to chair of the internal review committee until
15 approximately July 2015.
16 A.   Okay, that's correct.
17 Q.   There would be steps that you would have to
18 undertake before Professor Valis would become chair?
19 A.   And I did.
20 Q.   So very briefly, it looks like there is a
21 couple of steps that would be preliminary steps you
22 would likely have undertaken so I'm looking for
23 confirmation on that.
24      So the first step, which is on the second page
25 of this document, Bates Number 12567, it's a little hard

1  to read, but it says Inform candidate of process?
2      A.   Yes.
3      Q.   Do you recall informing Professor Byrne of the
4  process?
5      A.   Yes.
6      Q.   Step 2 says Submit/receive preliminary
7  materials.
8      A.   Yes.
9      Q.   Do you recall receiving preliminary materials
10 from Professor Byrne?
11     A.   I called for her preliminary materials on
12 March 30th or about March 30th, 2015, and at that
13 point -- and here we are, you know, in this February to
14 April thing.  Yes, I called for them, and I think it was
15 a day later that I let -- made an inquiry with the
16 associate dean of whatever in the faculty of arts and
17 sciences to say, look, I don't think it's a good idea
18 for me to chair this committee because I have just
19 chaired the one where the candidate was turned down for
20 tenure, that's Paulo Moreira, and here we have all of
21 this chaotic series of events in this past month, so I
22 think it would just be a good idea for me to step aside
23 and not do the chairing.
24     Q.   And when you say "this committee," you are
25 referring to the internal review committee?

1   following day to thank you very much regarding my
2   request, yeah, and would reiterate my choices.  And
3   then --
4       Q.   So in fact on page 3, Bates Number 12509, John
5   Mangan responds to your email and says Thank you for
6   being in touch about this.  And in the second paragraph
7   continues on to say, As chair of Spanish and Portuguese,
8   you are welcome to make if you wish, open paren, in
9   addition to Guiseppe, close paren, suggestions as to who
10  that faculty member should be, but the final decision
11  will need to be overseen by the FAS dean's office.
12          Do you see that?
13      A.   I do.
14      Q.   And it looks like if you go to the second page
15  of the document, Bates Number 12508, on April 11, you
16  again email John Mangan and the FAS dean email address
17  and say I would like to confirm those conversations and
18  reiterate my request to move ahead and formally appoint
19  Giuseppe Mazzotta for the departmental review committee
20  for the tenure consideration of Susan Byrne.
21      A.   Uh-huh.
22      Q.   Yes?
23      A.   I do see that.
24      Q.   And then above that email, which begins
25  actually on the first page, Bates Number 12507, there is

1    referees for Professor Byrne's 2015 tenure application?

2    A.    No, I did not, unless you tell me that I did.

3    But I don't remember doing that because by that time it

4    was a procedure in the hands of Professor Valis who was

5    appointed, not by me, because it was Amy and Tamar who

6    were making those appointments. So yeah, I didn't

7    participate in that. I might have given a name, but I

8    had no responsibility for it.

9    Q.    Did you give the name Roger Folger as a

10    possible external referee?

11    A.    I don't remember.

12    Q.    Did you give the name Alison Weber as a

13    potential external referee?

14    A.    I don't know.

15    Q.    Are you familiar with Roger Folger?

16    A.    Yes, I'm familiar with his work.

17    Q.    How so?

18    A.    Because he visited our department many years

19    ago, and I remember that year quite specifically,

20    because it was long ago enough, and that would have been

21    in the fall of 2002, to give a lecture.

22    Q.    Were you invited to speak at Heidelberg?

23    A.    Yes, I was. And that was in 2017.

24    Q.    And were you invited by Professor Folger?

25    A.    I was indeed.

```
 1      Q.    And have you ever spoken at the University of
 2   Virginia?
 3      A.    I believe I have.  I'd have to look at my CV.
 4   Yes, I suppose I did.
 5      Q.    Do you recall being invited by Professor Weber
 6   to speak at the University of Virginia?
 7      A.    No.  I recall being invited -- I do recall --
 8   by Professor --
 9      Q.    If you don't recall -- it sounds like you
10   don't recall --
11      A.    Her name.
12      Q.    -- the individual, but you know --
13      A.    Excuse me, but she was a person in my field
14   directly.  She did Colonial Spanish America.  And her
15   name is Ruth something, and that's S-o-m-e-t-h-i-n-g.
16      Q.    But it is not Professor Weber that --
17      A.    No.  I've written so many letters for Ruth, my
18   goodness.
19      Q.    And so you did not participate in the internal
20   review committee deliberations for Professor Byrne's
21   tenure application; is that correct?
22      A.    That's correct.
23      Q.    But you did participate in the general senior
24   faculty deliberations for Professor Byrne's tenure
25   application?
```

1       A.    Yes.

2              (Exhibit 79, previously marked.)

3   BY MS. HOWARD:

4       Q.    I'm handing you what's been previously marked

5   as Plaintiff's Exhibit 79.  I don't have specific

6   questions about the content; I just would like for you

7   to confirm that these are notes that you took of the

8   deliberations for Professor Byrne's tenure application.

9       A.    Yes.

10      Q.    And why did you take notes?

11      A.    I took notes -- I took notes after the meeting

12  so that I would have a clear recollection of it and

13  pretty specific.

14      Q.    And did you share your notes with anybody?

15      A.    I see that it's redacted in the way I did with

16  white-out tape.  Yes, to the general counsel's office.

