Internal Review Committee

Sue Byrne Tenure Promotion

February 3, 2016, 4:00 p.m., Departmental Library

Notes by Noël Valis

I conducted the meeting of the Internal Review Committee for Sue Byrne's tenure review. I read the Yale University statements on Confidentiality and Criteria for Promotion to Tenure. Present: Giuseppe Mazzotta, Howard Bloch, K. David Jackson, Noël Valis (Chair)

Here is the Summary of the committee's findings, given on Feb. 9, 2016:

Summary

Internal Review Committee for Sue Byrne Tenure Case (Feb. 3, 2016)

For Senior Faculty Meeting (Feb. 9, 2016)

As part of our deliberations here today, I will now summarize the findings of the Internal Review Committee for the Sue Byrne Tenure Case. The members of the committee are David Jackson, Giuseppe Mazzotta (from the Dept. of Italian), Howard Bloch (from the Dept. of French), and myself, Noël Valis, as Chair. We met on Feb. 3, 2016. I should add that Giuseppe, David, Howard, and myself will be happy to answer any questions you may have after I conclude this summary. Our discussion took up the better part of two hours, and I was the last to speak.

We agreed that Sue's service, at Yale and for the profession, was first-rate. She has served, for example, as DUS for Spanish, participated in the Committee for the Course of Study, the Yale College Selection Committee for the incoming freshman class, and other committees. She has been very active in the Renaissance Society of America, the Cervantes Society of America, the Asociación Internacional Siglo de Oro, and other groups. In the area of teaching, she has a solid record, having taught a wide variety of courses, at undergraduate and graduate levels, with commendable student evaluations.

On her scholarship: the committee members admired her productivity and her archival zeal, but felt that the scholarly, intellectual focus was unduly narrow, missing the big picture that would have allowed Sue not only to speak to a broader audience but to draw from her own research findings the larger significance that one expects to find in work produced at this stage of a scholar's career. Deficiencies in her writing skills were also noted, one member remarking on

"the primer quality in the writing" and another on the scattershot approach, jumping from topic to topic, especially in the book on Ficino.

On *Law and History in Cervantes' "Don Quixote"*: one member found the book to be "almost unrecognizable" as an account of what medieval law was; not much attention was paid to procedure, testimony, or means of proof; and the version of history presented was at times naïve. The treatment of law appeared to be thematic, and the complex dynamic between literary and legal texts mostly undeveloped. The book could be considered "a well-done school exercise," but with no sophisticated articulation of the relationship between customary law and Cervantes's novel.

A committee member was surprised to see the focus on Paolo Giovio precisely because the Giovio-Cervantes relationship, which is central to the book, remains an unconvincing one. He noted the absence of the most important Spanish jurists of the sixteenth century, such as Francisco Suárez or Francisco de Vitoria. He also felt that the larger discourse was simply not there.

On *Ficino in Spain*: The same committee member felt that this publication was more disappointing than the work on Cervantes, as the book seemed to be mostly a compilation of references to Ficino in Spain. Sue did not appear to understand the complexity of Ficino, in addition failing to go beyond surface argument or to recognize the vital relation between humanism and neoplatonism.

Here too, the thematic treatment was noted, as well as a tendency to give glosses rather than in-depth analyses. While this is painstaking, careful work, it is, in large part, a conventional influence and bibliographic study, which does not take on the larger issues or demonstrate, ultimately, what difference the presence of Ficino in Spain made.

It was also remarked that Sue was a "competent scholar" and a productive one. But it was pointed out that competence is a relatively low bar and quality is generally valued over quantity.

The committee also discussed the external letters, but concluded that the set of letters do not shine and are not a high ranking set of letters.

I reviewed the letters individually, noting salient points.

Mazzotta observed how important any tenured appointment is, the lasting impact it would have on any department over years and years. Jackson said that in SB's case it would be of less impact, because of her age, a point of information that had never arisen before (or since) the Internal Review Committee meeting. I immediately noted that it was inappropriate to bring up a person's age in such considerations, that the only thing we were looking at here was her work. Bloch and Mazzotta agreed. It is important to keep in mind that neither Bloch nor Mazzotta

could have been aware of SB's age prior to evaluating her scholarly work. At any rate, the Jackson comment was not just inappropriate; it was irrelevant.

Valis, Mazzotta, and Bloch did not find her tenurable. The Summary expressed our reservations. Jackson agreed, overall, with our assessment, but nonetheless, supported her promotion to tenure. He had reservations, but thought she should be promoted, more for the intentions than the results of her scholarship, and for her productivity, which exceeded that of two of the comparison candidates.

It was also noted that she had been mentored, in person and in writing, throughout her time at Yale.

The meeting was adjourned at 5:50 p.m.

Byrne000376