# Exhibit 52

| | |
|---|---|
| **From:** | Rolena Adorno [rolena.adorno@yale.edu] |
| **Sent:** | Sunday, March 22, 2015 5:10 PM |
| **To:** | Valis, Noel |
| **Subject:** | Re: Fwd: Wednesday's meeting |

Thank you, Noel, for reading this so carefully. Yes, as you said earlier today, "paranoia and fantasy."

Rereading these things (including the October 17 zinger in which she rejected the write-up by Roberto of her first proposal), alongside all the anonymous prose we've seen, is revealing. I am still not over the shock of that mid-October zinger, and since then she's become more strident, more self-righteous, more vicious--and of course, also more of a "rising star".

Un abrazo,
Rolena

On Sun, Mar 22, 2015 at 2:43 PM, Valis, Noel <noel.valis@yale.edu> wrote:
Unbelievable, Rolena.

There was absolutely no change in our procedures. She was asked and advised to consult with other faculty. It is not a requirement, and it is up to her to do that or not.

The objections to her proposal that she mentions in the email only include a couple of them. There were many, and very serious, objections to the proposal. She appears to be saying that we had not allowed her to make changes to the proposal. This is not the case. We found the proposal to be a bad one. She was given the opportunity to submit another proposal.

She suggests that we did not allow her to consult with us after we met and judged the proposal to be poorly executed. That is not true. We gave her detailed feedback and urged her to meet with us so that she could produce a good proposal the second time around.

Finally, her email is a good example of Sue's poor writing skills.

Un abrazo,
Noel

On 3/22/2015 2:24 PM, Rolena Adorno wrote:

Dear Noel,

Here's the full chain--and I mean, chain!

Un abrazo,

Rolena

---------- Forwarded message ----------
From: **Susan Byrne** <susan.byrne@yale.edu>
Date: Fri, Jan 9, 2015 at 8:06 AM
Subject: Re: Wednesday's meeting
To: Rolena Adorno <rolena.adorno@yale.edu>, "Dovidio, John" <john.dovidio@yale.edu>

1

BYRNE003893

Cc: Susan Byrne <susan.byrne@yale.edu>

Dear Rolena and Jack,
In general, a summary of what took place at a meeting is, of necessity, a "review of past actions." If we take out everything that can be so classified, we are left with nothing. As the summary with my emendations stands, there are no assumptions or recommendations, only points raised, discussed, and agreed to, which seems to accord with Robert's rules, although I don't have a copy here at home [!].

I can't find any referece to a "who communicated what to whom when" (Rolena, message below) in Jack's earlier messages. It seems to relate to the emendation regarding knowledge of the status of my proposal getting to the department, and then to me, but it misrepresents the emails exchanged yesterday. Jack and I have both agreed that the exchange took place at the meeting, I explained why the point was important to me, and we worked out a phrasing that represents it neatly. I ask that the emendation remain in the summary.

Given that Jack accepted without question the emendation regarding our discussion and agreement about department review committee members having permission to speak with me as I prepare the proposal, I did not further explain that requested emendation yesterday. I'll do so now, so that you both might understand why it matters to me.

Our departmental norm is to encourage the person writing a proposal to consult with all members of the department, both before and after it is approved or denied. This is in the interest, as Jack's summary reflects and Rolena confirmed at our meeting, of helping that person produce the strongest possible proposal. This happens, for instance, with graduate students preparing proposals for their dissertations. It has been the standard for all assistant professors as they prepare proposals, respond to comments, and re-write to improve them. Last year (fall 2013), when I was asked to prepare a proposal in one week, I received individual comments from each committee member.

