# Exhibit 63

**From:**  Stith, Kate [kate.stith@yale.edu]
**Sent:**  Thursday, July 16, 2015 6:05:31 PM
**To:**  Rolena Adorno
**Subject:**  RE: two matters

Yes, this is the script!

*Kate Stith*
*Lafayette S. Foster Professor of Law*
*Yale Law School*
*P.O. Box 208215*
*New Haven, CT 06520-8215*
*(courier: use 127 Wall St., 06511)*
*203-432-4835*

**From:** Rolena Adorno [mailto:rolena.adorno@yale.edu]
**Sent:** Thursday, July 16, 2015 4:06 PM
**To:** Stith, Kate
**Subject:** Re: two matters

On the letter: Oh, wonderful, Kate! Thanks so much and: no rush, as other meetings and obligations come up for you today.(Ben will not be back until August 1, remember.) Also, on The Letter, I am increasingly of the mind that Peter is completely out of the academic loop. For ex., his Monday July 13 letter saying that I should contact Tamar for "all such decanal matters," that is, my leave request. It turns out that FAS Steering had already looked it over by Friday July 10 (actually, probably on Thursday July 9, if they keep to their academic-year schedule.) My reading is of his July 13 letter to me that he is not bothering (and should not be bothered) with these matters. (I have not scanned his July 13 etter, so I know you do not have it. Will do tomorrow, to add to your file.) In this light, I think we can leave out of consideration about how Peter might read The Letter.

On the evil-doings of February-early March: I feel that I can now practically write the script. The minute SB got wind of our Feb. 6 turn-down of her APL proposal, maybe as early as February 8, which is the day that JD asked for my summary of our reasons for the turn-down and also the day that SB signed the TLA form), she started working. She drew together the old (AGP and PM) gripers and the newer ones (KDJ and the other PM) and got them going. Her Feb 14 note to EP ("I liked your Nov 20 *YDN* article) was an invitation to further conversation. They had it.And her claims were going to be brought to the *YDN*, with the others chiming in, at SB's prompting. But then (after the of anonymous letter appeared), she drew EP's attention to it as the same time as she asked not to be quoted, due to the coincidence of themes and charges.

This, altogether, explains Ben's reference to "claims that are unusual for Yale." When, previously, had a tenure-track professor turned so viciously against her own chair, in the year before the tenure decision was to be made? When, previously, had such a person brought with her a posse of complainants, aiming (golden opportunity!) to settle old scores (AGP and PM), as you put it, and to reactivate immediately previous lost causes (KDJ and the other PM)? This IS unusual, and we can thank the unusual SB for pretty much all of it. So why the "climate review"? To find out if I am as much hated by others in the department apart from the afore-mentioned. Hence, the queries to Susan Wheeler and others as to if they had had problems with me. Boy, this could really add up to a lynching, as I (without imagining why) always thought--were it not for you, keeping me out of the booby traps that I could not quite see.

Another topic in the next email: a George Hines update.

Cheers,
Rolena

BYRNE004838

On Thu, Jul 16, 2015 at 3:36 PM, Stith, Kate <kate.stith@yale.edu> wrote:

Rolena:  I worked on the letter for an hour this morning and have been tied up since then. I am now back to the letter, with your concerns in mind. Jose mentioned to me this morning that it might be too long. I will try to make it shorter and less whiney!  Yes, I agree with you on (1) below; God knows what she said—but the reviewers sure couldn't have too much about her.

*Kate Stith*
*Lafayette S. Foster Professor of Law*
*Yale Law School*
*P.O. Box 208215*
*New Haven, CT  06520-8215*
*(courier: use 127 Wall St., 06511)*
*203-432-4835*

**From:** Rolena Adorno [mailto:rolena.adorno@yale.edu]
**Sent:** Thursday, July 16, 2015 2:07 PM
**To:** Stith, Kate
**Cc:** Jose Cabranes
**Subject:** two matters

The first matter:

I think you are really on to something regarding pre-letter complaints and SB's involvement in them. I checked dates from the "Calendar of Events" going from February through early March and also printed out a couple of pertinent documents.

Feb 6: I conveyed our negative vote on the APL to the Dean.
Feb 25: SB gets the official letter, signed by JD for the Dean, turning SB down.

Yet Feb 8 is the date SB signed the request for a TLA, which she brought it to me to sign on March 9, --which was the same day she wrote to EP asking not to be referenced if whatever she had told EP in an earlier interview turned out to be more or less the play book for what had become the anonymous letter.

(On Mar 6 JD called me to say they were giving SB a TLA. On Mar 9 SB shows up at my office for my signature on the TLA form. (No doubt SB was told not to pass me that form until she got the high sign from JD that he had informed me.)

So I am thinking that the "claims that are unusual for Yale," as Ben wrote to me, may be all this business, all the stuff that was spewed out in "secret complaints" (your or Jose's felicitous phrase) of SB, to which were then added those of AGP, PM, KDJ, the other PM, etc.

Second matter: My letter to Ben. I read it yet again and yesterday's draft sounds now (venting aside) altogether too whiny. I added too much to Jose's and your Closing Statement draft ("Rolena insert at end.docx").

So when you read it again, if you can boil it down to its real essentials, which you see so much more clearly than I, I will appreciate it. For example, your "the chair is not responsible for everything, even if made the target of complaint" is crucial. I lose the forest for dwelling on the trees (--or swinging from branch to branch, tree to tree, like a monkey! An image that makes me chuckle.)

Cheers,
Rolena

BYRNE004839