# Exhibit 82

| | |
|---|---|
| **From:** | Jose_Cabranes@ca2.uscourts.gov |
| **Sent:** | Sunday, December 13, 2015 1:46 PM |
| **To:** | Noel Valis |
| **Cc:** | Stith, Kate; rolena.adorno@yale.edu |
| **Subject:** | Might I have a brief moment with you? |
| **Attachments:** | Further KS JAC revision.docx |

    My own view is that the (useful) question raised here by Noel is best raised during the hoped-for consultation with regard to an agreed-upon text, and in connection with any "language' being discussed in this respect. The question is too much of a hot potato to be raised at the threshold; it may reinforce any inclination to not collaborate on an agreed-upon text.

    By the way, the request that Rolena would be making in this letter is entirely common in all arrangements to complete or settle a matter of contention, in the "real world" of business and in the legal world.

From: Noel Valis <noel.valis@yale.edu>
To: "rolena.adorno@yale.edu" <rolena.adorno@yale.edu>, Jose Cabranes <Jose_Cabranes@ca2.uscourts.gov>, "Stith, Kate" <kate.stith@yale.edu>,
Date: 12/13/2015 01:38 PM
Subject: Fwd: Might I have a brief moment with you?

Writing too fast!

-------- Forwarded Message --------

| | |
|---|---|
| **Subject:** | Might I have a brief moment with you? |
| **Date:** | Sun, 13 Dec 2015 13:21:10 -0500 |
| **From:** | Noel Valis <noel.valis@yale.edu> |
| **To:** | rolena.adorno@yale.edu <rolena.adorno@yale.edu>, Stith, Kate <kate.stith@yale.edu>, Jose Cabranes <Jo... |

I know we don't want too much in the letter, but **Given** the fact that a university-wide survey on sexual misconduct, etc. this semester has indicated an apparent broad problem, why not ask why ALL departments are not being asked to do this training? Why not suggest they speak of this at the meeting?

Noel

-------- Forwarded Message --------

| | |
|---|---|
| **Subject:** | Might I have a brief moment with you? |
| **Date:** | Sun, 13 Dec 2015 13:11:12 -0500 |
| **From:** | Jose_Cabranes@ca2.uscourts.gov |
| **To:** | Stith, Kate <kate.stith@yale.edu> |
| **CC:** | Noel Valis <noel.valis@yale.edu>, Rolena Adorno <rolena.adorno@yale.edu> |

1

Excellent revisions----but we should reach "closure" now, lest we get into too much detail in this letter. I think this particular expansion is OK because it presages or flags the putative statement that you recommend be drafted in advance of the Tuesday meeting.

**Frankly, the letter as now revised also usefully presages disaster if they ignore this modest advice and proceed to "step in it." ("Well, we did tell you so. . . . What would you expect in these circumstances?").**

I would go with this latest version, and as soon as practicable by PDF attachment to an email address jointly to The Big Three, since the accompanying letter is addressed to The Big Three. With a "cc" to Noel, for sure---QUERY: a "cc" to Kate? Or, rather, a "bcc"? Which is politically advisable at this point?

Best---

                Jose

I have no idea why my not-light touch of the keyboard converted the second paragraph above into Magenta color in bold; not intentional.

---

From: "Stith, Kate" <kate.stith@yale.edu>
To: Rolena Adorno <rolena.adorno@yale.edu>, Jose Cabranes <Jose_Cabranes@ca2.uscourts.gov>,
Cc: Noel Valis <noel.valis@yale.edu>
Date: 12/13/2015 12:56 PM
Subject: RE: Might I have a brief moment with you?

---

Try out the attached (which is redlined). Best, Kate

*Kate Stith*
*Lafayette S. Foster Professor*
*Yale Law School*
*P.O. 208215*
*New Haven, CT*
*06520-8215*
*(courier: use 127 Wall St., 06511)*
*203/432-4835*

**From:** Rolena Adorno [mailto:rolena.adorno@yale.edu]
**Sent:** Sunday, December 13, 2015 12:12 PM
**To:** Jose Cabranes
**Cc:** Stith, Kate; Noel Valis
**Subject:** Re: Might I have a brief moment with you?

Thanks, Jose! Inputting your edits now,
Rolena

On Sun, Dec 13, 2015 at 12:07 PM, <Jose_Cabranes@ca2.uscourts.gov> wrote:
  Final comments from the bleachers: at the third line of page 2, after "uncirculated," strike "reference" and, after

2

"source for" insert "future reference and for"

    Also, a question of formatting: Because of the important footnote, and the importance of the message in all respects, and because electronic transmissions sometimes are visually distorted and, in any event, not easily read, I recommend that this be sent as **a letter in PDF (no distortions, no nothing) attached to an email.**

    I agree that the final version of something along these lines should go out ASAP, so they have as much time as possible to "digest" it before the appointed time of the Tuesday meeting.

