# Exhibit 144

REPORT TO ATTORNEY JACQUES J. PARENTEAU

ON THE LOST BACK PAY AND FUTURE EARNINGS OF

*DR. SUSAN BYRNE*

By

Arthur W. Wright, Ph.D.

October 2018

You asked me to calculate Dr. Byrne's net loss of back pay and future earnings owing to alleged wrongful termination by Yale University, through its failure to grant her tenure in the autumn of 2015. I have done so and find that (given a new job at the University of Nevada—Las Vegas (UNLV) starting in July 2016) her possible net losses range from $62,106 in back pay (2016-2018), up to $1,519,987 in total lost back pay and future earnings (2016-2036).[1] (All dollar figures stated in this paragraph are in present values as of January 1, 2019.) The components for different time periods of Dr. Byrne's net loss, which equals her projected net earnings but for the termination, minus her projected mitigating net earnings, are as follows:

| NET LOSS OF: | | CUMULATIVE NET LOSS |
|---|---|---|
| Back Pay, 2016-2018 | $ 62,106 | $ 62,106 |
| Future Earnings I, 2019-2023 | $ 404,772 | $ 466,878 |
| Future Earnings II, 2024-2028 | $ 405,092 | $ 871,970 |
| Future Earnings III, 2029-2033: | $ 404,911 | $ 1,276,881 |
| Future Earnings IV, 2034-2036: | $ 243,106 | $ 1,519,987 |

Table 1 appended to this report contains the detailed calculations of but-for net earnings underlying the foregoing figures. In addition, this table shows the subtraction of mitigating net earnings, from Table 2,

---

[1] You asked me to organize the data in Tables 1 and 2 into five time periods: back pay (2016-2018), and four periods of future earnings: 2019-2023, 2024-2028, 2029-2033, and 2034-2036.

also appended, which contains the detailed calculations of mitigating back pay and future earnings, and the cumulative net loss as of the ends of the various time periods.

In addition to the net loss just described, if the Court finds for Dr. Byrne on liability and awards her money damages, it is my understanding that she would owe additional state and federal income taxes, plus Social Security and Medicare taxes as well, on said damages, and on any side payments intended to defray the additional taxes. For example, were the Court to award Dr. Byrne the entire total net loss shown above, $1,519,987, she would have to pay extra taxes on the award totaling $1,347,824. Thus, for her to realize the full amount of damages awarded by the Court, she would have to receive a total of $2,867,711 = $1,519,987 + $1,347,824. A different damages award would give rise to a different total amount required to leave Dr. Byrne whole after paying all extra taxes, but the methodology for calculating the extra taxes (detailed in the last section below) would be the same.

All calculations are in real terms, stated in constant 2017 prices, to remove the effects of price inflation. To convert dollar magnitudes in prices of other years to their 2017-equivalents in terms of purchasing power, I use the Consumer Price Index for urban consumers, or CPI-U, compiled and published by the U.S. Bureau of Labor Statistics (BLS).[2]

To discount dollar values from future years to their present values as of January 1, 2019, I use a real, after-tax interest rate of 2% per year, a conservatively high discount rate in that it yields smaller present values of future dollar amounts than would an alternative rate that could be justified. Such a real interest rate, used by economists in a variety of applications, is based on time series data back to the early post-World War II period on market yields for 3-month U.S. Treasury bills, corrected for expected inflation with matched time-series data from the Livingston Survey of Business Economists, compiled and published by the Federal Reserve Bank of Philadelphia. An after-tax discount rate is required because the income from investing any Court award would be subject to income taxes.

The basis of my analysis and calculations consists of (1) information provided by your office; (2) publicly available economic information; and (3) conventional methods of economic analysis and calculation. Items (2) and (3) will become apparent below. Item (1) consists of (a) responses to my

---

[2] A convenient source of data on the CPI-U, compiled and published by the U.S. Bureau of Labor Statistics (BLS), is the monthly publication, *Economic Indicators*, compiled and published by the President's Council of Economic Advisers; search on the title and select the option for the "GPO" (Government Publishing Office). CPI-U data appear on page 23 of every issue. As of this writing, the latest available edition of this publication is for September 2018.

standard questionnaire; (b) selected pages from Dr. Byrne's federal income tax returns (including forms W-2) for calendar years 2014-2017; (c) a number of documents pertaining to Yale faculty salaries and Dr. Byrne's own salaries; and (d) a document regarding faculty retirement benefits, printed from the UNLV website.

