# Exhibit D-6

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

_____
                                                    :
SUSAN BYRNE,                                 :        C.A. NO. 3:17-CV-01104 (VLB)
            Plaintiff                            :
v.                                                  :
                                                    :
YALE UNIVERSITY,                            :
            Defendant                          :        DECEMBER 30, 2019
_____ :


**<u>DEFENDANT'S OBJECTIONS TO PLAINTIFF'S PROPOSED JURY INSTRUCTIONS</u>**

## REQUESTED INSTRUCTION NO. 1

## CFEPA AND TITLE VII

## RETALIATION PROHIBITED BY CFEPA AND TITLE VII

Under Title VII of the Civil Rights Act ("Title VII") and the Connecticut Fair Employment Practices Act ("CFEPA"), it is illegal for Yale University to retaliate against an employee because that employee opposed what she believed to have been gender discrimination and sexual harassment or testified, assisted, or participated in any manner in an investigation of such claims.

In order to establish her claim of retaliation, under Title VII and CFEPA, Susan Byrne must prove to you by a preponderance of the evidence the following elements as I will define them for you:

1. Plaintiff was involved in a protected activity;

2. Defendant was aware of the protected activity;

3. Plaintiff suffered an adverse employment action occurred; and

4. A causal relationship exists between the protected activity and the adverse employment action.

*Heffernan v. City of Paterson*, 136 S. Ct. 1412, 1418 (2016)

*Kwan v. Andalex Group, LLC*, 737 F.3d 834, 844 (2d Cir. 2013)

*Terry v. Ashcroft*, 336 F.3d 128, 140-41 (2d Cir. 2003)

Conn. Gen. Stat. § 46a-60

42 U.S.C. § 2000e-3

**Defendant's Objection:**

Plaintiff's instruction fails to clarify that her failure to prove even one of the stated elements requires the jury to find in Defendant's favor. Further, this instruction suggests that Plaintiff is relying, for the first time, on the participation clause: the concept that protected activity can include testifying, assisting, or participating in any manner in an investigation. Plaintiff's instruction leaves out a critical aspect of the participation clause: there must be an investigation, proceeding, or hearing *under Title VII.* <u>See, e.g.</u>, <u>Littlejohn v. City of N.Y.</u>, 795 F.3d 297, 316 (2d Cir. 2015) ("the participation clause only encompasses participation in formal EEOC proceedings"). Moreover, Plaintiff's Second Amended Complaint makes clear she is proceeding only under the opposition clause. *See, e.g.*, Second Amended Complaint, ¶¶ 1, 108, 111. Here, there is no evidence that Plaintiff participated in a formal EEOC proceeding prior to the decisions at issue, and in any event, the instruction as written is misleading to a jury because it leaves out this final, critical phrase.

## 1.  <u>PROTECTED ACTIVITY</u>

Title VII and the CFEPA protect the rights of employees when they oppose a practice made unlawful by Title VII or the CFEPA, and when they participate in any investigation, proceeding, hearing or litigation.   In general, the term "protected activity" refers to action taken to protest or oppose statutorily prohibited discrimination or to assist another in opposing discrimination.

With respect to claims based on opposition to discrimination, it is not necessary for Plaintiff to prove that the practice she opposed was actually illegal. Rather Plaintiff need only show that she was acting under a good faith belief that Defendant's actions violated the law and her protected activity was covered by the statutes.  Making an internal complaint regarding discrimination or sexual harassment or participating as a witness in an investigation into possible discrimination is considered to be protected activity under anti-discrimination laws. Opposing discrimination against other individuals is also protected.

In this case, Plaintiff claims she engaged in protected activity by 1) being interviewed by Defendant's attorneys as part of Defendant's investigation into the climate of the Department of Spanish and Portuguese ("the Climate Review"); 2) being quoted and referenced in a March 25, 2015 Yale Daily News article about complaints of discrimination and harassment by graduate students in the Department; and 3) by testifying as part of Defendant's Title IX investigation into sexually inappropriate comments and behavior by Professor Roberto Gonzalez Echevarria.

The law also prohibits employers from retaliating against someone because they participated in an investigation or proceeding concerning discrimination. Defendant's Climate Review investigation and Title IX investigation into sexually inappropriate comments and behavior by Professor Gonzalez Echevarria constitute investigations that are covered by the anti-discrimination statutes. If Plaintiff establishes that she participated in those investigations by Defendant concerning discrimination, then her participation would be protected and it would be illegal if Defendant retaliated against her because of that participation.

With respect to Plaintiff's claims of retaliation based on her alleged opposition to discrimination, it is up to you as the fact finder to determine whether Plaintiff opposed what she believed was wrongful treatment against her or other individuals on the basis of sex or otherwise engaged in protected activity as I have explained that concept to you.

*Littlejohn* v. *City of New York*, 795 F.3d 297, 316 (2d Cir. 2015)

*Terry v. Ashcroft*, 336 F.3d 128, 140-41 (2d Cir. 2003)

§ 704(a) of Title VII of Civil Rights Act of 1964, 42 USCS § 2000e-3(a)

Conn. Gen. Stat. § 46a-60(b)(4)

*Crawford* v. *Metropolitan Gov't of Nashville and Davidson Cty., Tennessee*, 555 U.S. 271, 277 (2009)

*Martinez* v. *Premier Maintenance, Inc.*, 185 Conn. App. 425, 454 (2018)

*Matima* v. *Celli*, 228 F.3d 68, 78 (2d Cir. 2000)

*Jute v. Hamilton Sundstrand Corp.*, 420 F. 3d 166 (2d Cir. 2005)

*Deravin v. Kerik*, 335 F.3d 195, 203-205 (2d Cir. 2003)

<u>Defendant's Objection:</u>

This instruction suggests that Plaintiff is relying, for the first time, on the participation clause: the concept that protected activity can include testifying, assisting, or participating in any manner in an investigation. Plaintiff's instruction leaves out a critical aspect of the participation clause: there must be an investigation, proceeding, or hearing *under Title VII.* <u>See, e.g.</u>, <u>Littlejohn v. City of N.Y.</u>, 795 F.3d 297, 316 (2d Cir. 2015) ("the participation clause only encompasses participation in formal EEOC proceedings"). Moreover, Plaintiff's Second Amended Complaint makes clear she is proceeding only under the opposition clause. *See, e.g.*, Second Amended Complaint, ¶¶ 1, 108, 111. Again, there is no evidence that Plaintiff participated in a formal EEOC proceeding prior to the decisions at issue. Indeed, this instruction suggests that merely participating in the Climate Review, speaking to a newspaper reporter, and participating in the Title IX investigation (which post-dated the unfavorable tenure decision) is sufficient to constitute protected activity. It is not, because none of these constitute investigations, proceedings, or hearings *under Title VII.* In any event, Plaintiff herself failed to plead that her interaction with Title IX investigators was protected activity. *See* Second Amended Complaint, ¶ 111.

Plaintiff's instruction also fails to instruct the jury that she must have a good faith, objectively reasonable belief (whether accurate or not) that the conduct she was describing constituted discriminatory conduct prohibited by Title VII or CFEPA. <u>See</u> <u>Rodas v. Town of Farmington</u>, 567 Fed. Appx. 24, 26 (2d Cir. 2014) (finding that plaintiff's complaints did not constitute protected activity where there was "no basis for an objectively reasonable belief that [they] pertained to sex discrimination proscribed by federal and state law"); <u>Brown v. Northrop Grumman Corp.</u>, No. 12-CV-1488(JS)(GRB), 2014 U.S. Dist. LEXIS 116188, at *33-34 (E.D.N.Y. Aug. 19, 2014) ("The test [for protected activity] is not whether Plaintiff had a good faith belief that

a Title VII violation occurred; it is whether Plaintiff had a good faith <u>objectively</u> <u>reasonable belief.</u>").

