| | | |
|---|---|---|
| **SUSAN BYRNE** | : | |
| **Plaintiff,** | : | |
| | : | **No. 3:17-CV-1104 (VLB)** |
| **v.** | : | |
| | : | |
| **YALE UNIVERSITY, INC.** | : | **April 10, 2020** |
| **Defendants.** | : | |
| | : | |
| | : | |
| | : | |
| | : | |

## MEMORANDUM OF DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR RECONSIDERATION

Shortly after the Court ruled on the Defendant Yale University's motion for summary judgment, the Court denied Plaintiff Susan Byrne's motion to seal thirty five of the 165 exhibits filed with her opposition memorandum. [Dkt. 121]. The sole reason advanced by Plaintiff for sealing was Defendant's designation of these materials as "Confidential" pursuant to the Protective Order. [*Ibid*.]. The Defendant now moves for reconsideration and requests sealing of nine exhibits: Pl. Exs. 7, 9, 43, 45, 46, 49, 70, 85, and 162. [Dkt. 122 (Def. Mot. for Recons.)]. For reasons set forth herein, the Court GRANTS in part and DENIES in part Defendant's motion for reconsideration.

## Legal Standard for Reconsideration

In the Second Circuit, the standard for granting a motion for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other

words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995); *see* D. Conn. L. R. 7(c) (requiring the movant to file along with the motion for reconsideration "a memorandum setting forth concisely the controlling decisions or data the movant believes the Court overlooked").

There are three grounds for granting a motion for reconsideration: (1) "intervening change of controlling law"; (2) "the availability of new evidence"; or (3) a "need to correct a clear error or prevent manifest injustice." *Virgin Atl. Airways Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (quoting 18 C. Wright, A. Miller & E. Cooper, *Fed. Practice & Procedure*, § 4478 at 790). If the Court "overlooked controlling decisions or factual matters that were put before it on the underlying motion," reconsideration is appropriate. *Eisemann v. Greene*, 204 F.3d 393, 395 (2d Cir. 2000) (per curium). However, a motion for reconsideration should be denied when the movant "seeks solely to relitigate an issue already decided." *Shrader*, 70 F.3d at 257; *Patterson v. Bannish*, No. 3:10-cv-1481 (AWT), 2011 WL 2518749, at *1 (D. Conn. June 23, 2011) (same). A party seeks to relitigate a matter when they ask the court to consider a matter a second time based on facts and or law available to but not presented by the movant in the first instance.

Defendant's motion for reconsideration was timely filed pursuant to D. Conn. L. R. Civ. P. 7(c)(1).

<u>Analysis</u>

The Court assumes the parties' familiarity with factual records and the Court's recent ruling on Defendant's motion for summary judgment. *See* [Dkt. 120

(Order and Mem. of Decision on Def. Mot. Summ. J.)]. Defendant argues that reconsideration is warranted to avoid a manifest injustice because of the chilling effect from public disclosure of internal investigations and the Court had not previously heard Defendant's argument on the issue. The Court agrees, in part.

The Court rejects the argument that Defendant has not had the opportunity to be heard on this issue. Plaintiff filed her Motion to Seal on May 15, 2019. [Dkt. 79]. The Court did not deny the motion until more than ten months later, on March 30, 2020. During that time, the deficiency of Plaintiff's motion to seal was patent. The Standing Protective Order was docketed on July 2, 2017 and expressly states:

> 14. Any Designated Material which becomes part of an official judicial proceeding or which is filed with the Court is public. Such Designated Material will be sealed by the Court only upon motion and in accordance with applicable law, including Rule 5(e) of the Local Rules of this Court. This Protective Order does not provide for the automatic sealing of such Designated Material. If it becomes necessary to file Designated Material with the Court, a party must comply with Local Civil Rule 5 by moving to file the Designated Material under seal.

[Dkt. 4].

Local Civil Rule 5 sets forth the legal standard for determining whether material should be sealed in compliance with the First Amendment to the United States Constitution and the federal common law. D. Conn. L.R. Civ. P. 5(e). Plaintiff's motion which relied solely on the parties' designation of the material for discovery purposes is not one of the bases set forth in Local Rule 5 and thus was clearly not a basis for the court to seal the material. Defendant had ample opportunity to supplement Plaintiff's motion to seal the exhibits or file its own motion advancing the same arguments raised now.

Instead, the Court is concerned with the potentially adverse collateral effects on uninvolved third parties who privately revealed sensitive allegations during the Defendant's subsequent internal investigation into Professor Roberto González Echevarría.

