UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **SUSAN BYRNE** | : | |
| **Plaintiff,** | : | |
| | : | **No. 3:17-CV-1104 (VLB)** |
| **v.** | : | |
| | : | |
| **YALE UNIVERSITY, INC.** | : | **September 3, 2020** |
| **Defendant.** | : | |
| | : | |
| | : | |
| | : | |
| | : | |

## MEMORANDUM OF DECISION AND ORDERS ON PARTIES' PRE-TRIAL MOTIONS IN LIMINE, [Dkts. 90-97, 99-100]

      Before the Court are two pre-trial motions in limine filed by Plaintiff Susan Byrne ("Plaintiff" or "Professor Byrne")[Dkts 99-100] and eight motions in limine filed by Defendant Yale University, Inc. ("Defendant" or "Yale") [Dkts. 90-97]. For clarity and to avoid duplicity, the Court will address the motions in limine as the issues would present chronologically at trial, rather than sequentially by docket number. First, the Court considers Plaintiff's two motions in limine, which address evidence on liability. Next, the Court considers Defendant's motions to exclude evidence that pertains to liability, namely Yale's internal investigations and faculty correspondence. [Dkts. 92, 95, and 90]. Then, the Court considers Defendant's motions in limine pertaining to damages, moving from testimony supporting damages claims and concluding with remedies. [Dkts. 93, 96, 91, 97 and 94].

      The Court enters the following orders as detailed in this omnibus decision:

- Dkt. 99: Plaintiff's Motion in Limine to exclude audio recordings of Climate Review interviews is DENIED without prejudice. Plaintiff shall

1

inform the Court as to whether she seeks leave to conduct additional limited discovery within <u>21</u> days of this Order.

- **Dkt. 100: Plaintiff's Motion in Limine to exclude lay opinion testimony about Plaintiff's employment is DENIED.**

- **Dkt. 92: Defendant's Motion in Limine to exclude admission of the Climate Review Report is DENIED. The parties shall confer in good faith to consider a stipulated redacted version of the exhibit.**

- **Dkt. 95: Defendant's Motion In Limine to exclude admission of the Title IX investigation against Professor Robert González Echevarría is DENIED in part, GRANTED in part, and DENIED without prejudice in part.**

- **Dkt. 90: Defendant's Motion in Limine concerning miscellaneous issues is GRANTED in part, DENIED in part, and GRANTED as to the redaction of student information.**

- **Dkt. 93: Defendant's Motion in Limine to exclude admission of external reviewers' opinions on damages is GRANTED.**

- **Dkt. 96: Defendant's Motion in Limine to exclude Plaintiff's opinion about her scholarship is GRANTED.**

- **Dkt. 91: Defendant's Motion in Limine to exclude evidence of backpay is GRANTED pursuant to the parties' agreement on the issue.**

- **Dkt. 97: Defendant's Motion in Limine to exclude evidence or argument for reinstatement with tenure is GRANTED.**

- **Dkt. 94: Defendant's motion for bifurcation of the trial as to punitive damages is DENIED. However, the Court will bifurcate deliberation of punitive damages.**

## I.   <u>Factual and Procedural Background</u>

**Briefly, Professor Byrne alleges that she was wrongfully denied tenure by three senior faculty members of Yale's Department of Spanish and Portuguese (the "Department") after she reported alleged instances of sexual harassment by**

2

Professor González Echevarría to administrators and staff. *See generally* [Dkt. 33 (Second. Am. Compl.)]. The crux of Plaintiff's retaliation claim is that three of the five senior professors in the department were angered by what they assumed to be her involvement in Yale's investigations into alleged sexual harassment and colluded to vote against her tenure candidacy on that basis. *See* [Dkt. 120 (Summ. J. Decision) at 16-29]. Yale maintains that Professor Byrne's scholarship missed Yale's high standard for tenure as further evidenced by the opinion of non-voting members of the departmental tenure review committee and that she received fair and thorough consideration of her tenure case. *See* [*Id*. at 26-30].

On March 27, 2020, the Court granted Defendant's Motion for Summary Judgment as to Plaintiff's negligent misrepresentation claim but denied summary judgment as to Plaintiff's claims for retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*. and the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat § 46a-60 *et seq*. [Dkt. 120 (Summ. J. Decision)] as to Professor Byrne's tenure denial. The Court also denied Defendant's motion for summary judgment as to Plaintiff's common law claim for breach of contract. [*Id*. at 30-34].

## Legal Standard

The purpose of a motion in limine is to "aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Palmieiri v. Defaria*, 88 F.3d 136, 141 (2d. Cir. 1996). Evidence should

be excluded on a motion in limine only when the evidence is clearly inadmissible on all potential grounds. *Levinson v. Westport Nat'l Bank,* No. 3:09-CV-1955 (VLB), 2013 WL 3280013, at *3 (D. Conn. 2013). A court's ruling regarding a motion in limine "is subject to change when the case unfolds ... Indeed even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous in limine ruling." *Palmieri*, 88 F.3d at 139 (citing *Luce v. United States*, 469 U.S. 38, 41-42 (1984)).

**Dkt. 99: Plaintiff's Motion to Exclude Late-Disclosed Recordings.**

Yale Law School Professor Kate Stith served as an advisor to Professors Adorno, González Echevarría, and Vallis during Defendant's climate study. She recorded these senior professors' interviews with Yale's attorneys' consent. *See* [Pl. Ex. 7 (Climate Report) at 3]. Plaintiff sought copies of the recordings during discovery. [Dkt. 99-4 (Pl. Mot. in Limine, Ex. 3) Def. Resp. to Pl. Prod. Request 1]. In response, Defendant claimed that Professor Stith no longer possessed the interviews because she upgraded her iPhone and did not save the recordings to the cloud or preserve them via any other method. [*Id.*]. The Defendant stated that Professor Stith was unaware that upgrading her phone would cause her to lose the recorded interviews and her cell phone service provider did not warn her of this risk. [*Id.*].