17  And I very likely shared them with Nöel.

18      Q.    Did you share your notes with RGE?

19      A.    I don't believe so.

20      Q.    Did you share your notes with Professor Stith?

21      A.    I don't remember.

22      Q.    Did you share your notes with anybody else?

23      A.    This is from 2016.  Not to my recollection.

24      Q.    And you voted against granting Professor Byrne

25  tenure; is that correct?

1     A.    Yes, I did.
2     Q.    And why?
3     A.    The quality of her academic work at that
4  point. I spoke earlier about, yes, a good book in my
5  view for the promotion to associate on term, but that
6  upward trajectory was not met in the subsequent book,
7  the one that is -- the early one for promotion was on
8  Cervantes and then the next one -- for promotion to
9  associate, and then for a promotion to tenure was the
10 Vicino book, Vicino in Spain.
11    Q.    Did the external letters factor into your
12 decision to vote against granting Professor Byrne
13 tenure?
14    A.    Yes, along with many other factors because
15 there is no determinant factor in making such a
16 decision, in my experience, and the way I do it. There
17 is no one factor that can make or break a case.
18    Q.    Was there any factor that was the primary
19 factor in your decision?
20    A.    Yes, there was, and it was, I'm sorry to say,
21 the quality of that book. I had very high hopes for it.
22 When we promoted her the first time, I really did have
23 the very highest hopes for her.
24    Q.    And then at some point, Professor Byrne
25 appealed the denial of tenure; is that correct?

```
 1                  C E R T I F I C A T E

 2       STATE OF CONNECTICUT

 3              I, SANDRA SEMEVOLOS, a Registered Merit
         Reporter and Notary Public within and for the State of
 4       Connecticut, do hereby certify that I reported the
         deposition of ROLENA ADORNO on FEBRUARY 22, 2019, at the
 5       offices of MADSEN, PRESTLEY & PARENTEAU, LLC, 402 Asylum
         Street, Hartford, Connecticut  06103.
 6
                I further certify that the above-named
 7       deponent was by me first duly sworn to testify to the
         truth, the whole truth and nothing but the truth
 8       concerning her knowledge in the matter of the case of
         SUSAN BYRNE, vs. YALE UNIVERSITY, INC., now pending in
 9       the UNITED STATES DISTRICT COURT, for the DISTRICT OF
         CONNECTICUT.
10
                I further certify that the within testimony
11       was taken by me stenographically and reduced to
         typewritten form under my direction by means of COMPUTER
12       ASSISTED TRANSCRIPTION; and I further certify that said
         deposition is a true record of the testimony given by
13       said witness.

14              I further certify that I am neither counsel
         for, related to, nor employed by any of the parties to
15       the action in which this deposition was taken; and
         further, that I am not a relative or employee of any
16       attorney or counsel employed by the parties hereto, nor
         financially or otherwise interested in the outcome of
17       the action.

18
                WITNESS my hand this 7th day of March, 2019.
19

20

21                      [signature: Sandra Semevolos]

22       _____
         Sandra Semevolos, RMR, CRR, CRC, CSR #74
23       Notary Public
         My Commission Expires:  September 30, 2020
24

25
```

```
 1  TRANSCRIPT CORRECTIONS
 2  REPORTER:  SANDRA SEMEVOLOS, RMR, CRR, CRC, CSR #74
 3  CASE NUMBER:  3:17-CV-01104 (VLB)
 4  CASE STYLE:
 5  SUSAN BYRNE
 6     VS.
 7  YALE UNIVERSITY, INC.
 8  PAGE LINE     CORRECTION              REASON
 9   41  9    claimant > climate       Transcription error
10   50  6    miscomfort > discomfort       "
11   63  4    tenured case > tenure case    "
12   73  4    a Hamden PD > the Hamden PD   "
13   79  21   temporal success > temporal succession   "
14  108  24   intuition > institution      "
15  116  6    talk > tonic                 "
16  117  6    language speaking > Spanish-speaking   "
17  118  24   no > new                     "
18  119  25   Adorn > Adorno          spelling error
19  130  20   DTS > DGS               transcription error
20  139  10   tenure review > climate review   "
21  152  15   tenure review > climate review   "
22  162  2    causes > 'cusses'            "
23  166  19   graduate student's > graduate students'   "
24  181  13   and the > in the             "
25  NAME: Rolena Adorno       DATE: 03/19/19
```

Subscribed and sworn to before me this 23 day of MARCH, 20 19
Celia Zapata
Notary Public
My Commission Expires 07/28/2021

```
 1  TRANSCRIPT CORRECTIONS
 2  REPORTER:  SANDRA SEMEVOLOS, RMR, CRR, CRC, CSR #74
 3  CASE NUMBER:  3:17-CV-01104 (VLB)
 4  CASE STYLE:
 5  SUSAN BYRNE
 6      VS.
 7  YALE UNIVERSITY, INC.
 8  PAGE  LINE    CORRECTION                              REASON
 9  181   14    in humanities > in the Humanities Division    ellipsis in transcription
10  181   13-14 the arts and sciences in humanities >        ellipsis in transcription
11              the Faculty of Arts and Sciences in the Humanities Division
12  203   23    paint > heed                                 transcription error
13  206   9     Roger > Robert                               transcription error
14  206   15    Roger > Robert                               transcription error
15  209   10    Vicino > Ficino                              spelling error
16  209   10    Vicino > Ficino                              spelling error
17
18
19  Subscribed and sworn to before me
20  this 23 day of MARCH, 2019
         Cesar Zapata
21      Notary Public
22  My Commission Expires 02/28/2021       [Notary Seal: CESAR ZAPATA, NOTARY PUBLIC, STATE OF CONNECTICUT]
23
24
25  NAME: Rolena Adorno          DATE: 03/19/19
```