This year, however, that department standard was changed and, as I learned during our meeting on Wednesday, this mattered a lot. Had I been able to speak with review committee members, I could have dissuaded them of misconceptions: Rolena, for instance, in our meeting on Wednesday, said that my earlier proposal should have included an author named Quevedo. Francisco de Quevedo, however, had not even been born during the time frame of most of my earlier proposal, and was only 16 years of age by the time the last work to be considered was published. I had established a chronological limit for a purpose, as stated in the proposal itself. Rolena also said during our meeting, in responding to my request for a "clear, legitimate explanation" for the rejection of my earlier proposal, that it "had no canonical authors or works" but, as I replied, it was chock-full of them: Cantar de mío Cid, Libro de buen amor, La Celestina, Lazarillo de Tormes, Fray Luis de León. Had I been able to speak with Rolena about these issues earlier, she might have changed her vote and approved the proposal. Noël still has not said a word to me about the earlier proposal and I would like to know, for intellectual benefit, her thoughts on it.

It is quite germane to me that I have seen the department employ this same "gag-order" tactic in the past, in cases where it was strategizing to get rid of someone in a way that violated not only department standards, but also university policies and principles. Having seen the strategy, I recognized it when it was turned against me with my earlier proposal. It was disconcerting. For that reason, I was pleased when Jack asked Rolena, during the meeting, if our department allowed such conversations as a proposal was being prepared, and Rolena responded that yes, it encouraged them. I welcome the return to that standard practice, and believe it worthy of a clear statement in the summary.

I also fully recognize, however, that Rolena may have changed her mind on that point, and might now wish to renege on the agreement we reached in the meeting. Should that be the case, it should be stated without equivocation.

BYRNE003894

I believe that clarity, honesty, and consistency is the best and only truly workable policy. For that, I would request that both emendations remain in the summary.

Yours,
Sue

**From:** Rolena Adorno <rolena.adorno@yale.edu>
**Date:** Thursday, January 8, 2015 5:58 PM
**To:** "Dovidio, John" <john.dovidio@yale.edu>, Susan Byrne <susan.byrne@yale.edu>
**Cc:** Rolena Adorno <rolena.adorno@yale.edu>
**Subject:** Re: Wednesday's meeting

Dear Sue and Jack, from Newark and having read your emails subsequent to yours, (Jack's) just below.

Like you, Jack, I do not recall a "who communicated what to whom when" Q & A at yesterday's meeting.

So I do not accept your, Sue, first emendation as part of yesterday's meeting summary.

However, I believe that your, Jack, remarks just below are helpful and germaine to the case. And we have them here, electronically, for our reference. It is a fair characterization.

But I accept neither of your, Sue's, emendations, because our minutes are the meeting's summary, neither a review of past actions or assumptions, nor recommendations for future action. I will share our summary report with my committee colleagues in any case.

Rolena


Sent from my iPhone

On Jan 8, 2015, at 2:09 PM, "Dovidio, John" <john.dovidio@yale.edu> wrote:

> Sue,
>
> I can do that, but it is a bit more complicated.
>
> If the department chair conveys  department approval of the proposal, then the FAS Deans Office reviews the materials and will communicate a final determination, normally by January 20th, to the candidate and department.
>
> If a department chair communicates that the proposal is not approved by the department, the FAS Dean's Office is not authorized to further review the proposal and potentially reverse the departments decision.  (I believe that Rolena had assumed in earlier correspondence with you that the FAS Dean's Office could reverse a department's decision to to approve a proposal and that a candidate could make an appeal to the FAS Dean's Office.  Although that was a common assumption, a careful review of Yale's documents revealed that neither are possible within the procedures currently in place.  The FAS Dean's Office can change a department's "yes" to a "no," but not a "no" to a "yes.")  Candidates for whom a leave proposal is not approved will also be informed (along with the department), normally by January 20th.
>
> I do not recall us discussing this at the meeting.  If we did not, then it should not go into the summary.  If you and Rolena recall that we did, then can you suggest wording that reflects what we said in a way that is consistent with policy and Procedures.

3

BYRNE003895

If my recollection is correct and you want the procedures in writing, I am happy to have the FAS Dean's Office do that.

Thanks for your help and patience.