                                      Jose

From:     "Stith, Kate" <kate.stith@yale.edu>
To:     Rolena Adorno <rolena.adorno@yale.edu>, Noel Valis <noel.valis@yale.edu>,
Cc:     "Jose_Cabranes@ca2.uscourts.gov" <Jose_Cabranes@ca2.uscourts.gov>
Date:     12/13/2015 11:52 AM
Subject:     RE: Might I have a brief moment with you?

This is the Jose revision, with further revision by KS, of the proposed email. It would go to all three of them, and would be from Rolena. It's probably still too wordy. But we do think it is important to give them precise text and important to get it out asap.

*Kate Stith*
*Lafayette S. Foster Professor*
*Yale Law School*
*P.O. 208215*
*New Haven, CT*
*06520-8215*
*(courier: use 127 Wall St., 06511)*
*203/432-4835*

**From:** Rolena Adorno [mailto:rolena.adorno@yale.edu]
**Sent:** Sunday, December 13, 2015 11:04 AM
**To:** Noel Valis
**Cc:** Stith, Kate; Jose_Cabranes@ca2.uscourts.gov
**Subject:** Re: Might I have a brief moment with you?

Kate:
As I read through your fine letter, I wonder why the FAS does not use the opportunity to have ALL FAS departments do this "refresher" course?

You point out:"While the Report you received does not present evidence on which you could conclude there are factual bases for these serious allegations--such matters are appropriately referred to Title IX officers at the University-- you did learn from Report that some members of the faculty of this Department were not clear about the actions they should take if advised of possible sexual misconduct in the Department."
The two conditions you mention--the lack of actionable evidence of wrongdoing, and the lack of information/awareness by faculty about how/where to report sexual misconduct--would surely apply to all departments in the FAS. Especially since only "supervisors" (like dept chairs) have been required to take that training in the past.
I have no doubt that the Yalie Daily will gleefully report our being singled out for sexual misconduct training, and it will even more gleefully revert back to quoting the anonymous letter, and also itself, in the YDN's infamous article of March 25, 2015, in which Roberto is repeatedly cited for the claim of being guilty of sexual

3

BYRNE003821

harassment after being initially characterized as the "main assailant." And I am cited "for failing to address the issue with him." On April 23, 2015, revisiting its earlier article, the Yalie Daily again reported that the unsigned letter claimed "that an individual in the department sexually harassed others in the department--students and faculty, alike".

I have no doubt that Roberto (and I secondarily) will be "convicted".
Regarding the Yalie Daily, Ben thinks that it is this year "more responsible" and that we should remember that there is a "choice point" here, namely, that we can either respond to them, or suggest to them a narrative. I find this view utterly naive.
Can you point out these dangers to Lynn, or would she find all this implausible or irrelevant?
Also, as I pointed out at the Friday meeting, our goose is going to be cooked regarding graduate admissions 2016 with the attention that our "sexual misconduct retraining" will be given at the meeting on Tuesday and in the Yalie Daily on Wednesday.
Planning for the worst,

Rolena

On Sun, Dec 13, 2015 at 9:54 AM, Noel Valis <noel.valis@yale.edu> wrote:
Dear Kate,

I think this is a good idea to write them about this matter. Things get lost when orally delivered.

Many thanks for this follow-through, so necessary under the present circumstances when words alone can do so much damage.

Noel
On 12/12/2015 9:15 PM, Stith, Kate wrote:
I'm still worried about the fact that they are having Spanish & P faculty members take sexual harassment training. This could be spun very badly unless it is carefully presented. Here is my idea of a letter trying to make this palatable in a way that does not harm the Department (nor any member thereof). I probably should send this to Ben with a copy to Lynn and to Tamar, so as to not "diss" Ben and Tamar). But here is my idea, which I wrote with Lynn in mind:

Dear Lynn:
      I am very glad to have at last meet you, having heard many accolades (from many sources). There is one matter that I'd greatly appreciate discussing with you regarding the wording of your oral announcement on Tuesday to the Spanish & Portuguese Department.
I tell you my concern in this email because I do think it is important and I worry that a quick conversation between you and me will not be sufficient. My concern is this: If a climate review were undertaken of any Department or School, there is no doubt in my mind that there would be unearthed "first-hand accounts," "second and third hand accounts," and simply "rumors" of the broad swath of actions that may constitute sexual misconduct --ranging from (as we were told in our meeting) unwarranted sexual overtures to potentially or actually offensive words or attempts at humor.
I understand that given that the Spanish Department reviewers have advised you that some faculty members do not know what they should do if advised of inappropriate behavior of a sexual nature, and you don't know the names of those faculty members because the climate Report did not identify anyone, you have determined that all of the faculty should (re)take sexual harassment training.
Yet I assume that you would agree that a similar drill-down review and Report would be forthcoming with respect to most ANY Department or School to which such a microscope had been applied. My goodness: some 60 people were interviewed in relation to a very small Department. Extrapolating, that would be hundred, perhaps thousands, of people at the Law School. Trust me: you'd find inappropriate behavior by students and