Dr. Byrne's net loss of back and front pay is equal to her gross money earnings, but for the termination, minus her gross money earnings in mitigation of damages; less state and federal income taxes on but-for and mitigating earnings; plus employer-paid, non-taxable fringe benefits, but-for and mitigating.

Gross Money Earnings

Dr. Byrne was promoted to associate professor "on term" (i.e., without tenure) by Yale in 2013, but she was denied tenure during the fall semester of academic year (AY) 2015/16. As a consequence, her employment at Yale ended on June 30, 2016. She was hired by UNLV as a full professor effective July 1, 2016, and continues to work there.

To calculate Dr. Byrne's earnings at Yale, but for her termination, I assume that she would have become a tenured associate professor in July 2016, and that she would then have been promoted to full professor two years later, on July 1, 2018. I rely on information from her on (a) her academic-year (AY) salary in 2015/2016, when she was denied tenure; and (b) what her salary would have become, had she received tenure effective July 1, 2016. Further, I rely on data from Yale University on average faculty salaries by rank, covering academic years from 2003-04 through 2017/18. See column (1) of Table 1.

To calculate Dr. Byrne's earnings at UNLV, I rely on information from her about her salaries for AY2016/17, AY2017/18, and AY2018/19. Refer to column (1) of Table 2.

Income Taxes

To calculate Dr. Byrne's income taxes on her gross money earnings, but-for and mitigating, I apply the single-filer tax rates and rules for deductions, for U.S. individual income taxes in both cases, and for Connecticut individual income taxes in the but-for case. (Nevada does not have a state income tax.) For the years 2016 and 2017, I apply the tax provisions for those two years. For 2018 and future years, I apply the 2018 Connecticut provisions and the recently-passed 2018 U.S. provisions.

3

The results of the income tax calculations appear in columns (2) and (3) of Table 1, and column (3) of Table 2.

Fringe Benefits

To calculate Dr. Byrne's non-taxable, employer-provided fringe benefits in both the but-for and mitigating cases, I rely on information from her about the employee health insurance and retirement plans at Yale and at UNLV;[3] on information on the cost of health insurance plans at both of her employers, from her Forms W-2 for 2014-2017; and on data published by the U.S. Department of Labor for certain minor categories.[4] See column (4) in both tables.

Net Earnings and Their Present Values

Dr. Byrne's net earnings in both the but-for and the mitigating cases are equal to the algebraic sum of the three components of her net loss: gross money earnings, less income taxes, plus fringe benefits. See column (5) in Tables 1 and 2.

The final step in my calculations is to discount the various yearly net earnings to present values as of January 1, 2019, at 2% real and after-tax. The results appear in column (6) of both tables. I show sub-totals for the back pay and future-earnings periods in both Table 1 and Table 2. Also, column (7) of Table 1 shows the cumulative net loss figures—total but-for back pay and future earnings, less the matching totals of mitigating back pay and future earnings. The total net loss for each period represents the amount which, if invested on January 1, 2019, to earn 2% real and after-tax, would just suffice to pay Dr. Byrne the time stream of net earnings equal to the yearly figures in column (5) of Table 1 minus their counterparts in Table 2, leaving zero dollars at the end of the period.

Extra Taxes on Damages

If the Court finds for Dr. Byrne in this matter and awards damages, both Connecticut and U.S. tax authorities will levy income taxes on the amount of the award. What is more, full FICA (Social Security

---

[3] I was able to confirm Dr. Byrne's information about the retirement plan, and indirectly about employer Social Security contributions, from the UNLV website.

[4] US Department of Labor, Bureau of Labor Statistics, "Employer Costs for Employee Compensation—June 2018", issued September 18, 2018, Table 5. The fringes taken from this source are group life insurance, unemployment compensation and workers compensation coverage, and disability insurance.

and Medicare) taxes will also be due on the award.[5] Thus, if she were to receive only the total amount awarded by the Court, after paying the extra taxes she would net *less*—far less—than the full amount of the award. For instance, on a Court award of $1,519,987, the extra taxes due immediately would be $702,233, leaving Dr. Byrne with only $817,654 after paying all the extra taxes.