Further, this instruction does not sufficiently clarify that complaining about *anything* is not sufficient—the complaint must be specific enough to make clear that the employee is complaining about conduct prohibited by law. A general allegation or complaint that does not refer or relate to alleged discrimination is not protected activity.  <u>Rojas v. Roman Catholic Diocese of Rochester</u>, 660 F.3d 98, 108 (2d Cir. 2011) (employer could not have reasonably understood plaintiff's "generalized" complaints as directed at conduct prohibited by Title VII); <u>Saliga v.</u> <u>Chemtura Corp.</u>, No. 12-cv-832, 2015 U.S. Dist. LEXIS 133135, at *44-45 (D. Conn. Sept. 30, 2015) ("Complaints presenting general allegations of harassment unrelated to protected class are not protected activity under Title VII, Section 1981, or CFEPA.").

## 1.A. DEFENDANT'S PERCEPTION OF PROTECTED ACTIVITY

Title VII and CFEPA prohibits agents of Defendant from taking adverse employment actions against Plaintiff based on a mistaken perception that she engaged in protected speech. Retaliation against Plaintiff for speaking out against unlawful sexual harassment violates the law; it does not matter whether Defendant was correct in believing Plaintiff had engaged in the protected activity.

In this case, Plaintiff claims that Professors Adorno, Gonzalez Echevarria and Valis had the mistaken perception that she was the author of a March 6, 2015 anonymous letter that was distributed to faculty members of the Department of Spanish and Portuguese, members of Defendant's administration, and was the subject of a March 25, 2015 Yale Daily News article indicating that sexual harassment was occurring in the Department.

*Heffernan v. City of Paterson*, 136 S. Ct. 1412, 1418 (2016)

*Grosso v. City Univ.*, 2005 U.S. Dist. LEXIS 4089, at *8-9 (S.D.N.Y. Mar. 14, 2005)

*Benedith* v. *Malverne Union Free School District*, 38 F. Sup. 3d 286, 336 (E.D.N.Y. 2014)

*Hughes* v. *Pastori*, Docket No. CV09-4042(ADS) (WDW), 2012 U.S. Dist. LEXIS 104584, at *21 (E.D.N.Y. May 31, 2012)

42 U.S.C. § 2000e-3(a)

Conn. Gen. Stat. § 46a-60(b)(4)

<u>Defendant's Objection</u>:

Defendant objects inasmuch as Plaintiff did not plead a perception theory of retaliation, but rather raised it for the first time in opposition to Defendant's pending summary judgment motion. Thus, the Court should not permit instruction on such a theory to reach the jury. <u>See Greenridge v. Allstate Ins. Co.</u>, 446 F.3d 356, 361 (2d Cir. 2006) (refusing to address merits of claims raised for the first time in opposition to summary judgment); <u>*Thomas v. Egan,*</u> 1 Fed.Appx. 52, 54 (2d Cir. 2001) ("it is inappropriate to raise new claims for the first time in submissions in opposition to a summary judgment motion"); <u>Syracuse Broad. Corp. v. Newhouse</u>, 236 F.2d 522, 525 (2d Cir. 1956) (holding that district court was "justified" in "brush[ing] aside" further argument not alleged in complaint but raised for first time in opposition to summary judgment); <u>Martinez v. Conn. Library</u>, 817 F. Supp. 2d 28, 40 (D. Conn. 2011) (barring plaintiff from asserting claim based on new adverse employment action not alleged in the complaint).

Defendant further objects because neither the Second Circuit, nor any state or federal Connecticut court, has ever recognized a perception theory of retaliation. Other jurisdictions have declined to recognize this theory when given the opportunity to do so. <u>See</u> <u>McKinney v. Bolivar Med. Ctr.</u>, 341 F. App'x 80, 83 (5th Cir. 2009) ("As noted by the district court, the Fifth Circuit has not adopted this perception theory of retaliation").

Finally, Defendant objects to this instruction because it articulates specific facts supporting Plaintiff's purported legal theory. It is her obligation to prove these facts at trial; the Court should not instruct the jury on them. More simply stated, the second paragraph of this instruction is not an instruction on the law, but a summary of Plaintiff's legal theories and the facts purportedly supporting them.

## 2. <u>KNOWLEDGE OF PROTECTED ACTIVITY</u>

It is undisputed that Defendant had corporate knowledge of Plaintiff's alleged protected activity.

<u>Defendant's Objection</u>:

To avoid jury confusion, Plaintiff's instruction should clarify that Defendant is not conceding, and affirmatively denies, that the individuals in the Department of Spanish and Portuguese who voted on her tenure case had knowledge of all of the alleged protected activity. Failure to include this instruction could confuse the jury on the causation issue. <u>Gordon v. New York City Bd. of Educ.</u>, 232 F.3d 111, 117 (2d Cir. 2000) ("The lack of knowledge on the part of particular *individual agents* is admissible as some evidence of a lack of a causal connection.")

## 3. <u>ADVERSE EMPLOYMENT ACTION</u>

It is undisputed that Plaintiff suffered an adverse action when she was denied tenure and promotion.

## 4. <u>CAUSAL RELATIONSHIP</u>

To establish a causal relationship, Plaintiff does not need to prove that her protected activity was the only cause for the denial of tenure. You may find a causal connection between her protected activity and the adverse actions Plaintiff alleges based on statements by Defendant's agents expressing animus or hostility against Plaintiff because of her protected activities.

In addition to such evidence, Plaintiff can also use circumstantial evidence to show a causal connection between her protected speech and the adverse employment action. Circumstantial evidence may take a number of forms, including: (1) the proximity in time between the protected activity and the alleged retaliation; (2) evidence of Defendant's opposition to Plaintiff's protected activity;

(3) treating Plaintiff differently than fellow employees who engaged in similar conduct; and (4) evidence that the reasons proffered by the employer for the adverse employment action were false or unworthy of belief, what the law refers to as pretext.

A showing of an adverse action soon after plaintiff engages in a protected activity is indirect proof of a causal connection between the adverse employment action and the protected activity, because the close proximity between the events is strongly suggestive of retaliation. When there is a set time table for employment actions creating longer gaps in time between the protected activity and the adverse employment actions, an inference of causation can still be drawn from evidence that the employer could have been waiting for an opportune time to retaliate. Statements by the employer in opposition to protected activity can also be evidence of an intent to retaliate.

Proof that the employer's reason for the adverse action is unworthy of belief is another form of circumstantial evidence that may be quite persuasive on the issue of whether the employer was motivated to retaliate. You are entitled to consider an employer's dishonesty about the reason for the employment action as "affirmative evidence of guilt" as well as circumstantial evidence of causation.

In this case, Plaintiff alleges that Defendant voted to deny her tenure eleven months after her protected activity of being quoted and referenced in a Yale Daily News article; nine months after her protected activity of being interviewed for Defendant's investigation into the climate of the Department of Spanish and Portuguese; and less than two months after she participated in Defendant's Title

IX investigation into Professor Gonzalez Echevarria.   Plaintiff also alleges that Professors Adorno, Gonzalez Echevarria, and Valis held deep animus against her for actual and perceived protected speech and the two investigations she participated in were rife with retaliation against junior faculty such as herself.