*Joy v. North*, 692 F.2d 880, 893 (2d Cir. 1982) explains how different standards and underlying policy considerations govern the public disclosure of materials during discovery versus an adjudication. During discovery, "protective orders are useful to prevent discovery from being used as a club by threatening disclosure of matters which will never be used at trial. Discovery involves the use of compulsory process to facilitate orderly preparation for trial, not to educate or titillate the public." *Ibid*. These same considerations do not apply in an adjudication, which is a formal government act, and, absent exceptional circumstances, subject to public scrutiny. *Ibid*. "Documents used by parties moving for, or opposing, summary judgment should not remain under seal absent the most compelling reasons." *Ibid*. This distinction is precisely why the Plaintiff's motion to seal failed in the first instance.

"It is well established that the public and the press have a qualified First Amendment right to . . . access certain judicial documents." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 120 (2d Cir. 2006). As such, a court may seal a judicial document or a portion thereof only where the movant shows sealing is "essential to preserve higher values and is narrowly tailored to serve that interest." *Matter of N.Y. Times Co.*, 828 F.2d 110, 116 (2d Cir. 1987). When doing so, D. Conn. L.R. Civ. P. 5(e)(3) requires the Court to make "particularized findings

demonstrating that sealing is supported by clear and compelling reasons and is narrowly tailored to serve those reasons."

As *Joy* explains, "an exercise of judgment is in order. The importance of the material to the adjudication, the damage disclosure might cause, and the public interest in such materials should be taken into account before a seal is imposed." *Joy*, 692 F.2d at 893.

Defendant argues that this case is analogous to *Kleftogiannis v. Inline Plastics Corp.*, 411 F. Supp. 3d 216, 230-33 (D. Conn. 2019). In *Kleftogiannis*, Judge Bolden permitted the redaction of non-management employees' names who participated in an internal investigation from the complaint. *Ibid*. There, Judge Bolden found that "Inline has a significant and weighty interest, as an employer charged with in ensuring that its employees do not fear reprisal or retaliation from current or former co-workers as a result of their participation in internal investigations, and that those employees have significant privacy interests of their own as well." *Id*. at 233. As discussed in *Kleftogiannis*, "[T]he privacy interests of innocent third parties ... should weigh heavily in a court's balancing equation." *Ibid*. (quoting *S.E.C. v. TheStreet.Com*, 273 F.3d 222, 232 (2d Cir. 2001)). Judge Bolden concluded that the employer's proposed solution struck the appropriate balance and was narrowly tailored. *Ibid*.

Defendant's interest in preserving confidentiality to promote robust internal investigations, particularly given its legal obligations under Title VII and Title IX to investigate sexual harassment allegations, is a compelling one. However, their

proposed solution is not narrowly tailored to balance that interest against the public's right to know.

For reasons made apparent by the Court's ruling on Defendant's motion for summary judgment, the content of the Climate Review Report (Pl. Ex. 7)[Dkt. 80-3] is necessary to understand the Court's ruling. The Court held that "a reasonable jury could find that the senior faculty members speculated about the content of the statements to Climate Review investigators concerning sexual harassment and were angered by her participation in the investigation." [Dkt. 120 (Order and Mem. of Decision on Def. Mot. Summ. J.) at 22]. The Climate Report contains Plaintiff's allegations of sexual harassment, raises the possibility of collusion, and details the departmental politics that are alleged to have enabled the retaliatory tenure denial. The provost reviewed the report prior to deciding Plaintiff's appeal of her tenure denial. [*Id.* at 11, 13-14].

Aside from the opinions of a few junior faculty members and lecturers, the report principally concerns the five senior professors in the department, all of whom participated in the tenure decision. All student names are redacted. The allegations in the report are not salacious. The Court finds no basis to seal Plaintiff's Exhibit 7 and it shall remain unsealed.

For the same reason, there is no basis to seal deposition excerpts from Attorney Jamaal Thomas, Defendant's in-house counsel who co-conducted the Climate Review investigation. [Pl. Ex. 162 (Dkt. 80-34)] Attorney Thomas testified that he was concerned about potential collusion during the Climate Review. [Pl. Ex

162 (Thomas Depo.) at 137:06-138:25]. Plaintiff testified that her participation in the Title IX investigation was prompted by Attorney Thomas. *See* [Dkt. 120 (Order and Mem. of Decision on Def. Mot. Summ. J.) at 11-12].

By contrast, the University Wide Committee on Sexual Misconduct's ("UWC") proceeding against Professor González Echevarría arose from the Title IX investigation and took place after Plaintiff's tenure vote. *See* [Pl. Ex. 46 (Letter to González Echevarría regarding UWC investigation)]. Plaintiff is not proceeding on a claim of sexual harassment and need not prove that Professor González Echevarría's alleged sexual harassment is legally actionable. *Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir. 1988). The Court's ruling on summary judgment did not consider the process or findings of the UWC investigation because it was not essential to the Court's holding. [Dkt. 120 (Order and Mem. of Decision on Def. Mot. Summ. J.) at 22].