Plaintiff states that the recordings were first disclosed on December 18, 2019, nearly 300 days after the close of discovery and eleven days before the Joint Trial Memorandum ("JTM") deadline. [Dkt. 99 at 2-3]. Plaintiff also argues "[t]here

are issues with this production, including redactions of the recordings that last over thirty minutes in one instance, two hours of missing recordings of Professor Adorno's interview, and no recordings of Professor Gonzalez Echevarria's interview." [*Id.* at 2].

Plaintiff argues the Defendant should be precluded from introducing the recordings pursuant to Fed. R. Civ. P. 37(c), which states that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." [Dkt. 99 at 3-4]. Plaintiff argues that she was prejudiced by the late disclosure of the redacted recordings, after her depositions of Professors Adorno and Vallis and Attorney Thomas. [*Id.* at 3]. Plaintiff does not challenge the admissibility of the recordings on any other basis, including that she was prejudiced by the redactions.

In opposition, Yale argues that consideration of the four-factor test from *Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006)(citing *Softel, Inc. v. Dragon Med. & Scientific Commc'ns, Inc.*, 118 F.3d 955, 961 (2d Cir.1997)) militates against sanctioning Yale by excluding its evidence. [Dkt. 110 (Def. Mem. in Opp'n) at 4-5]. The four factors are: (1) the party's explanation for the failure to comply with the disclosure requirement, (2) the importance of the testimony of the precluded witnesses, (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony, and (4) the possibility of a continuance. *Patterson*, 440 F.3d at 117. Additionally, bad faith is not required before awarding

exclusion, but "it can be taken into account as part of the party's explanation for its failure to comply." *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 296 (2d Cir. 2006).

Here, Yale states it failed to produce the recordings timely because it did not have possession or control over the recordings. They were on Professor Stith's personal cell phone. [Dkt. 110 at 3]. It does not state why it did not obtain a copy of the recordings previously in view of the fact that it authorized the recordings to be made by a member of its faculty and the recordings were of interviews conducted in response to numerous accusations of sexual harassment by Yale faculty, any one of which could have resulted in a lawsuit.

Yale states that Professor Stith discovered the recordings after she searched her cloud back-up following her discovery of an unrelated recording that she previously believed was deleted. [*Id.*]. Defendant informed Plaintiff of the existence of the recordings on December 2, 2019 and then produced the redacted materials on December 18, 2019, 11 days before the December 30, 2019 JTM deadline. [*Id.* at 3-4]; [Dkt. 59 (Am. Scheduling Order)]. The Court concludes that Yale's Rule 26(e) discovery supplementation was timely.

The Court disagrees with Yale as to the evidentiary significance of the audio evidence. For reasons discussed in the Court's memorandum of decision denying Defendant's motion for summary judgment on Plaintiff's retaliation claims and discussed here *infra.*, 9-13, the Climate Review is an integral part of the case. The parties did not include the audio recordings with their JTM or the motion in limine. It is curious that the parties take converse positions on the introduction of the Climate Review Report and the audio recordings of the interviews: the Defendant

6

seeks to exclude admission of the Climate Review Report [Dkt. 92] over Plaintiff's objection, whereas Plaintiff objects to introduction of the redacted recordings of the interview. [Dkt. 99]. The importance of the evidence and the interest of completeness suggests that the recordings should not be excluded. *See* Fed. R. Evid. 106.

The third factor poses a greater challenge. The Court cannot assess whether Plaintiff was prejudiced by the absence of the redacted and otherwise missing recordings, especially in the absence of the recordings themselves. Since the loss of the recordings was caused by the act or omission of Yale in failing to discharge its duty to preserve material it could have reasonably foreseen the duty to preserve, the equities weigh in Plaintiff's favor. Balancing the equities is best served by permitting Plaintiff to re-open relevant discovery, which is likely to cure any potential prejudice.

The fourth factor in this case is dispositive. Trial has been continued repeatedly because of the pandemic. The uncertainty of proceeding with a lengthy civil jury trial is heightened by the backlog of criminal proceedings, which must take precedence. This has provided both parties with ample time to supplement the discovery upon consideration of the recordings.

Therefore, the Court DENIES Plaintiff's Motion in Limine to exclude audio recordings of the Climate Review interviews without prejudice. [Dkt. 99]. Plaintiff shall indicate to the Court within <u>21</u> days if she intends to pursue any additional discovery as a consequence of the late-disclosure of the redacted and otherwise

missing recordings. Additionally, since Defendant states that they do not intend to offer the recordings at trial and do not proffer a basis for their admission, the Court has not considered their admissibility beyond the issue of the late discovery.

**Dkt. 100: Plaintiff's Motion to Exclude Lay Opinion Testimony Regarding Plaintiff's Employment**

Professor Byrne seeks to exclude testimony from Professors Julie Dorsey and Steven Wilkinson, who served on a faculty committee that heard Plaintiff's administrative appeal of her tenure denial, and from academic administrators John Dovidio, Tamar Gendler, and Amy Hungerford. Plaintiff argues that "[t]hese individuals were not part of the decision making process in the denial of Plaintiff's tenure application and as such cannot testify as to the decision to not grant Plaintiff tenure," and is therefore improper lay opinion testimony. [Dkt. 100]; Fed. R. Evid. 701(b). Plaintiff cites *Hester v. BIC Corp.*, 225 F.3d 178, 185 (2d Cir. 2000) for the proposition that an employee-witness may not attribute motive to observed conduct or demeanor. [*Id.* at 4-5.]. Plaintiff argues in the alternative that the lay opinion testimony would be more prejudicial than probative and a waste of time. [*Id.* at 4-5]; Fed. R. Evid. 403.