Jack

**From:** Susan Byrne [susan.byrne@yale.edu]
**Sent:** Thursday, January 08, 2015 12:58 PM
**To:** Dovidio, John; Rolena Adorno
**Subject:** Re: Wednesday's meeting

Dear Jack,
The statement you have is correct, as I read it, and that is how it happened for that first step, so I'm fine with that part being included. However, the subsequent step still isn't referenced, and that is the one where I was confused. Rolena's earlier email to me (attached to the last message) indicates a different expectation about the order for that communication, and the timeliness of it getting to me. Can you get the part about the FAS Dean's office communicating its determination back to the chair, and when it happened in this case, into what you have below? That was my concern yesterday.
Thanks again-
Sue

**From:** "Dovidio, John" <john.dovidio@yale.edu>
**Date:** Thursday, January 8, 2015 12:48 PM
**To:** Susan Byrne <susan.byrne@yale.edu>, Rolena Adorno <rolena.adorno@yale.edu>
**Subject:** RE: Wednesday's meeting

Sue,

Given the steps that I clarified (I went back through various university documents to confirm) can we change

Sue asked if the department had been informed regarding her proposal last week, and Jack said it had.

to

Sue asked about the steps in the procedure and Jack explained that the department reviews the proposal, and the chair communicates to the FAS Dean's office whether it approves the leave request based on its evaluation of the proposal.

(Rolena, OK with you, too?)

Thanks,

Jack

**From:** Susan Byrne [susan.byrne@yale.edu]
**Sent:** Thursday, January 08, 2015 12:39 PM

BYRNE003896

**To:** Dovidio, John; Rolena Adorno
**Subject:** Re: Wednesday's meeting

Dear Jack,

Sure! The suggested change is to clarify the procedural step subsequent to the point that you have stated below (department informs FAS Dean). I had asked Rolena about this in an earlier email, and she told me that the FAS Dean would communicate the information on their determination directly to me, rather than to the department chair. She indicated that there was probably an erroneous statement of procedure in the original memo from the FAS Dean's office. I'm attaching that email from Rolena to me here, in case it helps to clarify.

Given that information in Rolena's previous email, yesterday I asked about the process and timing. You clarified that the determination on the proposal had come back to the department last week, which conforms to the original memo from the FAS Dean's office. That was the step (FAS Dean informs department) that generated Rolena's email to me about the meeting, and then the actual meeting. Given the different information about that step that I'd had from Rolena (attached email), I thought the point worthy of clarification and direct statement in the minutes.

Perhaps I didn't phrase it properly? If so, I have no problem with it being re-phrased – I just didn't want to make it a long, drawn-out explanation, like this one [!].
Thanks,
Sue

**From:** "Dovidio, John" <john.dovidio@yale.edu>
**Date:** Thursday, January 8, 2015 11:35 AM
**To:** Susan Byrne <susan.byrne@yale.edu>, Rolena Adorno <rolena.adorno@yale.edu>
**Subject:** RE: Wednesday's meeting

Sue,

I have a question about the meaning of:

Sue asked if the department had been informed regarding her proposal last week, and Jack said it had.

The process is that the departmental committee that reviews the proposal, communicates its evaluation to the department chair, who informs the FAS Dean's office about the evaluation and ultimately to support or not support the leave proposal/request.

Can you clarify your suggested change in that context?

Thanks,

Jack

**From:** Susan Byrne [susan.byrne@yale.edu]
**Sent:** Thursday, January 08, 2015 10:50 AM
**To:** Dovidio, John; Rolena Adorno
**Subject:** Re: Wednesday's meeting

5

BYRNE003897

Dear Jack and Rolena,
I do have two small extra pieces, and I have inserted them below, into Jack's summary. I'm not sure if the colors will come through as I don't normally use them, but the changes are in the second and eighth sentences. I also have a question regarding the last point (eighth sentence edit), about department review committee members having permission to discuss the proposal with me. Will it be possible to include them in the final message with these minutes, so that they know about this change? From yesterday's discussion, you'll remember that with my last proposal, I asked for notes from all three early in the process (which is how things normally work in our department), but I was told that wasn't possible. The members were restricted, i.e., not allowed to speak with me individually, and I want to be sure they aren't uncomfortable when I go to them about this one.