faculty at any place subjected to such intense review--in part because norms about sex and sexual humor are in the midst of great change, and there was no "statute of limitations" on the review of the Spanish Department. My bottom line: I hope that in announcing that faculty in the Spanish Department will take sexual misconduct (or is it only "harassment"?) training, you could make clear that you have no basis for concluding that there has been such behavior in that Department, by students or faculty. More specifically, the officers would recount that the Provost and Deans initiated a review of this particular Department because of a variety of mostly anonymous allegations, some of which concerned alleged sexual misconduct. While the Report you received does not present evidence on which you could conclude there are factual bases for these serious allegations-- such matters are appropriately referred to Title IX officers at the University-- you did learn from Report that some members of the faculty of this Department were not clear about the actions they should take if advised of possible sexual misconduct in the Department. For that reason, and that reason alone, all members of that Department have been asked to be trained by Yale's professionals in sexual misconduct and the thorough procedures that Yale has in place to identify and respond to such inappropriate behavior, by students or faculty. This is accurate, reasonable, and potentially avoiding more "bad press" internationally-- THE LAST THING WE NEED--for Yale's Department of S & P.

*Kate Stith*
*Lafayette S. Foster Professor*
*Yale Law School*
*P.O. 208215*
*New Haven, CT*
*06520-8215*
*(courier: use 127 Wall St., 06511)*
*203/432-4835*

5

BYRNE003823

Dear Ben, Tamar, and Lynn:

Thanks for your time last Friday. The welcome conclusion of the Climate Investigation enables the Department to move forward.

I am concerned, however, about the wording of the oral announcement on Tuesday to the Spanish & Portuguese Department. The goal, I think we can all agree, is to avoid undue speculations and unfounded rumors regarding the outcome of the review.~~matter~~.

First, when Tamar states that she will begin consultations in Spring 2016 regarding the position of chair, it must be noted that I will be on "a regular Triennial leave in Spring 2017, which is also the final semester of [my] term as Chair of the Department." The announcement should make it clear that I have not requested (or been asked to take) any sort of special leave.

Secondly, the announcement regarding sexual misconduct training must be carefully worded to avoid any implication that there has been a finding of wrong-doing. The proposal on Friday was to announce ~~I fear that these will be triggered by an announcement~~ that~~,~~ "because some Department faculty indicated that they were unsure ~~aware~~ of the steps to take in the event they receive a report of inappropriate behavior, all Department faculty will be [required][1] to take the University's sexual harassment training." On reflection, I think this is insufficient and

~~You can see immediately that a statement of this sort, if not carefully crafted to avoid misunderstanding,~~ may generate widespread, adverse speculation that can once again injure the Department and its prospects for a full recovery of its academic mission and reputation.

If it must ~~is to~~ be announced on Tuesday that faculty in the Department will take this training, it is imperative to accompany this announcement with a clear and unequivocal

---

[1] As a preliminary matter: Please consider using the word "encouraged" instead of "required," which is awfully heavy. To "require" has great implications for academic freedom and university governance, because as far as I know there is no prior instance in which tenured faculty have had such a condition imposed without an individualized ~~hearing~~ and factual findings.

statement that "we have not made and cannot make any ~~no~~ finding that there has been inappropriate behavior in the Department, by students or faculty." Without such a statement, we run the clear ~~and unavoidable~~ danger of provoking scandalous publicity that will be spread on the Web and do more damage to the reputation of the University and the future of its much-honored Department of Spanish and Portuguese.

My bottom line: one way to avoid or minimize misrepresentations or distortions of the results of this prolonged <u>review</u> ~~investigation~~ is to have an agreed-upon text of the oral report by Tamar and Lynn to the Department. This can serve several advantages: (1) it can serve as a "talking paper" for the officers, to guide the presentation and any subsequent discussion; (2) it can be an authoritative, though uncirculated~~, reference~~ source for <u>future reference and for</u> ~~any~~ reaction by any of us to later inquiries by the Yale Daily News and others; and (3) we can all be assured that we are indeed (literally) on the same page.

In sum, I would welcome an opportunity to work with the Deans and you on the precise language to be used at the scheduled meeting of Tuesday, December 15. I stand ready to work with you on this effort.

Thanks again to all of you for your continued support and for your consideration.

All the best,

                Rolena