What if she were to receive a side payment to cover the extra taxes? Alas, she would also have to pay income and FICA taxes on the side payment. The same would be true of a second side payment to cover the added taxes levied on the first one, and of every succeeding side payment. Given that tax treatment, is there any hope that Dr. Byrne could actually net the full amount of damages awarded by the Court?

The answer is yes. It turns on recognizing that the tax treatment of the Court's award in this case gives rise to a standard mathematics problem that has a definite solution: determining the value of an "infinite geometric progression" or infinite, convergent geometric series. If A is the amount of a Court award, and T is the limiting effective tax rate applied after an infinite number of levies by governments on the award and on all side payments, then the value V of the total amount that must be paid to leave the successful plaintiff with the full amount of the initial award amount is[6]

$$V = A/(1 - T).$$

For instance, suppose the Court were to award Dr. Byrne $1,519,987, the total net loss got 2015-2036. By iteratively calculating a series of payments (damages plus side payments) and resulting extra taxes, within five steps one can see that the limiting value of T will be about 47.0%. That value of T would yield a value of V equal to

$$V = \$1{,}519{,}987 / (1 - 0.470) = \$1{,}519{,}987/(0.530) = \$2{,}867{,}711.$$

That is, with capped Social Security contributions of $16,480 (= 0.124*$132,900); Medicare contributions of 2.90%, plus 0.9% on amounts over $200,000, on the total amount paid to Dr. Byrne; a Connecticut income tax rate that becomes a flat 6.7% at very high incomes; and U.S. taxes of $150,689.50 plus 37% on taxable amounts in excess of $500,000, Dr. Byrne would wind up owing total extra taxes of

---

[5] Office of Chief Counsel, U.S. Internal Revenue Service, Memorandum CC:TEGE:EOEG:ET2:SLHartford, FILES-102495-07, dated October 22, 2008.
[6] Chemical Rubber Publishing Co., *C.R.C. Standard Mathematical Tables*, Twelfth Edition (Cleveland, Ohio, 1959), page 357. The same formula may be found online by searching on "geometric progression".

$1,347,824. Thus, she would need to receive a total of $2,867,711 in order (after paying all the extra taxes) to realize the amount awarded by the Court, $1,519,987.

A different Court award would require a separate calculation, but the methodology would be identical to that outlined above.

Signed,

s/ Arthur W. Wright Ph.D.

Consulting Economist

# Table 1. BUT-FOR BACK PAY AND FUTURE EARNING OF SUSAN BYRNE

(2017 $)