*Kwan v. Andalex Grp.*, 737 F.3d 834, 846 (2d Cir. 2013)

*Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90-91 (2d Cir. 2015)

*D'Andrea v. Nielsen*, 765 Fed. Appx. 602, 605 (2d Cir. 2019)

*Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2534 (2013)

*Richards v. Groton Bd. of Educ.*, 2015 U.S. Dist. LEXIS 110721, 2015 WL 4999803, at *3 n.3 (D. Conn. Aug. 21, 2015)

*Vogel v. CA, Inc.,* 2015 U.S. Dist. LEXIS 157068, at *8-9 (D. Conn. Nov. 20, 2015)

*O'Connor v. Town of Guilford,* 2017 Conn. Super. LEXIS 4834, at *13 n.7 (Super. Nov. 7, 2017)

*Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 147 (2000)

*Mandell v. County of Suffolk*, 316 F.2d 368, 383-384 (2nd Cir. 2003)

*Housing Works, Inc. v. City of New York*, 72 F. Supp. 2d 402, 422-30 (S.D.N.Y. 1999)

*Davis v. State University of New York*, 802 F.2d 638, 642 (2d Cir. 1986)

*Gorman-Bakos v. Cornell Co-op Extension of Schenectady County*, 252 F.3d 545, 554 (2d Cir. 2001)

*Mandell v. County of Suffolk*, 316 F.3d 368, 383 (2d Cir. 2003)

*Espinal v. Goord,* 558 F.3d 119, 129-30 (2d Cir. 2009)

*Whaley v. City University of New York*, 555 F. Supp. 2d 381, 406 (S.D.N.Y. 2008)

*Gordon v. New York City Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000)

*White v. City of Middletown*, 45 F.Supp. 3d 195, 219 (D. Conn. 2014)

**Defendant's Objection:**

Defendant objects inasmuch as Plaintiff fails to correctly state the applicable but-for standard. <u>See</u> <u>Univ. of Texas Southwestern Med. Ctr. v. Nassar</u>, 570 U.S. 338 (2013) (finding "but for" causation applicable to claims of retaliation under Title VII and similarly worded statutes); <u>Falcon v. State of Conn. Judicial Branch</u>, No. 3:16-cv-549(AWT), 2018 U.S. Dist. LEXIS 196230, at *25-26 (D. Conn. Sept. 25, 2018) (describing the elements of a Title VII retaliation claim as including but-for causation and noting that the elements of a retaliation claim are identical under CFEPA and Title VII). <u>See</u> <u>also</u> Defendant's Summary Judgment Memorandum, Docket No. 70-1, at fn 101.

Plaintiff further objects to this instruction to the extent that it lists the types of circumstantial evidence that the jury may rely upon. The instruction is an impermissible attempt to spoon feed a specific result to the jury. A general explanation of circumstantial evidence is the type of instruction the Court can offer without the risk of improper influence on the jury. <u>See</u> <u>Kessler v. Westchester County Dep't of Soc. Servs.</u>, 308 Fed. Appx. 528, 529 (2d Cir. 2009) (finding the district court's decision to exclude language describing one type of direct evidence (retaliatory animus) from jury instructions did not constitute an error where the instructions explained generally that the jury could consider direct and/or circumstantial evidence). Indeed, Plaintiff's jury instruction goes so far as to ask the Court to comment on the quality of the evidence (i.e., describing certain evidence as "quite persuasive"). It is the jury's role, and not the Court's, to weigh the evidence. <u>Wanamaker v. Town of Westport Bd. of Educ.</u>, 11 F. Supp. 3d 51, 57 (D. Conn. 2014) (describing credibility determinations and weighing evidence as "functions for the jury"); <u>Shade ex rel Velez-Shade v. Housing Auth.</u>, No. 3:94-CV-00774 (EBB), 2000 U.S. Dist. LEXIS 6615, at *6 (D. Conn. Apr. 11, 2000) ("Weighing the evidence is the jury's province.").

Plaintiff's description of the circumstantial evidence that can be considered is also misleading. For example, Plaintiff suggests that temporal proximity alone may be sufficient for the jury to find a causal relationship, but the Second Circuit has rejected this notion. <u>Abrams v. Dep't of Pub. Safety</u>, 764 F.3d 244, 254 (2d Cir. 2014) ("temporal proximity alone is not enough to establish pretext in this Circuit"). Further, Plaintiff seeks an instruction that "statements by the employer in opposition to protected activity" can be evidence of retaliatory intent, but this is confusing (i.e., it fails to define "opposition to protected activity") and an overstatement of the case cited for this proposition. <u>Mandell v. Cnty. of Suffolk</u>, 316 F.3d 368, 383 (2d Cir. 2003) (a reasonable factfinder could determine that employer's statement that employee who filed a complaint "would have to learn to keep his mouth shut" suggested retaliatory animus)."

Finally, Defendant objects to this instruction because it articulates specific facts supporting Plaintiff's legal theories. It is her obligation to prove these facts at

trial; the Court should not instruct the jury on purported facts.  More simply stated, the final paragraph of this proposed instruction is not an instruction on the law, but on Plaintiff's legal theories and allegations.

## BURDEN OF PROOF:  TITLE VII RETALIATION

In order to prevail on her retaliation claim under Title VII, Plaintiff must prove, by a preponderance of the evidence, that retaliation was a "but for" reason for the adverse action.  However, in order to prove that retaliation was a "but-for" reason for the adverse action, Plaintiff does not need to prove that retaliation was the only cause of Defendant's action.  Rather, for purposes of her Title VII retaliation claim, Plaintiff only needs to prove that the adverse action would not have occurred in the absence of the retaliatory motive.  Even if there were multiple reasons for an employer's action, some retaliatory, and others that were not retaliatory, the retaliatory reason would still qualify as a "but-for" reason if the non-retaliatory reasons alone would not have caused the employer to take the adverse action.  Put another way, a retaliatory reason is still a "but-for" reason if, in combination with other reasons, it was "the straw that broke the camel's back."

Plaintiff may prove that retaliation was a but-for cause of an adverse employment action through the totality of the evidence, including evidence of retaliatory motive or intent, evidence that Plaintiff engaged in protected activity which was followed shortly thereafter by the adverse action, and by demonstrating weaknesses, implausibilities, inconsistencies, or contradictions in the explanations offered by Defendant for its action. From such evidence, a reasonable juror could conclude that the explanations were a pretext for a prohibited reason.

In this case Plaintiff alleges that Professors Adorno, Gonzalez Echevarria and Valis assumed and believed that Plaintiff was responsible for complaints and speech about discrimination and sexual harassment that triggered investigations and the Climate Review.  These professors held animosity towards Plaintiff because of these assumptions and took actions in retaliation, culminating in a vote to deny Plaintiff tenure.

*Burrage v. United States*, 571 U.S. 204, 211, 134 S. Ct. 881, 888 (2014)

*Univ. of Tex. Sw. Med. Ctr. v.* Nassar, 133 S. Ct. 2517, 2534 (2013)

*Kwan v. Andalex Grp., LLC*, 737 F.3d 834, 845-46 (2d Cir. 2013)

*Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015)


**Defendant's Objection:**

Defendant objects inasmuch as Plaintiff's proposed instruction focuses impermissibly on what the but-for standard is *not*, rather than on what it *is*. Ultimately, the proposed instruction improperly defines the but-for standard.  For example, the instruction states that Plaintiff need only prove that the adverse employment action "would not have occurred in the absence of the retaliatory motive," but the Second Circuit has stated it differently: Plaintiff must prove that the adverse employment action "*would not have occurred without*" the *impermissible motivation. Delaney v. Bank of America Corp.*, 766 F.3d 163, 169 (2d Cir. 2014); *Nassar*, 133 S. Ct. at 2533 (stating that proving Title VII retaliation claims according to the traditional principles of but for causation "requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer").  Plaintiff's instruction is designed to explain to a jury how to find that the but-for standard has been met, rather than presenting a more balanced explanation of the standard.

Further, in presenting the but-for standard, Plaintiff needlessly reiterates the types of circumstantial evidence that the jury can consider – something Plaintiff has already proposed in a prior instruction, and that threatens to impermissibly bias the jury. See Kessler v. Westchester County Dep't of Soc. Servs., 308 Fed. Appx. 528, 529 (2d Cir. 2009) (finding the district court's decision to exclude language describing one type of direct evidence (retaliatory animus) from jury instructions

did not constitute an error where the instructions explained generally that the jury could consider direct and/or circumstantial evidence).

Finally, Defendant objects to this instruction because it articulates specific facts supporting Plaintiff's legal theories. It is her obligation to prove these facts at trial; the Court should not instruct the jury on facts. More simply stated, the final paragraph of this instruction is not an instruction on the law, but on Plaintiff's legal theories and allegations.