Given the singular nature of the UWC investigation, the details of alleged sexual harassment are deeper and broader than those raised by Plaintiff. The names of many of the individuals referenced and incidents involved are far removed from the witnesses and decision-makers mentioned in the parties' briefing and the Court's summary judgment opinion. The third-party witnesses made these confidential statements four years ago, in some cases about events over a decade earlier. The comments are of sensitive nature and concern allegations of both direct instances of sexual harassment and secondhand accounts. As to redacted students' names, the Court is concerned that a savvy reader could deduce their identities, given the specificity of the statements and the

small circle of knowledgeable persons. The Court finds that these third parties have a compelling privacy interest and failure to protect that interest would amount to "manifest injustice." Not only would its public disclosure thwart the ability to obtain candid responses to essential investigations of impropriety, it could besmirch the names of innocent people.

The remaining exhibits subject to reconsideration 9, 43, 45, 46, 49, 70, and 85 all address the UWC investigation. Although the Court has found a compelling need to protect third parties' privacy interest, the sealing order must still be narrowly tailored to achieve that end. Defendant's requested blanket sealing of these documents does not do so. The Court, therefore, GRANTS reconsideration as follows:

**Plaintiff Ex. 9 [Dkt. 80-4]**

This document is titled: "**UWC Complaint Against Prof. Roberto Gonzalez Echevarria Specific Incidents With Direct Testimony by the Person Harmed or by a Corroborating Witness.**" Paragraphs 1-6 address Plaintiff's complaints. The remaining portion consists of detailed complaints from students and other faculty members who were not-decision makers. This document is ordered SEALED. Defendant shall refile a redacted version of this document with paragraphs 1-6 unredacted.

**Plaintiff Ex. 43 [Dkt. 80-5]**

This document is titled "**UWC Panel Report to Provost Benjamin Polak.**" This document is ordered SEALED. Defendant shall refile a redacted version of the

document that contains pages 1-2 and 8-9. This information contains the committee's findings and recommendations without any potentially identifiable information from otherwise peripheral actors. Defendant's discipline of Professor González Echevarría is already subject to public disclosure by virtue of the pleadings. *See, e.g.* [Dkt. 22 (Second Am. Compl.) ¶ 101].

## Plaintiff Ex. 45 [Dkt. 80-7]

This document consists of handwritten meeting notes that are difficult to decipher but discuss sexual harassment allegations made by peripheral actors. The author is not stated in Plaintiff's opposition brief and is not immediately apparent in the notes. Plaintiff's cites these notes to establish that another junior faculty member was sexually harassed. [Dkt. 81 (Pl. Mem. in Opp'n.) at 6]. Accordingly, these notes are ordered SEALED.

## Plaintiff Ex. 46 [Dkt. 80-8]

The next exhibit is titled "Fact Finder's Report in the Case Brought By Deputy Title IX Coordinator Carl Hashimoto Against Professor Roberto Gonzalez Echevarria." The document contains detailed third-party allegations of sexual harassment *in passim*. The exhibit is ordered SEALED. The Defendant is directed to refile a copy with the following portion unredacted: the "Background" section, pages 4-5, discussing the Climate Review and animosity thereto.

<u>**Plaintiff Ex. 49 [Dkt. 80-9]**</u>

This exhibit is an email chain regarding witness statements. It contains no sensitive material, as there is no content specific information. It shall remain unsealed.

<u>**Pl. Ex. 70 [Dkt. 80-11]**</u>

This exhibit is a draft of the fact-finder's report at Plaintiff Ex. 46 [Dkt. 80-8]. It shall be sealed for the same reason.

<u>**Plaintiff Ex. 85 [Dkt. 80-16]**</u>

This exhibit is an email chain between the UWC panel and Provost Polak concerning the committee's recommendation to restrict Professor González Echevarría's ability to make tenure and other staffing decisions to guard against retaliation. The email states that "[t]he Panel … feels that the danger of retaliation by RGE against his colleagues -- many of whom have spoken against him -- is significant and that voting regarding tenure and promotion is a context in which such retaliation may well take place. Thus, there is good reason to guard against this possibility." This email chain does not discuss any sensitive third-party allegations of sexual harassment. It may also be construed to lend evidentiary support for Plaintiff's claims. It shall remain unsealed.

## Conclusion

For the above stated reasons, the Court GRANTS in part and DENIES in part Defendant's motion for reconsideration [Dkt. 121] of the Court's Order denying Defendant's motion to seal. [Dkt. 122]. Defendant shall file redacted versions of the exhibits addressed herein within 14 days of entry of this Order.

In the meantime, the Clerk shall SEAL the following exhibits: Plaintiff Ex. 9 [Dkt. 80-4], Plaintiff Ex. 43 [Dkt. 80-5], Plaintiff Ex. 45 [Dkt. 80-7], Plaintiff Ex. 46 [Dkt. 80-8], and Pl. Ex. 70 [Dkt. 80-11].

IT IS SO ORDERED.

_____/s/_____
Hon. Vanessa L. Bryant
United States District Judge

Dated this day in Hartford, Connecticut: April 10, 2020