In opposition, Yale argues that it does not intend to introduce lay opinion testimony. [Dkt. 110 (Def. Mem. in Opp'n)]. Rather, Defendant proffers that Professors Dorsey and Wilkinson's testimony will be directly tied to their role on the Faculty Review Committee, which was formed by the Provost to investigate Plaintiff's consolidated appeals of her tenure denial. [Dkt. 120 (Summ. J. Decision) 13-14, 27-29]. The committee interviewed witnesses and recommended that the

Provost affirm Plaintiff's tenure denial because they found she was not retaliated against and that the appropriate process was followed. [*Id.*].

The Court agrees with Defendant that this case is distinguishable from *Hester*. There, the Second Circuit explained:

> …in an employment discrimination action, Rule 701(b) bars lay opinion testimony that amounts to a naked speculation concerning the motivation for a defendant's adverse employment decision. Witnesses are free to testify fully as to their own observations of the defendant's interactions with the plaintiff or with other employees, but "the witness's opinion as to the defendant's [ultimate motivations] will often not be helpful within the meaning of Rule 701 because the jury will be in as good a position as the witness to draw the inference as to whether or not the defendant" was motivated by an impermissible animus.

*Hester*, 225 F.3d at 185 (quoting *U.S. v. Rea*, 958 F.2d 1206,1216 (2d Cir. 1992). In *Hester*, the Second Circuit held that admission of four employees' opinions that a manager's observed coldness and hostility was on account of plaintiff's race was a reversible error because the witnesses' proffered testimony told the jury what inference to draw. *Hester*, 225 F.3d at 187.

Based on the Defendant's proffer, the witnesses here would testify as to conclusions they drew from materials submitted to the committee as part of their consideration of Plaintiff's appeal and conclusion that there was no procedural impropriety. *See* [Pl. Ex. (Ltr. From Associate Provost Smith to Prof. Dorsey, 04/20/2016)]("It is not the role of the Committee to consider substantive issues of professional competence…")(citing § III.L.3 of Faculty Handbook). Moreover, their testimony would be limited to their recommendations and how they arrived at them. Their testimony would not implicate the speculative jump between observations and motivation that *Hester* warns against. Rather, their testimony would go to how

9

Yale's administration rendered its decision to uphold the Department's tenure denial.

Since the Faculty Review Committee did not consider the merits of Plaintiff's tenure case, Professors Dorsey and Wilkinson's opinion on whether Plaintiff was tenurable based on the scholarship standard would be inadmissible as speculative lay opinions. Fed. R. Evid. 701. It appears that the academic administrators referenced in Plaintiff's motion in limine would be providing background information on the tenure process at Yale, rather than opining on whether Plaintiff was tenurable.

Finally, evidence concerning the Faculty Review Committee's appeal decision is not more prejudicial than probative because the material was part of the tenure decision process that Plaintiff is alleging was retaliatory. Although the Provost, with the benefit of the Faculty Review Committee's report, was not rendering the same decision on tenurability for purposes of purging any alleged retaliatory taint, whether or not the Provost believed or should have believed that the Department's decision was retaliatory is a material issue. For example, the information may be used to rebut Plaintiff's claim for punitive damages.

Accordingly, the Court DENIES Plaintiff's motion in limine regarding lay opinion evidence as to Plaintiff's employment. [Dkt. 100].

## Dkt. 92: Defendant's Motion to Exclude Admission of the Climate Review Report [Pl. Ex. 7]

Yale seeks to preclude admission of a 48 page document referred to as the "Climate Review Report" that was prepared by Yale's attorneys, Jamaal Thomas of

Yale's Office of Equal Opportunity, and Barbara Goren, outside counsel, following allegations of, *inter alia*, sexual harassment raised in an anonymous March 2015 letter. [Dkt. 92]; *see also* [Dkt. 120 (Summ. J. Decision) at 7, 10-12, 21, 25](discussing the impetus for the investigation and conduct related thereto).

Yale objects to introduction of the document on the grounds that it contains two levels of hearsay-that which the interviewees told the interviewers and that which the interviewers wrote in the report. Yale further objects on the grounds that it is not relevant to trial because Professor Byrne cannot establish that the three senior professors who voted against her tenure case knew what she said to Yale's attorneys and the document contains extraneous information about unrelated issues. [Dkt. 92 at 2-3]. Lastly, Yale argues that the report's probative value, if any, is outweighed by its prejudicial affect because it contains witnesses' impressions of long-standing grudges and because interviewees were told that their participation was confidential, undermining credibility. [*Id.* at 4-5].

In response to Defendant's motion, Plaintiff proffers that she does not intend to introduce the report for the truth of the matter asserted, but rather to show that Yale was on notice of the danger of retaliation. [Dkt. 103 (Pl. Mem. in Opp'n) at 1-3]. Plaintiff further argues that both parties included Attorney Thomas on their witness lists, eliminating one hearsay level and that the report is admissible as a business record pursuant to Fed. R. Evid. 803(6) because Yale regularly conducted such investigations. [*Id.* at 2-3]

    a. <u>Hearsay and Relevance</u>

Hearsay means a "statement that (1) a declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). Here, Plaintiff offers a relevant, non-hearsay basis for admission of the report and some of the statements contained therein. Defendant objects to this explanation because "risk of retaliation" is not an element of Plaintiff's claim and therefore Plaintiff is seeking to introduce the Climate Review Report for the truth of the matter asserted. [Dkt.119 (Def. Repl. Br.) 5-6]. The Court disagrees.