Thanks again to both of you!
Yours,
Sue


At the meeting of 1/7/15,


Rolena and Jack informed Sue that the proposal she submitted for an Associate Professor Leave was not approved, even with the revisions that were made.


Sue asked if the department had been informed regarding her proposal last week, and Jack said it had.


Sue was informed that the department and the Office of the FAS Dean were making a substantial exception to offer an extension of the deadline to permit the submission of a new proposal for review by the department.  This new proposal must be submitted to the department by midnight on February 4, 2015.


As stated in the letter by Roberto Gonzalez Echevarria to Rolena on October 17, 2014, there were concerns among members of the department review committee about the "conceptual bases of the project" that was originally submitted.


One direction for a new proposal recommended in that letter was to focus on "Tirso's *El burlador de Sevilla*, which seemed ripe for study from a legal point of view."  Sue indicated that this idea was compatible with her interests and that she plans to pursue this topic in her new leave proposal.


Jack noted that pursuing this direction would not guarantee the department's approval of the proposal, and Sue and Rolena acknowledged that point.

BYRNE003898

Rolena explained that the department's suggestions for a more focused proposal are not intended to limit the scope of Sue's scholarship overall, but they are intended to help her produce a stronger leave proposal.

Sue expressed her appreciation for the department's willingness to offer her this exceptional opportunity, and Rolena assured Sue that she should feel free to seek intermediate feedback from department review committee members, and that those members may provide such feedback.

Jack reiterated that the normal procedures for leave review and approval continue to apply, only the submission date has been extended.

The meeting concluded with Sue expressing her appreciation and stating her intention to submit a new proposal.

---

**From:** "Dovidio, John" <john.dovidio@yale.edu>
**Date:** Thursday, January 8, 2015 9:36 AM
**To:** Susan Byrne <susan.byrne@yale.edu>, Rolena Adorno <rolena.adorno@yale.edu>
**Subject:** RE: Wednesday's meeting

Dear Rolena and Sue,

As I mentioned earlier today, I am writing now to summarize our meeting this morning. Can you get back to me with any corrections or a statement indicating that you agree with this summary?

Thanks for a productive meeting.

Jack

At the meeting of 1/7/15,

BYRNE003899

Rolena and Jack informed Sue that the proposal she submitted for an Associate Professor Leave was not approved, even with the revisions that were made.

Sue was informed that the department and the Office of the FAS Dean were making a substantial exception to offer an extension of the deadline to permit the submission of a new proposal for review by the department. This new proposal must be submitted to the department by midnight on February 4, 2015.

As stated in the letter by Roberto Gonzalez Echevarria to Rolena on October 17, 2014, there were concerns among members of the department review committee about the "conceptual bases of the project" that was originally submitted.

One direction for a new proposal recommended in that letter was to focus on "Tirso's *El burlador de Sevilla*, which seemed ripe for study from a legal point of view." Sue indicated that this idea was compatible with her interests and that she plans to pursue this topic in her new leave proposal.

Jack noted that pursuing this direction would not guarantee the department's approval of the proposal, and Sue and Rolena acknowledged that point.

Rolena explained that the department's suggestions for a more focused proposal are not intended to limit the scope of Sue's scholarship overall, but they are intended to help her produce a stronger leave proposal.

Sue expressed her appreciation for the department's willingness to offer her this exceptional opportunity, and Rolena assured Sue that she should feel free to seek intermediate feedback from department members.

Jack reiterated that the normal procedures for leave review and approval continue to apply, only the submission date has been extended.

The meeting concluded with Sue expressing her appreciation and stating her intention to submit a new proposal.

8

BYRNE003900

9

BYRNE003901