| YEAR | AGE | (1) GROSS MONEY EARNINGS | (2) CONN. INCOME TAXES | (3) U.S. INCOME TAXES | (4) FRINGE BENEFITS | (5) NET MONEY EARNINGS: (1) - (2) - (3) + (4) | (6) PRESENT VALUE OF NET MONEY EARNINGS (01/01/2019) | YEAR | T | (7) CUMULATIVE LOSS |
|---|---|---|---|---|---|---|---|---|---|---|
| **BACK PAY: July 1, 2016-December 31, 2018** | | | | | | | | | | |
| (0.5 yr.) | | | | | | | | | | |
| 2016 | 61 | $68,402 | $3,396 | $19,220 | $17,275 | $63,061 | $65,934 | 2016 | -3 | |
| 2017 | 62 | $135,156 | $6,913 | $25,832 | $34,839 | $137,249 | $141,387 | 2017 | -2 | |
| 2018 | 63 | $174,492 | $9,151 | $30,984 | $40,514 | $174,870 | $176,610 | 2018 | -1 | |
| | | | | | TOTAL BUT-FOR BACK PAY: | | $383,932 | | | |
| | | | | | LESS: TOTAL MITIGATING BACK PAY: | | ($321,826) | | | |
| | | | | | NET LOSS OF BACK PAY: | | $62,106 | | | $62,106 |
| **FUTURE EARNINGS I: January 1, 2019-December 31, 2023** | | | | | | | | | | |
| 2019 | 64 | $217,667 | $11,800 | $43,672 | $46,709 | $208,903 | $206,845 | 2019 | 0 | |
| 2020 | 65 | $219,952 | $11,800 | $44,363 | $47,565 | $211,354 | $205,169 | 2020 | 1 | |
| 2021 | 66 | $222,262 | $11,890 | $45,061 | $48,444 | $213,754 | $203,429 | 2021 | 2 | |
| 2022 | 67 | $224,595 | $11,890 | $45,774 | $49,345 | $216,276 | $201,794 | 2022 | 3 | |
| 2023 | 68 | $226,954 | $11,890 | $46,554 | $50,270 | $218,779 | $200,127 | 2023 | 4 | |
| | | | | | TOTAL BUT-FOR FUTURE WAGE LOSS I: | | $1,017,364 | | | |
| | | | | | LESS: TOTAL MITIGATING FUTURE WAGES I: | | ($612,592) | | | |
| | | | | | NET FUTURE WAGE LOSS I: | | $404,772 | | | $466,878 |
| **FUTURE EARNINGS II: January 1, 2024-December 31, 2028** | | | | | | | | | | |
| 2024 | 69 | $229,337 | $11,980 | $47,343 | $51,219 | $221,233 | $198,403 | 2024 | 5 | |
| 2025 | 70 | $231,745 | $11,980 | $48,139 | $52,192 | $223,818 | $196,786 | 2025 | 6 | |
| 2026 | 71 | $234,178 | $12,070 | $48,944 | $53,191 | $226,355 | $195,114 | 2026 | 7 | |
| 2027 | 72 | $236,637 | $12,070 | $49,757 | $54,217 | $229,026 | $193,546 | 2027 | 8 | |
| 2028 | 73 | $239,122 | $12,160 | $50,579 | $55,269 | $231,652 | $191,926 | 2028 | 9 | |
| | | | | | TOTAL BUT-FOR FUTURE WAGE LOSS II: | | $975,775 | | | |
| | | | | | LESS: TOTAL MITIGATING FUTURE WAGES II: | | ($570,683) | | | |
| | | | | | NET FUTURE WAGE LOSS II: | | $405,092 | | | $871,970 |
| **FUTURE EARNINGS III: January 1, 2029-December 31, 2033** | | | | | | | | | | |
| 2029 | 74 | $241,632 | $12,160 | $51,409 | $56,350 | $234,413 | $190,406 | 2029 | 10 | |
| 2030 | 75 | $244,170 | $12,250 | $52,249 | $57,459 | $237,130 | $188,836 | 2030 | 11 | |
| 2031 | 76 | $246,733 | $12,250 | $53,097 | $58,599 | $239,985 | $187,362 | 2031 | 12 | |
| 2032 | 77 | $249,324 | $12,340 | $53,953 | $59,768 | $242,799 | $185,842 | 2032 | 13 | |
| 2033 | 78 | $251,942 | $12,340 | $54,819 | $60,970 | $245,752 | $184,415 | 2033 | 14 | |
| | | | | | TOTAL BUT-FOR FUTURE WAGE LOSS III: | | $936,861 | | | |
| | | | | | LESS: TOTAL MITIGATING FUTURE WAGES III: | | ($531,950) | | | |
| | | | | | NET FUTURE WAGE LOSS III: | | $404,911 | | | $1,276,881 |
| **FUTURE EARNINGS IV: January 1, 2034-December 31, 2036** | | | | | | | | | | |
| 2034 | 79 | $254,587 | $12,430 | $55,694 | $62,204 | $248,667 | $182,943 | 2034 | 15 | |
| 2035 | 80 | $257,261 | $12,430 | $56,578 | $63,472 | $251,724 | $181,561 | 2035 | 16 | |
| 2036 | 81 | $259,962 | $12,520 | $57,472 | $64,774 | $254,744 | $180,136 | 2036 | 17 | |
| | | | | | TOTAL BUT-FOR FUTURE WAGE LOSS IV: | | $544,640 | | | |
| | | | | | LESS: TOTAL MITIGATING FUTURE WAGES IV: | | ($301,533) | | | |
| | | | | | NET FUTURE WAGE LOSS IV: | | $243,106 | | | $1,519,987 |
| | | | | | **TOTAL BUT-FOR BACK PAY + FUTURE EARNINGS:** | | **$3,858,571** | | | |
| | | | | | **LESS: TOTAL MITIGATING BACK PAY + FUTURE EARNINGS:** | | **($2,338,584)** | | | |
| | | | | | ***NET LOSS:*** | | ***$1,519,987*** | | | |