REQUESTED INSTRUCTION NO. 3

BURDEN OF PROOF: CFEPA RETALIATION

In contrast to her retaliation claim under Title VII, Plaintiff may prevail on her retaliation claim under CFEPA if she proves that her protected activity was a motivating factor for Defendant's adverse action against her. Plaintiff need not prove that her protected activity was the only factor, or even the primary factor, motivating Defendant's decision. CFEPA prohibits making adverse employment decisions which are, even in part, based upon a person's protected activity.

If Plaintiff proves that her protected activity was one of the motivating factors in Defendant's action to deny her tenure, she is entitled to prevail on her claim under CFEPA.

*Jacobs v. General Electric Co.*, 275 Conn. 395 (2005)

*Tremalio v. Demand Shoes, LLC*, No. 3:12-CV-00357 (VLB), 2013 U.S. Dist. LEXIS 140983, at *67 (D. Conn. Sep. 30, 2013)

*Weisenbach v. LQ Mgmt.*, No. 3:13-cv-01663 (MPS), 2015 U.S. Dist. LEXIS 128839, at *31 (D. Conn. Sep. 25, 2015)

Defendant's Objection:

Defendant objects inasmuch as Plaintiff states the incorrect standard. See Univ. of Texas Southwestern Med. Ctr. v. Nassar, 570 U.S. 338 (2013) (finding "but for" causation applicable to claims of retaliation under Title VII and similarly worded statutes); Falcon v. State of Conn. Judicial Branch, No. 3:16-cv-549(AWT), 2018 U.S.

Dist. LEXIS 196230, at *25-26 (D. Conn. Sept. 25, 2018) (describing the elements of a Title VII retaliation claim as including but-for causation and noting that the elements of a retaliation claim are identical under CFEPA and Title VII). "Retaliation claims under Title VII…and the CFEPA are analyzed under the same burdenshifting framework…." <u>Maynard v. Stonington Cmty. Ctr</u>., No. 3:15-CV-483, 2018 U.S. Dist., LEXIS 64027, at *19–20 (D. Conn. Mar. 31, 2018). "Because federal law guides analysis of Connecticut's anti-discrimination statutes, including CFEPA," the Court should analyze Plaintiff's federal and state discrimination claims together. <u>See Jackson v. Post Univ., Inc.</u>, 836 F. Supp. 2d 65, 82 (D. Conn. 2011). For this same reason, courts have applied the but-for causation standard to both Title VII and CFEPA retaliation claims, and the Court should do so in this case as well. <u>See, e.g.</u>, <u>Maynard</u>, 2018 U.S. Dist. LEXIS 64027, at *19–20; <u>Falcon</u>, 2018 U.S. Dist. LEXIS 196230, at *25–26.

<u>REQUESTED INSTRUCTION NO. 4</u>

<u>AGENCY</u>

During these instructions I may refer at times to defendant Yale University and at other times to its Department of Spanish and Portuguese, Departmental Faculty Review Committee, or the Internal Review Committee. You may find that Defendant acted through faculty members employed or engaged by its Department of Spanish and Portuguese, Departmental Faculty Review Committee, or the Internal Review Committee, and is therefore legally liable for the actions of those committees or department.

In various relationships, the law imposes liability upon one party for the acts or the failure to act by another. The relationships in which such liability exists are called agency relationships; the actor is said to be an agent of the responsible party.

In this case, the members of the Department of Spanish and Portuguese, Departmental Faculty Review Committee, and the Internal Review Committee are agents of Defendant and Defendant is liable for their acts or their failures to act, if

you find that they were acting within the scope of their employment and within the scope of their duty when they took those actions.  These preconditions establish an agency relationship.

Finding an agency relationship also means that you may also consider the statements of Defendant's employees, whether made in written letters or memoranda, or in a deposition or at trial, to be statements of Defendant. Additionally, you may also consider knowledge or notice to any agent/employee of Defendant to be the same as knowledge of or notice to Defendant on any issue where notice or knowledge of Defendant is before you.

Wright, Fitzgerald and Ankerman, Connecticut Law of Torts §  63 (3rd Ed. 1991)

Wright and Ankerman, Connecticut Jury Instructions (Civil) § 21 (4th Ed. 1993)

*Menaker v. Hofstra University*, 935 F.3d 20, 37 n.81 (2d Cir. 2019)

*Feliciano v. AutoZone, Inc.*, 316 Conn. 65, 80 (2015)

<u>Defendant's Objection</u>:

Defendant objects to this instruction inasmuch as it is confusing, and states agency principles in terms of certain liability, presumably in an effort to shade the opinion of the jury.  For example, it states that Yale University "is therefore legally liable" for the actions of the other bodies mentioned, when a more proper formulation would be that it "may be responsible" for the actions of the referenced bodies.

Defendant further objects to the final paragraph of this instruction, as it is misleading in its omission.  Specifically, despite agency principles, individual actors may lack knowledge despite institutional knowledge of a given fact.  <u>See, e.g.</u>, <u>Gordon v. New York City Bd. of Educ.</u>, 232 F.3d 111, 117 (2d Cir. 2000) ("The lack of knowledge on the part of particular *individual agents* is admissible as some evidence of a lack of a causal connection"); <u>Gray v. City of N.Y.</u>, No. 08-CV-2840 (NGG) (JMA), 2011 U.S. Dist. LEXIS 142427, at *41-42 (E.D.N.Y. Dec. 12, 2011) (finding decision-maker could not have retaliated against plaintiff where there is no evidence that the decision-maker had knowledge of plaintiff's complaint).

## REQUESTED INSTRUCTION NO. 5

## NO DEFERMENT TO UNIVERSITY DECISIONS

Defendant's academic judgment is not on trial in this action. Employment decisions by universities and colleges are not given any special immunity from retaliation claims under Title VII or CFEPA. When a faculty member, such as Plaintiff, seeks to enforce provisions of a Faculty Handbook, there is no requirement that you defer to Defendant's academic judgment.

In this case it is not your role to make an academic judgment on the merits of the tenure decision by the Department of Spanish and Portuguese. It is your task to evaluate Defendant's actions for retaliatory animus taking into consideration all the factors related to the decision. It is also your task to evaluate the evidence supporting Plaintiff's claim that the tenure decision was made in violation of Defendant's rules related to conflict of interest. Adherence to Defendant's policies and procedures related to the making of tenure decisions, particularly the requirement that a faculty member with a conflict of interest be excluded from voting and deliberating, does not require you to question any academic judgment.

*Craine v. Trinity College,* 259 Conn. 625, 625 (2002)

42 U.S.C. § 2000e-3

*Powell v. Syracuse Univ.*, 580 F.2d 1150, 1154 (2d Cir. 1978)

*Siani v. State Univ. of N.Y.*, 7 F.Supp. 3d 304, 325-326 (E.D.N.Y. 2014)

*Whaley v. City University of New York*, 555 F. Sup. 2d 381, 406 (S.D.N.Y. 2008)

**Defendant's Objection:**

Defendant objects to this instruction inasmuch as it inadequately defines the deference that must be paid to Defendant's academic judgment. See Defendant's Proposed Instruction No. 4 for a more complete explanation of academic freedom. See also Lieberman v. Gant, 630 F.2d 60, 67 (2d Cir. 1980); Bickerstaff v. Vassar College, 196 F.3d 435 (2d Cir. 1999); Regents of Univ. of Cal. v. Bakke, 438 U.S. 265, 312 (1978); Zahorik v. Cornell Univ., 729 F.2d 85, 93-94 (2d Cir. 1984); Rajaravivarma v. Bd. of Trs. for the Conn. State Univ. Sys., 862 F. Supp. 2d 127, 166 (D. Conn. 2012); Craine v. Trinity College, 259 Conn. 625 (2002). Even the title of Plaintiff's proposed objection is misleading—the jury must defer to Defendant's academic judgment.

Further, the final sentence of the proposed instruction needlessly restates one of Plaintiff's allegations, when doing so sheds no light on the legal principles at issue here. By restating the allegation, the Court risks lending credence to the allegation in the eyes of the jury.