The report is directly relevant to Plaintiff's claims for reasons that are clear from the Court's summary judgment ruling. The test for relevance is simply whether "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401.

As to the issue of notice, Plaintiff filed an internal appeal with the Provost on the grounds that the adverse tenure decision was retaliatory. [Dkt. 120 (Decision on Summ. J) at 13-14]. The Provost received the report prior to his conclusion that the Department's tenure decision was non-retaliatory. [*Id.* at 11, 13-14]. Thus, whether the Provost had conflicting information about the potential for retaliation prior to his decision is directly relevant to Plaintiff's claims. Moreover, Plaintiff's participation in this meeting is the basis for her claim that she engaged in protected activity. [*Id.* at 19-20]. For purposes of summary judgment, Plaintiff showed evidence of a direct retaliatory animus shared among the three senior members of the Department who confederated to vote against her tenure candidacy based on

12

what they perceived to be adverse statements made by Professor Byrne to the attorneys conducting the Climate Review. [*Id.* at 21-22]. The report addresses statements by senior faculty members who opposed participation in the investigation and opposed Plaintiff's tenure candidacy, which again were shared with Yale's administration prior to Yale's final decision on her appeal. [Pl. Ex. 7].

Since Plaintiff has proffered a cognizable non-hearsay basis for admission of the report, the Court need not endeavor to consider whether the document may be admitted pursuant to the hearsay exception for business records, or whether any other hearsay exceptions or definitional exclusions apply.

## B. Prejudicial Effect

Fed. R. Evid. 403 counsels that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." However, "virtually all evidence is prejudicial to one party or another." *Chalco v. Belair*, No. 3:15-CV-340 (VLB), 2019 WL 456162, at *2 (D. Conn. Feb. 5, 2019). The Advisory Committee Note to Rule 403 explains that 'unfair prejudice' means "…an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one."  Advisory Committee Note to Fed. R. Evid. 403 (1977). Additionally, "[i]n reaching a decision whether to exclude on grounds of unfair prejudice, consideration should be given to the probable effectiveness or lack of effectiveness of a limiting instruction." *Ibid*.

13

In this case, a limiting instruction would be appropriate. The Court agrees with the Defendant's position that the trial is not "a general referendum on the Department of Spanish or Portuguese." [Dkt. 92 at 4]. As Defendant notes, the report was completed after attorneys interviewed fifty-seven people, many of whom are not germane to Plaintiff's case and their strongly held opinions are recounted in the document. [*Id.* at 4]. For example, the report contains the following statement: "Students identified the environment as 'difficult,' 'disillusioning,' 'inappropriate,' 'anxiety provoking,' and 'conflicted.' Students identified a wide range of causes." [Pl. Ex. 7 at 40]. Gripes from unidentified students, justified or not, are immaterial to the elements of Plaintiff's retaliation and breach of contract claims and could unduly prejudice Yale. Other opinions contained in the document risk confusing the jury. *See e.g.* [*Id.* at 16-17](discussing staffing for the Portuguese Department). In contrast, the report's discussion of the purported personality and professional conflicts among the senior faculty are relevant to Plaintiff's argument that the tenure denial occurred through the concerted efforts of three senior faculty members and their explanations for their decisions were pretextual.

In the Court's review of the exhibit, it appears that irrelevant and unduly prejudicial material may be severable. The parties are ordered to confer to consider stipulated redactions. In the absence of a stipulation, the Court will issue a limiting instruction at trial, should Plaintiff seek to introduce the report.

Defendant's Motion in Limine to Exclude Admission of the Climate Report [Dkt. 92] is DENIED.

14

**Dkt. 95: Defendant's Motion to Exclude Evidence of the Title IX Complaint that Post-Dated the Negative Tenure Vote.**

Defendant seeks to preclude admission of the evidence concerning Plaintiff's meetings with the Title IX coordinators and the Title IX proceeding against Professor González Echevarría on the grounds of relevance and undue prejudice. [Dkt. 95]. In opposition, Plaintiff argues that the evidence is relevant and probative of: (1) Yale's knowledge of Plaintiff's retaliation concerns; (2) Yale's continual failure to protect Plaintiff from retaliation; and (3) Defendant's assertion of a "reasonable, honest belief" defense. [Dkt. 109 (Pl. Mem. in Opp'n)].

By way of background, the Climate Report was completed by late fall of 2015. *See* [Dkt. 120 (Summ. J. Decision) at 11-12]. Around this time, Attorney Thomas asked Professor Byrne whether she would be willing to meet with Yale's Title IX coordinators and she agreed to do so. Those meetings took place starting in December 2015. [*Id.*]. At summary judgment, the Court noted that there was some ambiguity regarding whether the three senior professors who voted against Plaintiff's tenure denial were aware of the pending Title IX investigation against Professor González Echevarría (as opposed to the Climate Review) when they voted on Plaintiff's tenure candidacy on February 9, 2016. *Id.* at 12-13. Yale's formal proceeding against Professor González Echevarría commenced on February 17, 2016. *See* [Pl. Ex. 46 (06/07/16, Factfinder Report on the Univ. Wide Comm. On Sexual Misconduct) at 1](referencing C. Hashimoto's formal complaint on 02/17/2016).

15

Professor Byrne is not alleging a cause of action for sexual harassment. Additionally, Yale has not raised the "false claim" argument as to Plaintiff's asserted protected activity. *See Spadola v. New York City Transit Auth.*, 242 F. Supp. 2d 284, 292 (S.D.N.Y. 2003). Consequently, whether Plaintiff's allegations of sexual harassment by Professor González Echevarría are legally actionable is irrelevant to her retaliation claims. *See Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir. 1988).