# Table 2. MITIGATING BACK PAY AND FUTURE EARNINGS OF *SUSAN BYRNE*

*(2017 $)*

| YEAR | AGE | (1) GROSS MONEY EARNINGS | (3) U.S. INCOME TAXES | (4) FRINGE BENEFITS | (5) NET MONEY EARNINGS: (1) - (2) - (3) + (4) | (6) PRESENT VALUE OF NET MONEY EARNINGS (01/01/2019) | YEAR |
|---|---|---|---|---|---|---|---|
| **BACK PAY: July 1, 2016-December 31, 2018** | | | | | | | |
| *(0.5 yr.)* | | | | | | | |
| 2016 | 61 | $54,946 | $7,865 | $16,595 | $63,677 | $66,578 | 2016 |
| 2017 | 62 | $109,214 | $16,483 | $30,943 | $123,674 | $127,403 | 2017 |
| 2018 | 63 | $109,267 | $13,853 | $31,171 | $126,585 | $127,845 | 2018 |
| | | | | TOTAL MITIGATING BACK PAY: | | $321,826 | |
| **FUTURE EARNINGS I: January 1, 2019-December 31, 2023** | | | | | | | |
| 2019 | 64 | $109,759 | $13,945 | $31,472 | $127,286 | $126,032 | 2019 |
| 2020 | 65 | $110,253 | $14,038 | $31,778 | $127,993 | $124,247 | 2020 |
| 2021 | 66 | $110,749 | $14,131 | $32,090 | $128,708 | $122,491 | 2021 |
| 2022 | 67 | $111,248 | $14,225 | $32,406 | $129,428 | $120,762 | 2022 |
| 2023 | 68 | $111,748 | $14,319 | $32,727 | $130,156 | $119,060 | 2023 |
| | | | | TOTAL MITIGATING FUTURE EARNINGS I: | | $612,592 | |
| **FUTURE EARNINGS II: January 1, 2024-December 31, 2028** | | | | | | | |
| 2024 | 69 | $112,251 | $14,414 | $33,054 | $130,891 | $117,384 | 2024 |
| 2025 | 70 | $112,756 | $14,509 | $33,386 | $131,633 | $115,735 | 2025 |
| 2026 | 71 | $113,264 | $14,604 | $33,723 | $132,382 | $114,111 | 2026 |
| 2027 | 72 | $113,773 | $14,700 | $34,066 | $133,139 | $112,513 | 2027 |
| 2028 | 73 | $114,285 | $14,797 | $34,414 | $133,903 | $110,940 | 2028 |
| | | | | TOTAL MITIGATING FUTURE EARNINGS II: | | $570,683 | |
| **FUTURE EARNINGS III: January 1, 2029-December 31, 2033** | | | | | | | |
| 2029 | 74 | $114,800 | $14,893 | $34,768 | $134,674 | $109,391 | 2029 |
| 2030 | 75 | $115,316 | $14,990 | $35,128 | $135,454 | $107,867 | 2030 |
| 2031 | 76 | $115,835 | $15,088 | $35,494 | $136,241 | $106,367 | 2031 |
| 2032 | 77 | $116,356 | $15,186 | $35,866 | $137,036 | $104,889 | 2032 |
| 2033 | 78 | $116,880 | $15,285 | $36,243 | $137,839 | $103,435 | 2033 |
| | | | | TOTAL MITIGATING FUTURE EARNINGS III: | | $531,950 | |
| **FUTURE EARNINGS IV: January 1, 2034-December 31, 2036** | | | | | | | |
| 2034 | 79 | $117,406 | $15,501 | $36,628 | $138,532 | $101,917 | 2034 |
| 2035 | 80 | $117,934 | $15,610 | $37,018 | $139,343 | $100,504 | 2035 |
| 2036 | 81 | $118,465 | $15,719 | $37,415 | $140,162 | $99,112 | 2036 |
| | | | | TOTAL MITIGATING FUTURE EARNINGS IV: | | $301,533 | |
| | | | | **TOTAL MITIGATING BACK PAY + FUTURE EARNINGS:** | | **$2,338,584** | |