**REQUESTED INSTRUCTION NO. 6**

**REPEATED WARNINGS OF IMPENDING RETALIATION**

In this case Plaintiff claims that Defendant's administrators at the highest levels of the organization, were warned repeatedly that retaliation was taking place in tenure decisions in the Department of Spanish and Portuguese. This includes the allegation that Defendant's Provost had evidence that Plaintiff was being retaliated against but did nothing to intervene.

When an employer knows that an act of retaliation has occurred and fails to take action to remedy that violation, the employer liable for a violation of Title VII and CFEPA.

*Richardson v. New York State Dept. of Correctional Service*, 180 F.3d 426, 446 (2d Cir. 1999)

*Burlington Industries v. Ellerth*, 524 U.S. 742, 759 (1998)

*Dymskaya v. Orem's Diner of Wilton, Inc.,* Docket No. 3:12-cv-00388 (JAM), 2015 U.S. Dist. LEXIS 28891 (D. Conn. Mar. 10, 2015)

**Defendant's Objection:**

Defendant objects to this instruction, inasmuch as it attempts to create a rule of law where none exists. This instruction suggests that "repeated warnings" of retaliation equates to automatic liability, but the cases she cites do not stand for this principle. <u>See</u> <u>Richardson v. New York State Dept. of Correctional Service</u>, 180 F.3d 426, 446 (2d Cir. 1999); <u>Burlington Industries v. Ellerth</u>, 524 U.S. 742, 759 (1998). Neither court established a strict liability standard in the context of repeated warnings, which is what this instruction requests.

For example, the jury may find that the provost was "warned" of the risk of retaliation, but that no retaliation occurred, and thus Defendant is not liable; or even that retaliation did occur, but it was not the but for cause of the adverse employment decision, because Plaintiff's scholarship was not sufficient to merit tenure at Yale. Plaintiff's instruction appears to rule out these possibilities, and risks confusing the jury as a result.

This instruction further risks prejudicing the jury inasmuch as it appears to assume certain facts are true, when in fact the Plaintiff must prove them.

<u>REQUESTED INSTRUCTION NO. 7</u>

<u>BREACH OF CONTRACT</u>

A contract is a legally enforceable agreement containing one or more

promises between the parties, which require each party to do or not do certain

things. Contracts may be written or oral or even implied by the course of conduct

of the parties, or some combination of these circumstances. It is not necessary

that all the terms of a contract be embodied in a single document signed by both

the parties. You, the jury, must consider the totality of the circumstances in order

to determine whether there is a contract of employment and what the terms of

that contract are.

When interpreting the nature of the promises included in a contract, your

basic task is to determine and give effect to the intention of the parties. The

purpose of the agreement, the circumstances under which the agreement was made, as well as the conduct and the words used by the parties before and after the contract was entered into must be taken into account in interpreting the contract. The purpose and circumstances you consider should include that it was a contract for a tenure track teaching position; that is an arrangement whereby a person is given the opportunity to gain tenure after a certain number of years.

In this case it is relevant for you to consider that the parties both agree that Defendant's Faculty Handbook and Faculty of Arts and Sciences Ladder Faculty Promotion Handbook ("FAS Handbook") contains the criteria and the procedures for tenure. You may also consider that the terms of the Faculty Handbook applicable to the tenure criteria and the procedures to be followed were not negotiated directly between the Plaintiff and the Defendant, but was a contract of adhesion whose provisions were the result of a process of deliberation and adoption by vote of the faculty of the college.

You have been provided with documents which set forth the tenure criteria and to the tenure process, including policies considering recusal from voting on tenure applications. You have also heard testimony from several witnesses interpreting the language at issue in this case which I will address below. You may consider all of this evidence in deciding what the terms of the agreement were and in giving effect to the intention of the parties.

*Torosyan v. Boehringer-Ingelheim Pharmaceuticals, Inc.*, 234 Conn. 1, 14-15 (1995)

*Coelho v. Posi-Seal International, Inc.*, 208 Conn. 106, 111-12 (1988)

*Magnan v. Anaconda Industries, Inc.*, 193 Conn. 558, 566-67 (1984)

*Craine v. Trinity College*, 259 Conn. 625, 654 (2002)

*Daley v. Wesleyan University*, 63 Conn.App. 119, 120, (2001)

<u>Defendant's Objection</u>

Instead of adding clarity to the jury's task, this proposed instruction is confusing and misleading. Defendant objects to this instruction, in part, because it overly complicates the simple elements of a breach of contract. <u>Compare</u> Defendant's Instruction No. 6.

Further, the instruction states that "words used by the parties before and after the contract was entered into must be taken into account in interpreting the contract," which is in effect an invitation to consider parol evidence for impermissible purposes. <u>HLO Land Ownership Assocs. Ltd. Pshp. v. City of Hartford</u>, 248 Conn. 350, 358, 727 A.2d 1260, 1265 (1999) ("The parol evidence rule does not of itself…forbid the presentation of parol evidence, that is, evidence outside the four corners of the contract concerning matters governed by an integrated contract, but forbids only the use of such evidence to vary or contradict the terms of such a contract. Parol evidence offered solely to vary or contradict the written terms of an integrated contract is, therefore, legally irrelevant. When offered for that purpose, it is inadmissible not because it is parol evidence, but because it is irrelevant.")

Further, the instruction needlessly labels the faculty handbook as a contract of adhesion, which as written, suggests some wrongdoing on the part of Defendant.

Finally, the instruction states that the parties had a contract for a tenure-track teaching position, but the Faculty Handbook is no such thing. At most, the Faculty Handbook sets forth the policies, procedures and standards for reviewing a tenure candidate's qualifications for tenure. This again threatens to mislead the jury.

## REQUESTED INSTRUCTION NO. 8

## BREACH OF CONTRACT

## SOURCE OF PLAINTIFFS CONTRACTUAL RIGHTS AND DEFENDNAT'S OBLIGATIONS REGARDING THE STANDARDS AND PROCEDURES RELEVANT TO THE PLAINTIFF'S RIGHT TO BE GRANTED A FAIR REVIEW OF HER TENURE APPLICATION

Defendant is free to establish whatever criteria and procedures for making the tenure decision it chooses, so long as those criteria and procedures are not illegal.

However, once Defendant establishes a procedure for making the tenure decision as well as the criteria applicable to that decision and has communicated these terms to those seeking tenure by publication in the Faculty Handbook, you may properly find these become terms of the employment agreement between the Plaintiff and the Defendant. Moreover, disputes between the parties regarding the meaning of provisions of the Faculty Handbook or other terms of employment are to be resolved by you according to my instructions. The fact the Defendant is an academic institution, does not, in and of itself, alter the standards for interpreting employment agreements.

*Craine v. Trinity College*, 259 Conn. 625, 654 (2002)

*Daley v. Wesleyan University*, 63 Conn.App. 119, 120, (2001)

<u>Defendant's Objection</u>

Defendant objects to this instruction to the extent it references an employment agreement aside from the Faculty Handbook, into which the terms of the handbook were incorporated. It is not clear to which agreement Plaintiff refers, and Plaintiff did not plead any such additional agreement in the operative complaint.

## REQUESTED INSTRUCTION NO. 9

## BREACH OF CONTRACT

## RELEVANT PROVISIONS OF THE FACULTY HANDBOOK

Defendant's Faculty Handbook and the FAS Handbook set forth the guidelines for tenure. In this case, Plaintiff claims Defendant breached the employment agreement represented by the Faculty Handbook and other related documents because Defendant allowed members of the faculty with a conflict of interest to vote on her case.

Defendant's Faculty Handbook discusses recusal from voting on a tenure application, stating that, "[a] member of the faculty who has a personal or professional conflict of interest concerning an individual on whom a vote is to be taken must absent him or herself from all votes taken on that individual." Defendant's FAS Handbook Voting Policies add that faculty members with a conflict of an interest, "must absent him or herself from all discussions and all votes taken on that individual."