Since the proceeding against Professor González Echevarría occurred after the adverse tenure decision, the evidence considered and the disposition of the proceeding does not make any material fact consequential to Plaintiff's breach of contract or retaliation claims more or less likely. *See* Fed. R. Evid. 401(a)-(b). The investigation itself was far reaching and considered events remote in time. Admission of the Title IX reports, related correspondence, and the outcome of the investigation poses the risk of unduly prejudicing Yale and confusing the issues, while adding little relevant evidence.

However, the mere fact that Yale investigated Professor González Echevarría following Professor Byrne's allegations is not so prejudicial as to warrant exclusion. Indeed, Yale had a legal obligation to investigate further. The Court can envision scenarios where documents from the proceeding against Professor González Echevarría would be admissible, even though it occurred after Plaintiff's tenure denial. For example, evidence could be introduced for impeachment purposes, or where a witness is responding to allegations of retaliation, or to probe the administration's timing and coordination of events.

16

Because the Court can conceive of an admissible purpose for the evidence, the Court must deny Yale's motion in limine as to the reports and correspondence in connection with the University Wide Committee On Sexual Misconduct's ("UWC") proceeding against Professor González Echevarría without prejudice to renew. Plaintiff is cautioned that the admissible use of this evidence is quite circumscribed.

Accordingly, the Court DENIES Defendant's motion in limine as to evidence and testimony concerning Professor Byrne's participation in the Title IX investigation prior to February 9, 2016. The Court GRANTS Defendant's motion to the extent it seeks to preclude admission of the outcome of Defendant's investigation into alleged sexual misconduct. The Court DENIES Defendant's motion to preclude admission of the UWC's report, correspondence in connection therewith, and investigative materials, without prejudice to renew.

The parties are instructed to meet and confer in good faith to identify the admissible portions of the material consistent with this ruling.

## Dkt. 90: Defendant's Motion to Exclude Evidence About Matters Unrelated to Plaintiff or Protected by FERPA

Yale's first motion in limine [Dkt. 90] seeks to exclude, "Remote Events or Allegations about Roberto González Echevarría," (Pl. Ex. 44) memoranda and other writings from Professor Rolena Adorno (Pl Exs. 56-59, 64-66, and 68-69), and correspondence about witnesses' efforts to identify the origin of an IP address to determine who altered Professor González Echevarría's Wikipedia page (Pl. Exs. 73, 158-60, 364, 365-77]. Yale also seeks an order permitting it to redact any student

names that were inadvertently included in trial exhibits pursuant to the Family Educational Rights and Privacy Act, 20 U.S.C. § 1232g ("FERPA"). [*Id.* at 3]. The Court will address each of these issues in turn.

### a. Pl. Ex. 44 (Letter from Professor González Echevarría to Professor Michael Della Rocca dated June 15, 2016)

The letter from Professor González Echevarría serves to clarify his response to the question of whether he was ever previously accused of sexual harassment, raised during the UWC investigation into the Title IX complaint against Professor González Echevarría addressed above. In short, the letter amends Professor González Echevarría's earlier statement that he was never previously accused of sexual harassment to now state that he was once told by then-Provost Peter Salovey that students and/or faculty reported that they were "offended" by his conduct. [Pl. Ex. 44].  The letter goes on to state that: "[t]he best way to proceed, the Provost [then Peter Salovey] told me, was for me to take sexual harassment training. He specifically told me that this was not intended to be discipline. He added that my taking of the training would allow him to "tear up" whatever reports he had received." [*Id.*]. The letter goes on to state that the training he underwent in response to the 2009 complaint, as well as training in the wake of the "climate review" was not "particularly illuminating." [*Id.*]

Yale objects to introduction of the letter as irrelevant, more prejudicial than probative, and constituting improper character evidence. Plaintiff opposes Defendant's motion, arguing that the document is relevant to whether Yale's administrators had a "reasonable, honest belief" that Plaintiff was not being

retaliated against for protected activity. [Dkt. 105 (Pl. Mem. in Opp'n) 2-4]. The Court agrees with the Defendant for reasons principally set forth above with respect to the UWC investigation more generally. Nothing in this document suggests retaliation or a retaliatory motive, but rather it goes to the merits of the underlying sexual harassment investigation which is not material.

The Court GRANTS Defendant's motion to exclude admission of Pl. Ex. 44 as irrelevant. However, this ruling is limited to Plaintiff's proffered use of the statement and nothing in this ruling would preclude Plaintiff from introducing for an admissible purpose, such as impeachment. *See supra.*16-17.

### b. Faculty and related third-party correspondence

The Court DENIES Yale's motion to exclude correspondence between Professors Adorno, Stith, Vallis and others [Pl. Exs. 56-59, 64-66, and 68-69] for reasons now made evident by the Court's summary judgment decision. *See* [Dkt. 120 (Summ. J. Decision) at 21-22]. Considering these documents, the Court found that a "reasonable jury could draw an inference that Professor Adorno, as well as her close colleagues in whom she confided and confederated, would have believed Plaintiff made statements against them both as part of the climate study and in or prompting the anonymous article published in the Yale university newspaper, in which she was quoted." *Id.* at 21. The three professors who collectively and concertedly opposed the climate study also cast the three adverse votes controlling the outcome of Plaintiff's tenure case. Plaintiff adduced evidence in

opposing summary judgment to show the possibility of collusion among these three senior faculty members.