Plaintiff claims Defendant breached the employment agreement when Defendant's Office of the Dean of the Faculty of Arts and Sciences failed to properly administer and implement the FAS Handbook and adjudicate recusal requests. More specifically, Plaintiff claims that the Office of the Dean of the Faculty of Arts and Sciences violated the provisions of the Faculty Handbook when it denied Plaintiff's request that Professors Adorno and Gonzalez Echevarria be recused from voting in her case.

You may consider this language when seeking to figure out the intent of the plaintiff and the defendant as they approached their obligations under the agreement. If you find that Defendant was bound by the conflict of interest language in the FAS Handbook and the Faculty Handbook, that the FAS Dean denied Plaintiff's recusal request, and this denial caused the Department of Spanish and Portuguese to unfairly apply Defendant's tenure standard to Plaintiff, then you may find that the defendant has committed a material breach of contract.

*Torosyan v. Boehringer-Ingelheim Pharmaceuticals, Inc.*, 234 Conn. 1, 14-15 (1995)

*Craine v. Trinity College*, 259 Conn. 625, 655 (2002)

*Coelho v. Posi-Seal International, Inc.*, 208 Conn. 106, 111-12 (1988)

*Magnan v. Anaconda Industries, Inc.*, 193 Conn. 558, 566-67 (1984)

*McConnell v. Howard University,* 818 F.2d 58, 69-71 (D.C. Cir. 1987)

*Bason v. American University*, 414 A.2d 522, 525 (D.C. 1980)

*Fisherman v Smartserv Online*, 2003 Conn. Super. LEXIS 338, at *27029 (Conn. Super. Feb, 11, 2003)

*Barry v. Posi-Seal International Inc.*, 36 Conn.App. 1, 6 (1994)

*Nayar v. Howard University*, 881 F. Supp. 15, 21-23 (D.D.C. 1995)

*Sayers v. Rochester Tel. Corp. Supplemental Management Pension Plan*, 7 F.3d 1091, 1094 (2d Cir. 1993)

<u>Defendant's Objection</u>

Defendant objects to this instruction to the extent it states a number of facts that Plaintiff must prove, and legal theories that Plaintiff must develop. In effect, it instructs on the facts of the case, not the law.

Further, this instruction removes the issue of materiality from the jury's decision. It should be the jury, and not the Court, that determines if an alleged breach is "material."  <u>See</u> Defendant's Instruction No. 8.


<u>REQUESTED INSTRUCTION NO. 10</u>

<u>BREACH OF CONTRACT</u>

<u>THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING</u>


In deciding Plaintiff's breach of contract claim, you may be guided by the implied covenant of good faith and fair dealing.  In every contract the law implies a promise by each party to deal fairly and in good faith with the other party.  This is called the implied covenant of good faith and fair dealing.  The implied covenant of good faith and fair dealing is a supplement to aid in the interpretation of specific contract terms, but cannot be used to vary or change the terms of the agreement.

Good faith and fair dealing simply requires that each party act consistently with the reasonable expectations of the other party, regardless of whether there is a formal written requirement to do so.  Here, Plaintiff alleges that she reasonably expected that Professors Gonzalez Echevarria and Adorno would be recused, consistent with Defendant's policies requiring recusal when there is a conflict of interest.  It is your role as jurors to determine whether Plaintiff had a reasonable expectation based on the language in the Faculty Handbook related to the way in which conflicts of interest would be handled and whether Defendants acted in a way to defeat her reasonable expectations by failing to require recusal. If you find that Plaintiff's reasonable expectations were defeated by Defendant's

**failure to implement the recusal provision in the Handbook then you may find this**

**failure constituted a breach of her employment contract.**

*Torosyan v. Boehringer-Ingelheim Pharmaceuticals, Inc.,* **234 Conn. 1, 14-15 (1995)**

*Coelho v. Posi-Seal International, Inc., 208* **Conn. 106, 111-12 (1988)**

*Magnan v. Anaconda Industries, Inc.***, 193 Conn. 558, 566-67 (1984)**

*Berkowitz v. President & Fellows of Harvard Coll.,* **58 Mass. App. Ct. 262, 269 (2003)**

*De La Concha of Hartford, Inc. v. Aetna Life Inc. Co.***, 269 Conn. 424, 432-33 (2004)**

*Jaser v. Fischer***, 65 Conn.App. 349, 359-60 (2001)**

*Nygren v. Greater New York Mutual Ins. Co.***, 2009 U.S. Dist. LEXIS 26078, at \*14-15 (D. Conn. Mar. 27, 2009)**

*McConnell v. Howard University***, 818 F.2d 58, 69-71 (D.C. Cir. 1987)**

*Bason v. American University***, 414 A.2d 522, 525 (D.C. 1980)**

<u>Defendant's Objection</u>

**Plaintiff does not assert a claim for beach of the implied covenant of good faith and fair dealing, and so the jury should not be instructed on the implied covenant.  See Second Amended Complaint, Docket No. 33.  Further, this instruction impermissibly outlines Plaintiff's legal theories, and suggests that the jury need not decide the elements of breach of contract, but rather can find in Plaintiff's favor if "Plaintiff's reasonable expectations were defeated."  This is incorrect.  The element of a breach of contract claim are well established, <u>see</u> <u>Meadowbrook Ctr., Inc. v. Buchman</u>, 149 Conn. App. 177, 185-86, 90 A.3d 219, 226 (2014), and there is no exemption for Plaintiff.  Rather, she must prove each element of her claim.**

# REQUESTED INSTRUCTION NO. 11

## NEGLIGENT MISREPRESENTATION

Under Connecticut law, when one supplies false information for the guidance of others, they are subject to liability for financial loss caused by their reliance on the false information. The obligation imposed by this cause of action is to exercise due care in obtaining and communicating information which will be relied on by others in their business or profession.

The elements of negligent misrepresentation are:

1. That the defendant supplied false information
2. Defendant failed to exercise reasonable care in obtaining or communicating the information
3. Defendant supplied the information to induce plaintiff to act on the information
4. Plaintiff justifiably relied on the information to their injury

Even an innocent misrepresentation of fact may be actionable if the representation is made by one who has the means of knowing, out to know, or has the duty of knowing the truth.

Plaintiff claims that Defendant negligently misrepresented the terms and conditions under which she would be entitled to tenure. Plaintiff has alleged that the criteria and procedures for tenure were published in the FAS Handbook and the Faculty Handbook. Both Handbooks promise a fair review of a tenure case. The FAS Handbook obligated Defendant to recuse an individual from discussions and votes on tenure on that individual when there is a personal or professional conflict of interest.

Plaintiff alleges that Defendant repeatedly misrepresented to her that Defendant's administration would not make decisions on the composition of the Internal Review Committee until the Climate Review was completed. Plaintiff alleges that she relied on these representations and it was not communicated to her that a decision had been made on her request for Professors Adorno and Gonzalez Echevarria to be recused from voting and deliberating on her tenure application until it was too late for her to appeal the decision.

In other words, plaintiff claims that she was told that defendant's Handbooks ensure a fair evaluation of her tenure case, but that due to the defendant's carelessness, what plaintiff was told was not consistent with defendant actually did. Plaintiff claims that she has sustained a substantial loss from Defendant's failure to communicate accurate information because she was denied tenure at Yale and has not been able to obtain similar employment elsewhere.

Connecticut Judicial Branch Civil Jury Instructions § 3.16-1

*Sturm v. Harb Development, LLC,* 298 Conn. 124, 143–44 (2010)

*Craine v. Trinity College*, 259 Conn. 625, 654 (2002)

*Williams Ford, Inc. v. Hartford Courant Co.*, 232 Conn. 559, 575 (1995)

*D'Ulisse-Cupo v. Board of Directors of Notre Dame High School*, 202 Conn. 206, 217-18 (1987)

<u>Defendant's Objection</u>

Defendant objects to this instruction to the extent it states a number of facts that Plaintiff must prove, and legal theories that Plaintiff must develop. In effect, the final three paragraphs of this instruction only instruct on the facts of the case, not the law.