Expressions of animosity towards the Plaintiff alone are not enough to render the relevant and probative evidence unduly prejudicial.  Hypothetically, if the jury were to believe that Professor Adorno thought that Plaintiff met the academic standard for tenure but nevertheless voted against her simply to maintain a voting bloc among the Department's tenured faculty, it is unlikely that Plaintiff would be able to prove that they denied her tenure "because" of her protected activity. *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013). Whether the emails with negative comments about Plaintiff were prompted by speculation about the contents of Plaintiff's sexual harassment complaint or whether they are reflective of general personal animosity or professional conflict is a matter for the jury to consider when weighing the evidence.

Accordingly, the Court DENIES Defendant's motion in limine as to the senior faculty members' correspondence amongst themselves and others concerning Plaintiff.

Plaintiff agreed to voluntarily withdraw Pl. Ex. 64, which is a memorandum from Professor Adorno. The memo primarily concerns her professional relationship with Professor Kevin Poole, another former junior faculty member, and is at best marginally relevant.

c. <u>Correspondence concerning Plaintiff's IP address</u>

Defendant seeks to exclude Pls. Ex. 73, 158-60, 364, and 375-77, which concern witnesses' efforts to determine an IP address of a computer used to edit Professor González Echevarría's Wikipedia webpage to add a paragraph that he was accused of sexual harassment. The Defendant argues that the information is both irrelevant and unduly prejudicial. Fed. R. Evid. 402 and 403. The Court disagrees.

The correspondence was exchanged between February 11, 2016 and February 14, 2016, starting just two days after the adverse tenure vote. It purports to concern witnesses' attempts to determine who made a public statement about sexual harassment allegations against Professor González Echevarría through edits to his Wikipedia webpage. The Court DENIES Defendant's motion in limine to preclude admission of these exhibits for the same reason set forth above as to Professor Adorno's writings.

### d.  Information protected by FERPA

Defendant seeks an order to permit redaction of any student names that are inadvertently visible in documents produced and now designated as trial exhibits. The Court GRANTS the motion finding the privacy interests of students whose identity and activity is irrelevant to the proceeding, but which was inadvertently disclosed due to the volume of production, outweighs the public interest in their identity. D. Conn. L. R. Civ. P. 5(e)(3).

### Dkt. 93: Defendant's Motion to Exclude Testimony from External Reviewers

Defendant seeks to exclude testimony from the nine academics who served as external reviewers of Plaintiff's scholarship regarding the reputation loss suffered by Plaintiff. [Dkt. 93]. The Defendant argues that Plaintiff did not disclose the external reviewers as potential damages experts until after the close of discovery. [Dkt. 113 (Def. Repl. Br.)]. Plaintiff argues that she intends to call these witnesses to testify as to their own perceptions and opinions about the impact of a tenure denial on a scholar's reputation. [Dkt. 104 (Pl. Opp'n)].

The Court agrees with the Defendant. Pursuant to Fed. R. Evid. 701, "[i]f a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."

Fed. R. Evid. 701 was amended in 2000, "to eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing." Fed. R. Evid. 701, Advisory Committee Notes to 2000 Amendments. The Advisory Committee notes to the 2000 amendments offers insightful examples of prototypical lay opinions: the "…appearance of persons or things, identity, the manner of conduct, competency of a person, degrees of light or darkness, sound, size, weight, distance, and an endless number of items that cannot be described factually in words apart from inferences." *Id.* (quoting *Asplundh Mfg. Div. v. Benton Harbor Eng'g*, 57 F.3d 1190, 1196 (3d Cir. 1995)). The Advisory Committee notes explain

further that the amendment incorporates the distinction between lay testimony which "results from a process of reasoning familiar in everyday life" and expert testimony which "results from a process of reasoning which can be mastered only by specialists in the field." *Id.* (citing *State v. Brown*, 836 S.W.2d 530, 549 (Tenn. 1992)); *see also United States v. Ferguson*, No. CRIM 3:06CR137 CFD, 2007 WL 4556625, at *2 (D. Conn. Dec. 20, 2007).

Each of the nine academics rendered an opinion on the merits of Plaintiff's scholarship, but Plaintiff has not asserted that any of them have objective knowledge of the facts at issue. Instead, their testimony would amount to speculation as to how a tenure denial effects an academic's reputation. The answer to this question necessarily draws upon the witness's experience in a highly specialized field rather than everyday experience. Such testimony requires disclosure and qualification of the witness as an expert pursuant to Fed. R. Evid. 702. Plaintiff has not done so here.

Accordingly, Defendant's motion in limine to exclude testimony from the external reviewers for damages purposes is GRANTED.

## Dkt. 96: Defendant's Motion in Limine to Exclude Evidence of Plaintiff's Opinions about Her Scholarship

Defendant seeks to exclude evidence of Plaintiff's opinion as to the quality of her scholarship. [Dkt. 96]. Defendant argues that since Plaintiff's opinion about her own scholarship is insufficient to demonstrate a retaliatory motive, it is irrelevant and risks prejudicing Yale by confusing the applicable standards. *Id.*  In opposition, Plaintiff argues that she intends to offer a lay opinion pursuant to Fed.

R. Evid. 701 to undermine Defendant's purported non-retaliatory basis for the tenure denial and it will set a foundation for some of the specific linguistic vernacular used in her field. [Dkt. 108 (Pl. Opp'n)].