## REQUESTED INSTRUCTION NO. 12

## DAMAGES

## TITLE VII AND CFEPA RETALIATION

## ECONOMIC DAMAGES

The purpose of money damages is to compensate the victim of wrongful retaliation by putting them in the same position that they would have been in if the wrongful retaliation had not occurred. If you find that the defendant wrongfully retaliated against the plaintiff in violation of the CFEPA or Title VII, then you should award the plaintiff the back pay that she would have earned -- that is, her salary, including salary increases you may find that she would have received -- plus any fringe benefits to which she would have been entitled to less any amount which the defendants have proven by a preponderance of evidence that the plaintiff has earned from other employment. Fringe benefits include but are not limited to the following items: health and life insurance, pension benefits and vacation pay. The amount of back pay to be awarded is to be computed from the date you may find that the defendants wrongfully discriminated or retaliated up until today's date.

The plaintiff is not required to prove with unrealistic precision the amount of lost earnings and benefits, if any, due to her. Any ambiguities in determining what she would have earned need to be resolved against the defendants.

In determining the amount of such damages, you are not to take into account any money received by the plaintiff from Social Security, Medicare, unemployment compensation or any other collateral source.

*Saulpaugh v. Monroe Community Hospital*, 62 FEP Cases 1315 (2d Cir. 1993)

*Whittlesey v. Union Carbide Corp.*, 742 F.2d 724 (2d Cir. 1984)

*Buckley v. Reynolds Metals Co.*, 690 F.Supp. 211 (S.D.N.Y. 1988)

*Dailey v. Societe Generaie*, 889 F. Supp. 108 (S.D.N.Y. 1995)

*Maturo v. National Graphics Inc.*, 722 F. Supp. 916, 927 (D. Conn. 1989)

Pal v. New York University, 583 F. App'x 7, 10 (2d Cir. 2014)

<u>Defendant's Objection</u>:

As an initial matter, the issue of Title VII/CFEPA economic damages should not be sent to the jury.  <u>See</u> Defendant's Motion in Limine.

Defendant objects to the portion of this instruction that provides that Plaintiff need not prove her damages with "unrealistic precision," which is a phrase undefined and open to a wide range of interpretations.  Further, Plaintiff seeks an instruction that "any ambiguities in determining what she would have earned need to be resolved against the defendant[ ]."   This paragraph offers an inflammatory instruction that invites the jury to award whatever amount it pleases, rather than conduct a careful review of the evidence to determine the measure of Plaintiff's alleged damages.  The cases Plaintiff cites do not support this instruction.

Finally, there is nothing in the discovery record in this case that suggests that Plaintiff did collect "any money…from Social Security, Medicare, unemployment compensation or any other collateral source."  There is thus no need for the final paragraph of this instruction, which may confuse the jury because it fails to define "collateral source." For example, without definition, the jury may believe earnings from subsequent employment is a collateral source.

## REQUESTED INSTRUCTION NO. 13

## AFFIRMATIVE DEFENSES

## BURDEN OF PROOF

The defendant in this case, in addition to denying the claims made by the plaintiff, has asserted what are referred to as "affirmative defenses." An "affirmative defense" is a defense which, if established, defeats some or all of plaintiff's claims. The Defendant has asserted that the Plaintiff has failed to mitigate her damages.

The defendant has the burden of proof as to the allegations of any affirmative defenses upon which the defendant relies. The plaintiff does not have the burden to disprove the allegations of the defendant's affirmative defenses. Rather, each party has the burden of proving that party's own claims or defenses and no burden to disprove the claims or defenses of that party's adversary.

*Saks v. Franklin Covey Co.*, 316 F. 3d 337, 350 (2d Cir. 2003)

*Cabrera v. Jakabovitz*, 24 F.3d 372, 382-83 (1994)

*Luciano v. Olsten Corp.*, 110 F.3d 210, 218 (2d Cir. 1997)

<u>Defendant's Objection</u>:

Defendant will consider withdrawing its mitigation of damages defense and will advise the Court if it does so.

<u>**REQUESTED INSTRUCTION NO. 14**</u>

<u>**MITIGATION OF DAMAGES**</u>

The law of damages is that a plaintiff has a duty to take reasonable measures to obtain employment that is comparable to the job that she had with the Defendant. A comparable position means a substantially equivalent position. Therefore, in this case, Plaintiff was only required to take reasonable measures to find another job that was comparable, or substantially equivalent, to the job that she had with the Defendant. Plaintiff was not required to accept a demotion, or look for another line of work, or relocate. She was only required to make an honest and reasonable effort to find another job that was substantially equivalent to the job that he had with the Defendant.

Unlike the issue of discrimination in this case, the burden of proving that the plaintiff did not take reasonable measures to find and secure other comparable, or substantially equivalent, employment is on the defendant. In order to prove that the Plaintiff failed to reasonably mitigate his damages, the defendant has the burden of showing by a preponderance of the evidence that other substantially equivalent positions were available, and the Plaintiff made no reasonable effort to find them. The employer must present evidence not only that the employee did not make reasonable efforts to obtain substantially equivalent employment, but also, that substantially equivalent employment existed. To sustain its burden, the Defendant must present concrete evidence, mere speculation is not sufficient. A plaintiff is only required to make reasonable efforts to find a substantially equivalent position, and is not required to be successful in finding other employment or to accept a lesser position. In addition,

the reasonableness of the effort to find substantially equivalent employment should be evaluated in light of the individual characteristics of the plaintiff, such as her age, and the job market, and whether the Defendant took any action that made it more difficult for Plaintiff to find other comparable, or substantially equivalent, employment.

In order to meet its burden that the plaintiff did not mitigate her damages, the Defendant must prove that the plaintiff's mitigation efforts were plainly unreasonable, that other substantially equivalent positions were available, and the plaintiff made no reasonable effort to find them.

*McKenny v. John V. Carr & Son, Inc.*, 922 F. Supp. 967, 984 (D. Vt. 1996)

*Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 53 (2d Cir. 1998)

*Daily v. Societe General*, 108 F.3d 451 (2d Cir. 1997)

*Ford Motor Co. v. E.E.O.C.*, 458 U.S. 219, 231-32 (1982)

*Clark v. Frank*, 960 F.2d 1146, 1152 (2d Cir. 1992)

*Rasimas v. Michigan Department of Mental Health*, 714 F.2d 614, 624 (6th Cir. 1983) *cert. denied*, 460 U.S. 950 (1984)

*Raimondo v. AMAX. Inc.*, 843 F. Supp. 806 (D. Conn. 1994)

*EEOC v. Kallir, Philips, Ross, Inc.*, 420 F. Supp. 919 (S.D.N.Y. 1976), *aff'd* 559 F.2d 1203

*Perez v. Progenics Pharmaceuticals, Inc.*, 204 F. Sup. 3d 528, 558-9 (S.D.N.Y. 2016)

<u>Defendant's Objection</u>:

Defendant will consider withdrawing its mitigation of damages defense and will advise the Court if it does so.

## REQUESTED INSTRUCTION NO. 15

## NONECONOMIC COMPENSATORY DAMAGES

If you find Defendant is liable to Plaintiff under Title VII or CFEPA, Plaintiff is also entitled to recover noneconomic damages in an amount which will reasonably compensate her for the loss and injury she has proven were actually caused suffered as a result of by Defendant's unlawful conduct. You may only compensate the plaintiff for those injuries that are a direct result of defendants' wrongful conduct. Plaintiff may not recover for any injury that existed prior to the incidents at issue, or for any injury from which she suffered that was not caused by the defendant's conduct.

The damages you award must be fair compensation, no more and no less. Compensatory damages are not allowed as a punishment and must not be imposed or increased to penalize the defendant.

You may award Plaintiff reasonable compensation for the following:

1. pain, suffering, and physical or emotional distress;
2. embarrassment and humiliation;
3. loss of enjoyment of life; that is, Plaintiff's loss of the ability to enjoy certain aspects of her career and work life as a result of Defendant's retaliatory actions; and
4. harm to reputation.