Here, the Court agrees with the Defendant. As set out in the Court's summary judgment decision, "[t]enure decisions are fundamentally tied to subjective professional judgments." *See* [Dkt. 120 (Summ. J. Decision) at 17](citing *Zahorik v. Cornell Univ.*, 729 F.2d 85, 93 (2d Cir. 1984)). As *Zahorik* explains, in "the context of disagreement about the scholarly merits of the candidate's academic work…[Plaintiff must show that] disagreements or doubts are influenced by forbidden considerations such as sex or race." 729 F.2d at 94. Plaintiff's opinion about her own scholarship does not increase the likelihood that Professor Adorno and others thought that her scholarship was deficient because of her protected activity. *See Goodship v. Univ. of Richmond*, 860 F. Supp. 1110, 1112 (E.D. Va. 1994)("The opinions of Goodship and her expert are undoubtedly genuine, but they simply have no bearing on whether the different opinions expressed by numerous University faculty members were *not* genuine.")(emphasis in original); *see also Zahorik*, 729 F.2d at 94 ("Dr. Zahorik's conclusory assertion that two men granted tenure are less well qualified adds nothing to her claim since the record at best indicates a difference of opinion in evaluation of scholarly merit.").

Although the Court agrees that Plaintiff's lay opinion as to relative merits of her scholarship is irrelevant and risks confusing the jury, nothing precludes Plaintiff from adducing evidence as to the factual basis for her tenure candidacy or demonstrating how her colleagues' opinions may have changed over time.

Defendant's motion in limine as to preclude lay opinion testimony from Plaintiff as to her own scholarship is GRANTED.

### Dkt. 91: Defendant's Motion in Limine to Exclude Evidence of Plaintiff's Alleged Wage-Related Losses or any Requested Equitable Relief

The Defendant and the Plaintiff agree that back pay is an equitable remedy under Title VII and the Connecticut Fair Employment Practices Act ("CFEPA") and evidence of backpay should not be presented to the jury. [Dkt. 91]; [Dkt. 112 (Pl. Resp.)]. Plaintiff also states that she is seeking reinstatement as equitable relief, which is proper for the Court to determine. [Dkt. 112 (Pl. Resp.)].

Accordingly, the Defendant's motion in limine as to these issues is GRANTED.

### Dkt. 97: Defendant's Motion in Limine to Exclude Evidence of Reinstatement

The Defendant moves "to exclude argument and evidence related to installation of Plaintiff to a tenure position at Yale." [Dkt. 97 (Def. Mot. in Limine) at 1]. Specifically, Defendant argues that since Plaintiff's tenure candidacy ended at the departmental review stage, installation as a tenured professor would place her in a better position than she would have been in because her tenure candidacy was never considered by the Yale Tenure Appointments Committee (TAC), the Joint Boards of Permanent Officers (JBPO), or by the Yale Corporation. [*Id.*]. The Defendant argues that this case is distinguishable from *Brown v. Trustees of Bos. Univ.*, 891 F.2d 337, 359-61 (1st Cir. 1989)(rejecting university's First Amendment challenge to reinstatement with tenure where plaintiff was denied tenure by the university president upon the provost's recommendation at the final stage because

25

of her sex). Yale's reply brief makes clear that they object to testimony as to reinstatement as a professor with tenure, not necessarily reinstatement generally. [Dkt. 115 (Pl. Repl. Br.)].

In opposition, Plaintiff argues that this case is distinguishable from *Claudio v. Mattituck-Cutchogue Union Free Sch. Dist.*, No. 09-CV-5251 JFB AKT, 2014 WL 1514235, at *2 (E.D.N.Y. Apr. 16, 2014) where the Court granted reinstatement without tenure post-trial because there was an agreement to extend a probationary period, which is absent here. [Dkt. 107 (Pl. Opp'n) at 3]. Plaintiff also argues that reinstatement in her case is distinguishable from *Honadle v. Univ. of Vermont & State Agric. Coll.*, 56 F. Supp. 2d 419, 424 (D. Vt. 1999), where the Court held that instatement would be inappropriate. *Id.* at 4. In *Honadle*, the district court denied instatement to an unsuccessful job applicant if a jury were to find for plaintiff because: (1) it would have injured the innocent candidate who was selected for the department chair position, (2) the demand for instatement would "inappropriately involve the Court in the university's tenure decision," (3) relations between plaintiff and administration deteriorated and (4) the position was a high level, unique one. 56 F. Supp. 2d at 424.

Reinstatement is the preferred form of relief in discrimination and retaliation cases because it makes plaintiff whole with the least amount of uncertainty by reestablishing an existing employment relationship. *Reiter v. Metro. Transp. Auth. of New York*, No. 01 CIV 2762 (JGK), 2003 WL 22271223, at *13 (S.D.N.Y. Sept. 30, 2003)(citations omitted).

The cases that the parties cite hold that the Court has the broad equitable power pursuant to Title VII to order reinstatement with tenure. "Once a university has been found to have impermissibly discriminated in making a tenure decision, […] the University's prerogative to make tenure decisions must be subordinated to the goals embodied in Title VII." *Brown*, 891 F.2d at 359. But, other cases have held that whether a candidate should be reinstated with tenure is a question that courts are "ill equipped to answer," given tenure decision's lasting and permanent impact. *Meling v. St. Francis Coll.*, 3 F. Supp. 2d 267, 277 (E.D.N.Y. 1998)(granting reinstatement but denying reinstatement with tenure post-verdict where the tenure decision had not yet taken place). Thus, the issue is whether the Court should order Plaintiff's reinstatement to a tenured position if she prevails, not whether the Court has the authority to do so.

Here, the Court agrees with the Defendant that this case is distinguishable from *Brown v. Trustees of Bos. Univ.* because Plaintiff's tenure case was denied at the departmental level, whereas in *Brown* the plaintiff had already proceeded successfully through multiple levels of review with near unanimous endorsement of her colleagues within and outside of her department, twice. 891 F.2d at 342-44.