You may consider the testimony and the demeanor of Plaintiff in considering and determining a fair allowance for any damages for emotional distress, humiliation, and loss of enjoyment of life. Emotional harm may manifest itself, for example, as sleeplessness, anxiety, stress, depression, marital strain, embarrassment, humiliation, loss of respect, emotional distress, loss of self

esteem, or excessive fatigue. Physical manifestations of emotional harm may also occur, such as ulcers, headaches, skin rashes, gastrointestinal disorders, or hair loss.

In the determination of the amount of the award, it will often by impossible for you to arrive at a precise award. These damages are intangible, and it is difficult to arrive at a precise evaluation of actual damage for emotional harm from gender discrimination. No opinion of any witness is required as to the amount of such reasonable compensation. Nonetheless, it is necessary to arrive at a reasonable award that is supported by the evidence.

Finally, in determining the amount of the award, you should be guided by dispassionate, common sense. You must use sound direction in fixing an award of damages, drawing reasonable interferences from the facts and evidence. You may not award damages based on sympathy, speculation, or guess work.

3 Devitt, Blackmar & Wolf, Federal Jury Practice and Instructions, 104.06 (4th Ed. 1987)

E.E.O.C. Policy Guide on Compensatory and Punitive Damages Under 1991 Civil Rights Act (B.N.A., 1992) at II(A)(2), as modified

Wright & Ankerman, Connecticut Jury Instructions Civil, 7-1 Mental Anguish or Emotional Distress - Defined (4th Ed. 1993, Supp. 1996)

*Saulpaugh v. Monroe Community Hosp.*, 4 F.3d 134, 145 (2d Cir. 1993), cert. denied, 510 U.S. 1164 (1994)

*Lore v. City of Syracuse*, 670 F.3d 127, 154 (2d Cir. 2012)

3 Hon. Edward J. Devitt, et al., Federal Jury Practice and Instructions § 104 A.11 (4th) ed. 1987 & Supp. 1997)

O'Malley, Grenig & Lee, Federal Jury Practice and Instruction § 170.60 (2001)

Sand, Siffert, Reiss, & Batterman, Modern Federal Jury Instructions (Civil), Instr. 1.1.3 (2004)

42 U.S. Code § 1981a

<u>**Defendant's Objection**</u>:

As an initial matter, the issue of Title VII/CFEPA compensatory damages should not be sent to the jury at this time.  <u>See</u> Defendant's Motion in Limine.  Moreover, to avoid confusion, the jury should be instructed that any alleged economic damages are not within the jury's purview and should not be considered as part of any noneconomic compensatory damages.

As written, parts of this instruction seem to assume the jury will find in favor of Plaintiff, leaving out the important caveat that the jury must first find for Plaintiff.  <u>See</u> Third Paragraph of Instruction No. 15.  The instruction also presents what amounts to a checklist for the jury, instead of permitting the jury to weigh the evidence and determine what it intends to compensate Plaintiff for, if anything.  Defendant's Instruction No. 12 presents a more balanced explanation of compensatory damages.

<u>**REQUESTED INSTRUCTION NO. 16**</u>

<u>**TITLE VII: PUNITIVE DAMAGES**</u>

You may award the plaintiff punitive damages if you find the defendant liable for her claims retaliation under Title VII. You may make an award even if you find that the plaintiff has failed to establish actual damages.

Punitive damages may be awarded for actions taken with malice or with reckless indifference to the rights of the plaintiff.  The defendant acted with malice and reckless indifference if it acted in the face of a perceived risk of violating federal law, or that it knew or should have known that its actions would violate federal law.  If you determine that the defendant acted with malice or reckless indifference to the rights of the plaintiff in connection with the allegations made by plaintiff in her Title VII claims, then you may award punitive damages to the Plaintiff.

In considering the amount of punitive damages to award you may also consider the Defendant's wealth or net worth.  This is because one of the many

purposes of punitive damages is deterrence and that deterrence is directly

related to what an institution can afford to pay.

*DiSorbo v. Hoy*, 343 F.3d 172, 189 n.9 (2d Cir. 2003)

*Whitney v. Citibank, N.A.*, 782 F.2d 1106, 1119 (2d Cir. 1986).

*Cush-Crawford v. Adchem Corp.*, 271 F.3d 352, 354 (2d Cir. 2001)

*Kolstad v. American Dental Association*, 527 U.S. 526, 538 (1999)

42 U.S. Code § 1981a

<u>Defendant's Objection</u>

As an initial matter, the issue of Title VII/punitive damages should not be sent to the jury at this time.  <u>See</u> Defendant's Motion in Limine.

Further, Defendant objects inasmuch as Plaintiff's proposed instruction does not adequately express that the award of punitive damages is an extraordinary remedy. <u>Hughes v. Patrolmen's Benevolent Ass'n</u>, 850 F.2d 876, 883 (2d Cir. 1988) ("[P]unitive damages are an extraordinary sanction").  <u>Compare</u> Defendant's Proposed Instruction No. 15.

Plaintiff's instruction fails to instruct the jury on essential principles, outlined by the Supreme Court, that limit Defendant's potential liability for punitive damages. <u>*Kolstad v. American Dental Assoc.*</u>, 527 U.S. 526, 545 (1999) ("in the punitive damages context, an employer may not be vicariously liable for the discriminatory employment decisions of managerial agents where these decisions are contrary to the employer's 'good-faith efforts to comply with Title VII'"); <u>compare</u> Defendant's Proposed Instruction No. 15.

Plaintiff's instruction narrowly defines malice and reckless indifference, effectively aligning the facts of the case with her definition of those terms in the hope of swaying the jury. A more balanced definition is appropriate. <u>Compare</u> Defendant's Proposed Instruction No. 15; <u>Kolstad v. American Dental Association</u>, 527 U.S. 526 (1999);<u>Tepperwien v. Entergy Nuclear Operations</u>, 663 F.3d 556 (2d Cir. 2011); <u>Smith v. Lightning Bolt Prods.</u>, 861 F.2d 363, 373 (2d Cir. 1988); <u>Zarcone v. Perry</u>, 572 F.2d 52, 56 (2d Cir. 1978); 42 U.S.C. § 1981a.

Plaintiff's instruction also instructs the jury to consider Defendant's wealth or net worth, which is unduly prejudicial to Defendant's interests during the liability phase of this case.  <u>Smith v. Lightning Bolt Prods.</u>, 861 F.2d 363, 373-74 (2d Cir. N.Y. 1988) (holding that it would "often be prejudicial to a defendant to attempt to

litigate its financial condition during the trial on the issues of liability and compensatory damages. . .”); <u>Vasbinder v. Ambach</u>, 926 F.2d 1333, 1344 (2d Cir. 1991) (“Punitive damages are to be tailored to the defendant's ability to pay, and normally that class of evidence is not admitted or desirable during the liability and compensatory damages phase of the case”). <u>See</u> Defendant's Motion in Limine.

### REQUESTED INSTRUCTION NO. 17

### AWARD OF INTEREST

On an award of economic damages, the jury may award interest at the legal rate of 10% per annum as additional damages. Such interest runs from the time the money was due. Therefore, if you find for the plaintiffs on the issue on economic damages and award damages for the loss of pay and the plaintiffs suffered, you may add such damages, and interest at the rate of 10% per year from the date the loss of pay was suffered.

*Gaudio v. Griffin Health Services Corporation*, 249 Conn. 523, 553-54, 733 A.2d 197 (1999)

Connecticut General Statutes § 37-3a

28 U.S. Code § 1961

<u>Defendant's Objection</u>

The issue of economic damages should not be sent to the jury at this time. <u>See</u> Defendant's Motion in Limine.

## Certification of Good Faith Effort to Resolve Differences

I hereby certify that I have made a good faith effort to resolve any differences in the parties proposed jury instructions.

_/s/ Claire M. Howard_

**Claire M. Howard**