The Court could envision a scenario where the additional levels of tenure review are *pro forma* and a prevailing favorable departmental review would functionally amount to a grant of tenure. However, Plaintiff has not suggested that the additional levels of review by academics and administrators alike is *pro forma* at Yale. Ordering Professor Byrne to be reinstated to a tenured position would

bypass Yale's additional levels of academic review and would place her in a better position as a result of her protected activity.

Of note, following the Climate Review, Yale placed the Spanish and Portuguese Department into "receivership," by replacing Professor Adorno as the chair and including eight additional professors to participate in departmental votes and operations. [Dkt. 81 (Pl. Mem. in Opp'n to Summ. J)]. This new structure would suggest the elimination of the avenue by which collusion was alleged to have occurred. *See Meling*, 3 F. Supp. 2d at 277, n.10 (denying prevailing plaintiff's request to retain jurisdiction over the tenure application, noting personnel changes at the college).

The Court GRANTS Defendant's motion to exclude evidence and argument related to installation of Plaintiff to a tenured position. [Dkt. 97].

## Dkt. 94 Defendant's Motion in Limine to Exclude Evidence Related to a Potential Claim for Punitive Damages

The final motion in limine under consideration pertains to whether the Court should bifurcate the issues of punitive damages from liability for Plaintiff's Title VII retaliation claim pursuant to Fed. R. Civ. P. 42(b). [Dkt. 94 (Def. Mot. in Limine)]. In opposition, Plaintiff argues that Defendant fails to meet its burden to establish that bifurcation is necessary because the punitive damages issue is connected to Plaintiff's claim that Defendant's administrators acted with reckless indifference in their failure to protect her from retaliation. [Dkt. 106 (Pl. Mem. in Opp'n) at 3-4]. Plaintiff further argues that Defendant's generalized argument that they would be prejudiced by disclosure of their financial assets is insufficient to warrant

bifurcation. [*Id.*]. In reply, Yale maintains that the issue of punitive damages is both distinct and narrow from issues of liability and other kinds of loss. [Dkt. 116 (Def. Repl. Br.)].

Fed. R. Civ. P. 42(b) provides that "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims.  When ordering a separate trial, the court must preserve any federal right to a jury trial." Bifurcation is within the district court's discretion and is decided on a case-by-case basis. *Svege v. Mercedes-Benz Credit Corp.*, 329 F. Supp. 2d 283, 284 (D. Conn. 2004); *Doe No. 1 v. Knights of Columbus*, 930 F. Supp. 2d 337, 379 (D. Conn. 2013). It is, however, the exception and not the rule, and the moving party bears the burden of establishing that bifurcation is warranted. *Svege*, 329 F. Supp. 2d at 284.

When considering whether to bifurcate, courts "should examine, among other factors, whether bifurcation is needed to avoid or minimize prejudice, whether it will produce economies in the trial of the matter, and whether bifurcation will lessen or eliminate the likelihood of juror confusion."  *Id.* Bifurcation also "may be appropriate where, for example, the litigation of the first issue might eliminate the need to litigate the second issue, or where one party will be prejudiced by evidence presented against another party." *Amato v. City of Saratoga Springs, N.Y.*, 170 F.3d 311, 316 (2d Cir. 1999) (citations omitted).  Other factors to consider include whether the issues are significantly different from one another, whether the case is to be tried before a jury or to the court, whether the posture of discovery favors a single trial or bifurcation, and whether the evidentiary issues overlap.

*Knights of Columbus,* 930 F. Supp. 2d at 379; *see also Computer Associates Int'l, Inc.*, 247 F.R.D. at 67 ("To determine whether bifurcation is warranted, courts generally consider the following three factors: 1) whether significant resources would be saved by bifurcation, 2) whether bifurcation will increase juror comprehension, and 3) whether bifurcation will lead to repeat presentations of the same evidence and witnesses.") (citation omitted).

The Court agrees with the Plaintiff's contention that the liability issues are intertwined with the issue of punitive damages. This case involves a single plaintiff against a single defendant. As discussed previously, the crux of Plaintiff's retaliation claim is that three senior professors colluded to deny her tenure because of her protected activity. Plaintiff's claims survived summary judgment because a reasonable juror could conclude that the appeal of her tenure denial failed to purge any taint from retaliatory motives because the panel considering her appeal did not concern the question of tenure itself. *See* [Dkt. 120 (Summ. J. Decision) at 27-29](discussing cat's paw theory). Thus, the jury would be considering the same evidence in determining whether Defendant acted with malice or reckless indifference to Plaintiff's statutory rights. *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526 (1999).

However, as a practical matter, an instruction on punitive damages risks confusing the jury. Instead, the Court will bifurcate deliberation of punitive damages, such that if the jury finds for the Plaintiff, the jury will be separately charged to deliberate whether to award punitive damages. The issue of punitive

damages will not require the presentation of new evidence, except for disclosure of Yale's financial resources to the extent necessary.

Accordingly, the Court DENIES Defendant's motion to bifurcate evidence as to Plaintiff's claim for potential punitive damages but will bifurcate deliberations. [Dkt. 94].

### Conclusion

The Court enters the orders consistent with this memorandum of decision as to the parties' pre-trial motions in limine [Dkts. 90-97, 99-100].

Finally, the Court reminds the parties that should they desire a referral to a magistrate judge for a settlement conference, they should request a referral well in advance of the forthcoming trial dates and schedule there conference promptly after the matter is assigned to a Magistrate Judge.

IT IS SO ORDERED.

_____/s/_____
Hon. Vanessa L. Bryant
United States District Judge

Dated this day in Hartford, Connecticut: September 3, 2020